**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ROBERT H. TAYLOR JR., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE CHEMOURS COMPANY, MARK NEWMAN, JONATHAN LOCK, CAMELA WISEL, and SAMEER RALHAN, <br><br> Defendants. | Case No. _____ <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS**
**OF THE FEDERAL SECURITIES LAWS**

Plaintiff Robert H. Taylor Jr. ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by The Chemours Company ("Chemours" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Chemours common stock between February 10, 2023, and February 28, 2024, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b)

and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2.     Headquartered in Wilmington, Delaware, Chemours is an industrial and specialty chemical company for a number of markets including, among others, the "coatings, plastics, refrigeration and air conditioning, transportation, semiconductor and consumer electronics, general industrial, and oil and gas" markets.  Chemours's common stock trades in the United States on the New York Stock Exchange ("NYSE") under the ticker symbol "CC."

3.     The Class Period begins on February 10, 2023, to coincide with the announcement of Chemours's fourth quarter and full year 2022 financial results after the market closed on February 9, 2023.  As is relevant here, Chemours announced Free Cash Flow (defined as cash flows from operations, less purchases of property, plant, and equipment) of $94 million in the fourth quarter of 2022 and $447 million in full year 2022, "demonstrating [Chemours's] continuing ability to generate strong Free Cash Flow."

4.     Chemours reiterated that it generated Free Cash Flow of $447 million in full year 2022 when it filed its 2022 annual report on Form 10-K (the "2022 Annual Report") with the SEC on February 10, 2023.  In connection with the 2022 Annual Report, the Company's Chief Executive Officer ("CEO"), Mark Newman, and then-Chief Financial Officer ("CFO"), Sameer Ralhan, certified that the 2022 Annual Report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."  The 2022

Annual Report also represented that Defendants Newman and Ralhan "have concluded that [the Company's] disclosure controls and procedures are effective at the reasonable assurance level," and the Company reported that "[t]here have been no changes in [its] internal control over financial reporting that occurred during the year . . . that have materially affected, or are reasonably likely to materially affect, [the Company's] internal control over financial reporting."

5.      Chemours reported quarterly and year-to-date Free Cash Flow metrics in connection with each of the Company's quarterly financial results throughout the remainder of the Class Period.  Each of the Company's quarterly financial reports filed on Form 10-Q with the SEC during the remainder of the Class Period contained substantially identical certifications to those set forth above from Defendants Newman, Ralhan (first quarter of 2023), and Jonathan Lock (second and third quarters of 2023).

6.      Prior to and during the Class Period, Chemours also set and publicized certain criteria for executive compensation.  For example, pursuant to Chemours's Annual Incentive Plans ("AIPs") for 2022 and 2023, the Company's senior executive officers (including the CEO and CFO) were entitled to additional cash compensation if certain targets, including Free Cash Flow targets, were met.  Similarly, pursuant to Chemours's Long-Term Incentive Plans ("LTIPs"), the Company's senior executive officers (including the CEO and CFO) were entitled to stock compensation if certain targets, including Free Cash Flow Conversion (defined as cash flows from operations, less purchases of property, plant, and equipment divided by Adjusted EBITDA) targets, were met.

7.      Notwithstanding Defendants' repeated assurances regarding the accuracy of the Company's financial reports and the adequacy of the Company's internal control over financial reporting, investors began to learn the truth on February 13, 2024, when Chemours "announced

that it has postponed the release of its financial results and conference call related to the fourth quarter and full year ended December 31, 2023, which had previously been scheduled for February 14, 2024 and February 15, 2024, respectively," and that it now "expect[ed] to issue its fourth quarter and full year 2023 financial results after market close on Wednesday, February 28, 2024." According to the Company, the delay was necessary "because it needs additional time to complete its year-end reporting process" and "is evaluating its internal control over financial reporting . . . with respect to maintaining effective controls related to information and communications." Chemours also revealed that it needed additional time for its Audit Committee to conduct a related internal review.

8.      In response to this initial development, the price of Chemours common stock fell $3.85 per share, or more than 12%, from a close of $30.49 per share on February 13, 2024, to close at $26.64 per share on February 14, 2024.

9.      Then, before the market opened on February 29, 2024, Chemours stunned investors when it announced that it was delaying the filing of its annual report for 2023 and that its Board of Directors (the "Board") had "place[d] President and Chief Executive Officer Mark Newman, Senior Vice President and Chief Financial Officer Jonathan Lock and Vice President, Controller and Principal Accounting Officer Camela Wisel on administrative leave . . . pending the completion of an internal review being overseen by the Audit Committee of the Board of Directors with the assistance of independent outside counsel."  According to the Company, the scope of the investigation "includes the processes for reviewing reports made to the Chemours Ethics Hotline" and Chemours's "practices for managing working capital, including the related impact on metrics within the Company's incentive plans [and] certain non-GAAP metrics" in the Company's financial reports.  Given the importance of these issues—not only to executive compensation, but

also investors' assessment of Chemours's financial performance—the Company acknowledged that it "is evaluating one or more potential material weaknesses in its internal control over financial reporting as of December 31, 2023 with respect to maintaining effective controls related to the control environment, including the effectiveness of the 'tone at the top' set by certain members of senior management."

10.     In response to these revelations, the price of Chemours common stock plummeted $9.05 per share, or more than 31%, from a close of $28.72 per share on February 28, 2024, to close at $19.67 per share on February 29, 2024.

11.     On March 6, 2024, after the end of the Class Period, Chemours announced that the Board's Audit Committee concluded "that the members of senior management who were placed on administrative leave last week engaged in efforts in the fourth quarter of 2023 to delay payments to certain vendors that were originally due to be paid in the fourth quarter of 2023 until the first quarter of 2024, and to accelerate the collection of receivables into the fourth quarter of 2023 that were originally not due to be received until the first quarter of 2024." Critically, "[t]he Audit Committee found that these individuals engaged in these efforts in part to meet free cash flow targets that the Company had communicated publicly, and which also would be part of a key metric for determining incentive compensation applicable to executive officers." According to the Company, "[t]he Audit Committee review also determined that similar actions, though to a lesser extent, were taken in the fourth quarter of 2022, resulting in a significant increase in these cash flow measures for the quarter ended December 31, 2022, and a decrease in these measures in the first quarter of 2023."

12.     This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts,

about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) certain of the Company's senior executive officers manipulated Free Cash Flow targets as a means to maximize additional cash and stock incentive compensation applicable to executive officers pursuant to the Company's AIPs and LTIPs; (2) the Company's accounting practices and procedures, including its internal control over financial reporting, were deficient; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

13.    As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock when the truth was revealed, Plaintiff and other members of the Class (defined below) have suffered significant damages.

## II.    <u>JURISDICTION AND VENUE</u>

14.    Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

15.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

16.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Chemours has its principal place of business and is incorporated in this District.

17.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

### III.    <u>PARTIES</u>

18.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Chemours common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

19.    Defendant Chemours is a Delaware corporation with principal executive offices at 1007 Market Street, Wilmington, Delaware 19801.

20.    Defendant Mark Newman has served as the Company's President and CEO from July 2021 until being placed on administrative leave in February 2024.

21.    Defendant Jonathan Lock has served as the Company's Senior Vice President and CFO from June 6, 2023, until being placed on administrative leave in February 2024.

22.    Defendant Camela Wisel has served as the Company's Vice President, Controller, and Principal Accounting Officer from September 2021 until being placed on administrative leave in February 2024.

23.    Defendant Sameer Ralhan served as the Company's Senior Vice President and CFO from June 2019 until June 19, 2023.

24.    Defendants Newman, Lock, Wisel, and Ralhan are collectively referred to herein as the "Individual Defendants."

25.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Chemours's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants

knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

26.     Chemours and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     Background

27.     Chemours is a Delaware corporation with its principal executive offices in Wilmington, Delaware.  Chemours is an industrial and specialty chemical company for a number of markets including, among others, the "coatings, plastics, refrigeration and air conditioning, transportation, semiconductor and consumer electronics, general industrial, and oil and gas" markets.

28.     Chemours began operating as an independent, publicly-traded company in 2015 following its spin-off from E.I. du Pont de Nemours and Company.  Chemours's common stock trades on the NYSE under the ticker symbol "CC."

29.     Prior to and during the Class Period, Chemours set and publicized certain criteria for executive compensation.  For example, pursuant to Chemours's 2022 and 2023 AIPs, the Company's senior executive officers (including the CEO and CFO) were entitled to additional cash compensation if certain targets, including Free Cash Flow targets, were met.  The Free Cash Flow metric is defined as "Cash Flows from Operations less purchases of property, plant and equipment."  Manipulations of the Company's accounts receivable and accounts payable directly impact Chemours's Cash Flows from Operations, which then flows through into the Free Cash Flow metric.  Similarly, pursuant to Chemours's LTIPs, the Company's senior executive officers (including the CEO and CFO) were entitled to stock compensation if targets, including Free Cash

8

Flow Conversion targets were met.  The Free Cash Flow Conversion metric is defined as "Cash Flows from Operations less purchases of property, plant and equipment . . . divided by Adjusted EBITDA."  As with the Free Cash Flow metric used in the AIPs, manipulations of the Company's accounts receivable and accounts payable impact the Free Cash Flow Conversion metric used in the LTIPs.

**B.  Defendants' False and Misleading Statements**

30.    The Class Period begins on February 10, 2023, to coincide with the announcement of Chemours's fourth quarter and full year 2022 financial results after the market closed on February 9, 2023.  Among other things, Chemours announced Free Cash Flow of $94 million in the fourth quarter of 2022 and $447 million in full year 2022, "demonstrating [Chemours's] continuing ability to generate strong Free Cash Flow."  The Company also announced that it expected full year 2023 "Free Cash Flow of greater than $350 million."

31.    In connection with the Company's earnings conference call held before the market opened on February 10, 2023, Defendant Ralhan added in prepared remarks posted to the Company's website that "Free Cash Flow continues to be a strength for the company . . . despite Net Working Capital build driven by lower sales volume, primarily in [Titanium Technologies], leading to higher inventory levels as we exited the year."

32.    When Chemours filed its 2022 Annual Report on February 10, 2023, the Company reiterated that it generated Free Cash Flow of $447 million in full year 2022.  In connection with the 2022 Annual Report, Defendant Newman, the Company's CEO, and Defendant Ralhan, the Company's CFO (at that time), certified that the 2022 Annual Report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" and that "the financial statements, and other financial

information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

33.     The 2022 Annual Report also contained certifications by Defendants Newman and Ralhan that the Company had established and maintained "disclosure controls and procedures" to, among other things, "ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared."   The 2022 Annual Report also stated that Defendants Newman and Ralhan "have concluded that [the Company's] disclosure controls and procedures are effective at the reasonable assurance level."

34.     Further, the Company represented in the 2022 Annual Report that "[t]here have been no changes in [its] internal control over financial reporting that occurred during the year . . . that have materially affected, or are reasonably likely to materially affect, [the Company's] internal control over financial reporting."   The 2022 Annual Report was signed by Defendants Newman, Ralhan, and Wisel.

35.     After the market closed on April 27, 2023, Chemours announced its financial results for the first quarter of 2023.  Among other things, the Company reported Free Cash Flow of negative $210 million in the first quarter of 2023 and reaffirmed its full year 2023 Free Cash Flow guidance of greater than $350 million.

36.     After the market closed on April 28, 2023, Chemours filed its first quarter 2023 financial results on Form 10-Q (the "1Q 2023 Report") with the SEC.  Therein, the Company reiterated Free Cash Flow of negative $210 million in the first quarter of 2023.

37.     In connection with these financial results, Defendant Newman and Defendant Ralhan certified that the 1Q 2023 Report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."   The 1Q 2023 Report also contained certifications by Defendants Newman and Ralhan that the Company had established and maintained "disclosure controls and procedures" to, among other things, "ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared."

38.     Moreover, the 1Q 2023 Report stated that Defendant Newman and Ralhan "have concluded that [the Company's] disclosure controls and procedures are effective at the reasonable assurance level."   The Company also represented that "[t]here have been no changes in [its] internal control over financial reporting that occurred during the quarter ended March 31, 2023 that have materially affected, or are reasonably likely to materially affect, [the Company's] internal control over financial reporting."   The 1Q 2023 Report was signed by Defendant Ralhan.

39.     After the market closed on July 27, 2023, Chemours announced its financial results for the second quarter of 2023.   Among other things, the Company reported Free Cash Flow of $3 million in the second quarter of 2023 and negative $207 million for the six months ended June 30, 2023, and cut its full year 2023 Free Cash Flow guidance to greater than $325 million.

40.     In connection with the Company's earnings conference call held before the market opened on July 28, 2023, Defendant Newman stated in prepared remarks posted to the Company's website that the Company would be "making a slight revision to [its] Free Cash Flow guidance to now greater than $325 million, reflecting the business's resilience and ability to generate substantial cash flow throughout the business cycle."

41.     After the market closed on July 28, 2023, Chemours filed its second quarter 2023 financial results on Form 10-Q (the "2Q 2023 Report") with the SEC.  Therein, the Company reiterated Free Cash Flow of negative $207 million for the six months ended June 30, 2023.

42.     In connection with these financial results, Defendants Newman and Lock, the Company's new CFO, certified that the 2Q 2023 Report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."  The 2Q 2023 Report also contained certifications from Defendant Newman and Defendant Lock that the Company had established and maintained "disclosure controls and procedures" to, among other things, "ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared."

43.     Moreover, the 2Q 2023 Report stated that Defendants Newman and Lock "have concluded that [the Company's] disclosure controls and procedures are effective at the reasonable assurance level."  The Company also represented that "[t]here have been no changes in [its]

internal control over financial reporting that occurred during the quarter ended June 30, 2023 that have materially affected, or are reasonably likely to materially affect, [the Company's] internal control over financial reporting." The 2Q 2023 Report was signed by Defendant Lock.

44.     After the market closed on October 26, 2023, Chemours announced its financial results for the third quarter of 2023. Among other things, the Company reported Free Cash Flow of $44 million in the third quarter of 2023 and negative $163 million for the nine months ended September 30, 2023, and further reduced its full year 2023 Free Cash Flow guidance to greater than $188 million.

45.     After the market closed on October 27, 2023, Chemours filed its third quarter 2023 financial results on Form 10-Q (the "3Q 2023 Report") with the SEC. Therein, the Company reiterated Free Cash Flow of negative $163 million for the nine months ended September 30, 2023.

46.     In connection with these financial results, Defendants Newman and Lock certified that the 3Q 2023 Report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report." The 3Q 2023 Report also contained certifications by Defendant Newman and Defendant Lock that the Company had established and maintained "disclosure controls and procedures" to, among other things, "ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared."

13

47.     Moreover, the 3Q 2023 Report stated that Defendants Newman and Lock "have concluded that [the Company's] disclosure controls and procedures are effective at the reasonable assurance level."   The Company also represented that "[t]here have been no changes in [its] internal control over financial reporting that occurred during the quarter ended September 30, 2023 that have materially affected, or are reasonably likely to materially affect, [the Company's] internal control over financial reporting."   The 3Q 2023 Report was signed by Defendant Lock.

48.     The above statements identified in ¶¶ 30-47 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) certain of the Company's senior executive officers manipulated Free Cash Flow targets as a means to maximize additional cash and stock incentive compensation applicable to executive officers pursuant to the Company's AIPs and LTIPs; (2) the Company's accounting practices and procedures, including its internal control over financial reporting, were deficient; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

**C.     The Truth Begins to Emerge**

49.     Notwithstanding Defendants' repeated assurances regarding the accuracy of the Company's financial reports and the adequacy of the Company's internal control over financial reporting, investors began to learn the truth on February 13, 2024, when Chemours "announced that it has postponed the release of its financial results and conference call related to the fourth quarter and full year ended December 31, 2023, which had previously been scheduled for February 14, 2024 and February 15, 2024, respectively," and that it now "expect[ed] to issue its fourth quarter and full year 2023 financial results after market close on Wednesday, February 28, 2024." According to the Company, the delay was necessary "because it needs additional time to complete its year-end reporting process" and "is evaluating its internal control over financial reporting . . .

14

with respect to maintaining effective controls related to information and communications." Chemours also revealed that it needed additional time for its Audit Committee to conduct a related internal review.

50.     In response to this initial development, the price of Chemours common stock fell $3.85 per share, or more than 12%, from a close of $30.49 per share on February 13, 2024, to close at $26.64 per share on February 14, 2024.

51.     Then, before the market opened on February 29, 2024, Chemours stunned investors when it announced that it was delaying the filing of its annual report for 2023 and "the decision of the Board of Directors of Chemours to place President and Chief Executive Officer Mark Newman, Senior Vice President and Chief Financial Officer Jonathan Lock and Vice President, Controller and Principal Accounting Officer Camela Wisel on administrative leave . . . pending the completion of an internal review being overseen by the Audit Committee of the Board of Directors with the assistance of independent outside counsel."  According to the Company, the scope of the investigation "includes the processes for reviewing reports made to the Chemours Ethics Hotline" and Chemours's "practices for managing working capital, including the related impact on metrics within the Company's incentive plans [and] certain non-GAAP metrics."  Given the importance of these issues—not only to executive compensation, but also investors' assessment of Chemours's financial performance—the Company acknowledged that it "is evaluating one or more potential material weaknesses in its internal control over financial reporting as of December 31, 2023 with respect to maintaining effective controls related to the control environment, including the effectiveness of the 'tone at the top' set by certain members of senior management."

52.     In response to these revelations, the price of Chemours common stock plummeted $9.05 per share, or more than 31%, from a close of $28.72 per share on February 28, 2024, to close at $19.67 per share on February 29, 2024.

53.     On March 6, 2024, after the end of the Class Period, Chemours announced the Audit Committee's findings regarding the Company's internal investigation and review.  Among other things, "the Audit Committee concluded that . . . the members of senior management who were placed on administrative leave last week violated the Company's Code of Ethics applicable to the Chief Executive Officer, the Chief Financial Officer, and the Controller relating to the 'promot[ion of] full, fair, accurate, timely and understandable disclosure.'" (Brackets in original).

54.     Specifically, the Company reported that:

> The Audit Committee's determinations . . . included, among other things, that the members of senior management who were placed on administrative leave last week engaged in efforts in the fourth quarter of 2023 to delay payments to certain vendors that were originally due to be paid in the fourth quarter of 2023 until the first quarter of 2024, and to accelerate the collection of receivables into the fourth quarter of 2023 that were originally not due to be received until the first quarter of 2024.  The Audit Committee found that these individuals engaged in these efforts in part to meet free cash flow targets that the Company had communicated publicly, and which also would be part of a key metric for determining incentive compensation applicable to executive officers.  As noted above, there was a lack of transparency with the Company's Board of Directors by the members of senior management who were placed on administrative leave with respect to these actions.

55.     The Company further reported that:

> [T]he net impact on cash flow measures of the working capital timing actions detailed above . . . had the effect of significantly increasing the cash flow measures, including free cash flow, for the quarter ended December 31, 2023, with a corresponding anticipated decrease in these measures in the first quarter of 2024.  The Audit Committee review also determined that similar actions, though to a lesser extent, were taken in the fourth quarter of 2022, resulting in a significant increase in these cash flow measures for the quarter

ended December 31, 2022, and a decrease in these measures in the
first quarter of 2023.

56.     As a result, Defendants revealed that "the Company is evaluating one or more

potential material weaknesses in its internal control over financial reporting as of December 31,

2023, with respect to maintaining effective controls related to the control environment, including

the effectiveness of the 'tone at the top' set by certain members of senior management and the

information and communication components of the COSO internal control framework, including

controls over the Chemours Ethics Hotline program," and stated that "the Company expects to

report on material weaknesses as of December 31, 2023 and its related remediation plans in its

Annual Report on Form 10-K."

## V.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil

Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired

Chemours common stock during the Class Period (the "Class").  Excluded from the Class are

Defendants, their agents, directors and officers of Chemours, and their families and affiliates.

58.     The members of the Class are so numerous that joinder of all members is

impracticable.  The disposition of their claims in a class action will provide substantial benefits to

the parties and the Court.

59.     There is a well-defined community of interest in the questions of law and fact

involved in this case.  Questions of law and fact common to the members of the Class which

predominate over questions which may affect individual Class members include:

        a.      Whether Defendants violated the Exchange Act;

        b.      Whether Defendants omitted and/or misrepresented material facts;

c.      Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

e.      Whether the price of Chemours common stock was artificially inflated; and

f.      The extent of damage sustained by members of the Class and the appropriate measure of damages.

60.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

61.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class actions.  Plaintiff has no interests that conflict with those of the Class.

62.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## VI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

63.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      The omissions and misrepresentations were material;

c.      Chemours common stock traded on an efficient market;

d.     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Chemours common stock; and

e.     Plaintiff and the Class purchased Chemours common stock between the time Defendants misrepresented and/or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented and/or omitted facts.

64.     At all relevant times, the market for Chemours common stock was efficient because:  (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   NO SAFE HARBOR

65.     Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by

Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

66.     Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The price of Chemours common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Chemours common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX.   ADDITIONAL SCIENTER ALLEGATIONS

67.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Chemours common stock during the Class Period.

## X.   CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violations of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

68.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

69.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Chemours

common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

70.     Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Chemours common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of Chemours common stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

72.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

73.     The Individual Defendants acted as controlling persons of Chemours within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the activities giving rise to the securities laws violations as alleged herein, and exercised the same.

75.     As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Chemours common stock during the Class Period.

## XI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.     Awarding compensatory damages in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Such other and further relief as the Court may deem just and proper.

## XII.   <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: March 21, 2024

Of Counsel:

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
Jonathan Z. Naji
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
jnaji@ktmc.com

*Counsel for Plaintiff Robert H. Taylor Jr.*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com

*Counsel for Plaintiff Robert H. Taylor Jr.*

## CERTIFICATION

I, Robert H. Taylor Jr., declare that:

1.      I have reviewed the facts and allegations of the Class Action Complaint for Violations of the Federal Securities Laws and authorize its filing.

2.      I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.      My Class Period purchase and sale transaction(s) in The Chemours Company securities that are the subject of this action are attached in Schedule A. I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.      During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 3/15/2024

DocuSigned by:

397BC7398AEF4B8...

Robert H. Taylor Jr.

**SCHEDULE A**

| Security | Buy/Sell | Date | Quantity | Price |
|----------|----------|------|----------|-------|
| Common Stock | Buy | 3/20/2023 | 10 | $29.00 |