# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| The Chemours Company Securities Litigation, | C.A. No. 24-361-RGA<br><br>CLASS ACTION |

## OPENING BRIEF IN SUPPORT OF DEFENDANT JONATHAN LOCK'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Of Counsel:

David A. Gordon
Geeta Malhotra
Jacqueline Pruitt
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
dgordon@sidley.com
gmalhotra@sidley.com
jpruitt@sidley.com

Dated: October 11, 2024

Raymond J. DiCamillo (#3188)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Counsel for Defendant Jonathan Lock*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

SUMMARY OF ARGUMENT ..................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

I.      Plaintiffs Fail to Allege that Mr. Lock Made Any False or Misleading Statements............... 4

II.     The Allegations Against Mr. Lock Fail to Establish a Strong Inference of Scienter. ............ 7

III.    Plaintiffs Fail to Plead a Section 20(a) Claim Against Mr. Lock. ....................................... 10

CONCLUSION.............................................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Connor v. Unisys Corp.*,
2024 WL 387633 (E.D. Pa. Feb. 1, 2024) ..............................................................................6

*Fain v. USA Techs., Inc.*,
707 F. App'x 91 (3d Cir. 2017) ..............................................................................................9

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004)....................................................................................................8

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999).................................................................................................10

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2020 WL 3026564 (D.N.J. June 5, 2020) ..............................................................................7

*In re Cybershop.com Sec. Litig.*,
189 F. Supp. 2d 214 (D.N.J. 2002) .......................................................................................10

*In re eHealth, Inc. Sec. Litig.*,
2023 WL 6390593 (N.D. Cal. Sept. 28, 2023) .......................................................................5

*In re Great Atlantic & Pacific Tea Co. Sec. Litig.*,
103 F. App'x 465 (3d Cir. 2004) ............................................................................................8

*In re Hertz Global Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018).................................................................................................8, 9

*In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*,
2018 WL 4252537 (E.D. Pa. Sept. 5, 2018) ........................................................................10

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) .........................................................................................9

*In re NutriSystem, Inc. Sec. Litig.*,
653 F. Supp. 2d 563 (E.D. Pa. 2009) .....................................................................................6

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)......................................................................................................4, 5, 7

*Kates ex rel. MetLife, Inc. v. Kandarian*,
2020 WL 4287374 (D. Del. July 27, 2020) ...........................................................................8

*Messner v. USA Techs., Inc.*,
    2016 WL 1466543 (E.D. Pa. Apr. 13, 2016) ...................................................................9

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ........................................................................10

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)..................................................................................7

*Starr Invs. Cayman II, Inc. v. ChinaMediaExpress Holdings, Inc.*,
    2014 WL 4180331 (D. Del. Aug. 21, 2014) ...............................................................4

*Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
    61 F. Supp. 3d 391 (D. Del. 2014)..........................................................................10

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)..................................................................................4

**Statutes and Rules**

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

Securities Exchange Act of 1934......................................................................... *passim*

Rule 10b-5............................................................................................... *passim*

## PRELIMINARY STATEMENT

Jonathan Lock is uniquely situated in this case. He served as the Company's CFO for less than a year and never made a public statement about free cash flow for the fourth quarter of either 2022 or 2023. Yet Plaintiffs' claims turn on "timing actions" that allegedly took place only in those quarters. Plaintiffs have failed to allege that Mr. Lock made any false statement, let alone one with scienter. Mr. Lock must be dismissed from this case.

## SUMMARY OF ARGUMENT

1. Count I of the Amended Complaint ("AC") for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5(b) must be dismissed against Mr. Lock. In addition to the arguments made in Chemours' Brief, which he joins and incorporates (including as to Counts I and II), Mr. Lock must be dismissed for reasons unique to him, including because he was CFO only for a limited period and thus did not make *any* statements during or about the quarters when allegedly wrongful actions occurred, nor could he have done so with scienter.[1]

2. Count III of the AC for violations of Section 20(a) of the Exchange Act must be dismissed against Mr. Lock because no primary violations have been alleged, and he is not alleged to have controlled those who made statements or to have culpably participated in any fraud.

## STATEMENT OF FACTS

Jonathan Lock joined Chemours in 2018 and became CFO on June 6, 2023. AC ¶ 30. Mr. Lock had no experience in an accounting role (nor is he an accountant). *See* Ex. 1, June 6, 2023 8-K at 2. He served as CFO for less than a year before he was placed on leave on February 28, 2024.

---

[1] Please see the Chemours Brief for the Statement of the Nature and Stage of the Proceedings, as well as authority as to the general standards for liability and judicial notice of SEC documents.

1

AC ¶ 30. He did not sign a single 10-K, the only SEC filing that would report on activity during the fourth quarters of any year, which are the only periods during which allegedly improper timing actions are alleged to have occurred. *Id.* ¶ 15. In particular, Mr. Lock did not sign the 2022 10-K because he was not yet CFO, and he did not sign the 2023 10-K because he already was on leave when it was filed. *Id.* ¶ 30. Thus, Mr. Lock never had an opportunity to speak about any allegedly improper timing actions for which he could bear responsibility.

Mr. Lock did sign certifications on the Company's *quarterly* financial reports during the second and third quarters of 2023 and certain 8-Ks, and he participated in earnings calls during those quarters. *Id.* ¶¶ 6, 179, 182, 187, 194, 198, 203. But, to the extent he is alleged to have spoken about cash flow metrics at all in any of those statements, he discussed them only for periods *other* than those in which timing actions allegedly inflated those metrics, and in fact he accurately highlighted that those metrics were *lower* than expected. *See id.* ¶¶ 182–83, 185, 198–99, 201.

Following Mr. Lock's placement on leave, Chemours explained that an "Audit Committee review determined that there was a lack of transparency *with the Company's Board of Directors* by the members of senior management who were placed on administrative leave last week due to the payables and receivables timing actions described below." Ex. 2, March 7, 2024 8-K at 5 (emphasis added). The Audit Committee concluded that management had "engaged in these efforts in part to meet free cash flow targets [for year-end] that the Company had communicated publicly, and which also would be part of a key metric for determining incentive compensation applicable to executive officers."[2] *Id.*

Mr. Lock resigned from the Company effective April 23, 2024. AC ¶ 30. Although he served as CFO for only about eight months, *id.*, during his leave he received approximately two

---

[2] Mr. Lock rejects and disputes the conclusions of the Audit Committee.

months' pay, vested 17,217 shares of stock, obtained an extension of the period to exercise all of his stock options, and became eligible for three months of COBRA premium payments. Ex. 3, April 25, 2024 8-K at 2; Ex. 4, March 10, 2023 Form 4/A at 1 n.3; Ex. 5, March 3, 2023 Form 4 at 1 nn.3–4; Ex. 6, March 3, 2022 Form 4 at 1 nn.3–4; Ex. 7, November 10, 2021 Form 3 at 1 n.3. Mr. Lock never sold stock during the class period. And only a small portion of Mr. Lock's total potential incentive-based compensation as CFO was based on free cash flow metrics.[3]

## ARGUMENT

Plaintiffs cannot allege that Mr. Lock made any false statements about free cash flow for the periods in which allegedly improper timing actions occurred and impacted that measure. They allege Mr. Lock's involvement in only the following statements, none of which addresses free cash flow during the fourth quarters of 2022 or 2023: (1) boilerplate introductory statements during the Q4 2022 earnings call and presentation ("4Q22 earnings release"), AC ¶ 134; (2) boilerplate introductory statements during the Q1 2023 earnings call and presentation ("1Q23 earnings release"), *id.* ¶ 167, (3) the July 28, 2023 8-K ("07/28/23 8-K"), *id.* ¶¶ 179–81; (4) reporting on year-to-date cash flow metrics in the Q2 2023 10-Q ("2Q23 10-Q"), *id.* ¶¶ 182–86, 217–19; (5) "participation" in the Q2 2023 earnings call and presentation ("2Q23 earnings release"), *id.* ¶ 187; (6) the October 26, 2023 8-K ("10/26/23 8-K"), *id.* ¶¶ 194–97; (7) reporting on year-to-date cash flow metrics in the Q3 2023 10-Q ("3Q23 10-Q"), *id.* ¶¶ 198–202, 220–22; and (8) "participation" in the Q3 2023 earnings call and presentation ("3Q23 earnings release"), *id.* ¶ 203.[4]

---

[3] Plaintiffs fail to allege the magnitude of Mr. Lock's incentive compensation based on free cash flow targets. In fact, only a small portion of Mr. Lock's compensation was driven by that metric, including because he was CFO for approximately half the year. *See* Ex. 8, 2024 Proxy Statement at 45, 49–50, 59; Ex. 9, 2023 Proxy Statement at 33–34, 45; Ex. 10, 2022 Proxy Statement at 29.

[4] No allegations are made as to Mr. Lock and the February 9, 2023 8-K and press release, the 2022 10-K, the 2023 Proxy Statement, the April 27, 2023 8-K and press release, or the Q1 2023 10-Q. AC ¶¶ 119–33, 155–66, 210–16. In addition, Mr. Lock is not alleged to have had ultimate authority

Thus, the AC fails to allege, as to Mr. Lock: (1) a false statement; or (2) scienter (*i.e.*, intent or its functional equivalent) in making such a statement. *See* Chemours Br. at 10.

## I.    Plaintiffs Fail to Allege that Mr. Lock Made Any False or Misleading Statements.

The Company's Brief sets out the standard applicable to a claim for securities fraud under Section 10(b) and Rule 10b-5. *See id.* Under the heightened pleading standards of the PSLRA, a complaint must specify "the role of *each* defendant, demonstrating *each* defendant's involvement in the misstatements and omissions." *Winer Family Trust v. Queen*, 503 F.3d 319, 326, 335–36 (3d Cir. 2007) (emphasis added). A complaint cannot survive on so-called "group pleading," *id.* at 337 & n.6, and "only the 'maker' of a statement can be liable for the statement," *Starr Invs. Cayman II, Inc. v. ChinaMediaExpress Holdings, Inc.*, 2014 WL 4180331, at *7 (D. Del. Aug. 21, 2014) (Andrews, J.). Plaintiffs do not, and cannot, plead that Mr. Lock made any false statement.

Plaintiffs allege that improper timing actions took place in the fourth quarters of 2022 and 2023. AC ¶ 15. Those quarters were discussed in only two sets of disclosures: (1) the 2022 10-K and related earnings release and (2) the 2023 10-K and related earnings release. The AC includes allegations about Mr. Lock's involvement in only the 4Q22 earnings release. *Id.* ¶ 134. But Plaintiffs do not allege that Mr. Lock actually spoke about free cash flow in that release. Instead, they allege that Mr. Lock delivered a boilerplate statement at the outset of the earnings call, which directed investors to the presentation and prepared remarks on the Company's website. *Id.*

Nothing in Mr. Lock's boilerplate statement is alleged to be false. *See id.* ¶¶ 137, 140, 145, 148, 152, 154. Instead, Plaintiffs attack statements made by *others* on the call and in the presentation, contending that the delay of payables and acceleration of receivables was not

_____

over the Code of Ethics, and he is not the "maker" of statements therein. *See id.* ¶¶ 223–25; *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); Chemours Br. at 17–18. And, of course, the 2023 10-K (which Mr. Lock did not sign) is not alleged to be false.

disclosed and that the statements gave the impression that Chemours' free cash flow would be higher in later quarters due to the seasonality of its business. *Id.* But (in addition to those statements not being false, *see* Chemours Br. at 10–19), Mr. Lock was not the "maker" of any earnings release statements merely because he said *where* they could be found. He did not have ultimate authority over these statements—in fact, the AC alleges they were made by other individuals. AC ¶¶ 135–54; *see Janus*, 564 U.S. at 142–43 ("[A]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed."); *accord In re eHealth, Inc. Sec. Litig.*, 2023 WL 6390593, at *9 (N.D. Cal. Sept. 28, 2023) (individual defendant lacked ultimate authority over statements by other corporate officers during earnings calls).

Thus, Plaintiffs are left to argue that Mr. Lock made false statements outside of the time periods during which the improper timing actions allegedly occurred. Those arguments fail.

*First*, the allegations concerning Mr. Lock's introductory statement during the 1Q23 earnings release fail for the same reasons as the 4Q22 earnings release. *See supra* at 4–5.

*Second,* Mr. Lock signed 2Q23 and 3Q23 10-Qs that Plaintiffs allege falsely attributed decreases in operating cash inflows to "lower earnings," "changes in net working capital," and "higher spend" at the Fayetteville site, and operating cash flow generation to, among other things, global economic conditions and the historical pattern of seasonality. AC ¶¶ 183–86, 199–202. In their view, these statements failed to disclose that the allegedly improper timing actions in the fourth quarter of the *prior year* drove Chemours' cash operating activities and operating cash flow generation. *Id.* ¶¶ 184, 186, 200, 202. But Mr. Lock's statements addressed only the results of *those quarters or the fiscal year-to-date*—which did *not* include activity in the fourth quarter—and there are no allegations that any improper timing actions occurred in the first, second, or third

quarters. Nor can Plaintiffs allege that operating cash flow had not actually decreased or that the explanations provided for the year-over-year change were inaccurate—again, because no improper timing actions are alleged to have occurred in the first three quarters of 2022, either.[5] *Id.*

*Third*, the AC alleges that Mr. Lock certified in the 2Q23 and 3Q23 10-Qs that an evaluation of the effectiveness of internal controls had been conducted and they were effective at the reasonable assurance level. *Id.* ¶¶ 218, 221. According to Plaintiffs, these certifications were false because "Defendants exploited weaknesses in Chemours' internal controls" to engage in the allegedly improper timing actions in the fourth quarters of 2022 and 2023. *See id.* ¶¶ 15, 219, 222. But there are no allegations that *Mr. Lock* himself did so—because he was *not* the CFO in the fourth quarter of 2022, there are no allegations of "exploitation" of any controls during the second and third quarters of 2023, and again, he made no statement at year-end 2023. *See id.* ¶¶ 219, 222. And, as explained in the Company's Brief at 15–17, SOX certifications concerning internal controls are non-actionable statements of opinion. *See, e.g., Connor v. Unisys Corp.*, 2024 WL 387633, at *5–6 (E.D. Pa. Feb. 1, 2024). Separately, there are no allegations that Mr. Lock did not actually evaluate the effectiveness of Chemours' internal controls, or that he believed—*before* the fourth quarter—that there were control deficiencies. *See id.* at *6–8 (statements of opinion actionable only "if the speaker did not believe the statement when they made it").

*Finally*, Plaintiffs allege that the press releases attached to the 07/28/23 and 10/26/23 8-Ks (though, critically, not the 8-Ks themselves)[6] included misstatements because the cash flow

---

[5] Plaintiffs also allege that Mr. Lock "participated" in the 2Q23 and 3Q23 earnings releases and "discussed Free Cash Flow himself." AC ¶¶ 187–93, 203–09, 248. But they do not allege any *particular* false statement attributable to Mr. Lock. *In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 576–78 (E.D. Pa. 2009) (allegations failed to identify statements with requisite specificity).

[6] The AC incorrectly suggests that certain statements about free cash flow were included in the 8-Ks themselves. *See* AC ¶¶ 195–96. Those statements are instead found in the press releases

discussion should have disclosed timing "actions" that *had not yet happened* but would occur in the fourth quarter. *See* Ex. 11, 07/28/23 8-K; Ex. 12, 10/26/23 8-K; AC ¶¶ 179–81, 194–97. In addition to being forward-looking and not actionable, Mr. Lock is not the "maker" of statements in the press releases; he only signed the 8-Ks, not the attachments, and Plaintiffs do not allege that he was quoted or had ultimate authority over the press releases. *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *15 (D.N.J. June 5, 2020) (signer of 8-K not a "maker" of statements in attached press release that did not include signer's name, contact information, or quotes and over which he had no review or approval duty); *Janus*, 564 U.S. at 142 ("One who prepares or publishes a statement on behalf of another is not its maker.").

## II. The Allegations Against Mr. Lock Fail to Establish a Strong Inference of Scienter.

Separately, the Complaint is sorely lacking in specific allegations supporting a strong inference of scienter as to Mr. Lock. There are no allegations that Mr. Lock knew at the time of *any* of the statements he made that any improper timing actions had occurred. The only alleged timing actions in which he is alleged to have participated himself had *not yet occurred* at the time of his statements. And Mr. Lock is not alleged to have known of the timing actions in the fourth quarter of 2022 when he made any statements; this is unsurprising, given that he was not the CFO when those actions took place. This is fatal to Plaintiffs' claims. *See* Chemours Br. at 20–28.

In addition to the allegations addressed in the Company's Brief, Plaintiffs seek to support scienter with allegations that (1) Mr. Lock had motive because his incentive compensation depended, in part, on free cash flow metrics, AC ¶¶ 227, 229–38; (2) the Audit Committee determined he had lacked "transparency" with the Board, *id.* ¶ 247, (3) he signed false SOX

___

attached to the 8-Ks. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (judicial notice of SEC filings may be taken "to determine what the documents stated" (quotation omitted)).

7

certifications for the 2Q23 and 3Q23 10-Qs, *id.* ¶¶ 248–50, (4) he resigned without severance, *id.* ¶ 247, and (5) he was responsible for Chemours' financial statements as CFO, *id.* ¶ 248. None of these allegations, alone or together, creates the requisite "strong inference" of scienter.

*Incentive Compensation and Publicly Communicated Targets.* Plaintiffs allege Mr. Lock had motive to defraud investors to increase his incentive compensation and meet publicly communicated free cash flow targets. *Id.* ¶¶ 227, 233, 236–38, 247, 250. But Plaintiffs carefully do not allege *how much* of *Mr. Lock's* compensation depended on meeting those targets, and for good reason: only a small fraction of his total compensation was affected by free cash flow, especially because he had been CFO for only a portion of the year. Vague allegations concerning ordinary corporate motives do not support a strong inference of scienter. *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004) (incentive compensation); *In re Great Atlantic & Pacific Tea Co. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004) (market expectations).

*Audit Committee Findings.* Plaintiffs allege that the March 7, 2024 8-K revealed that the Audit Committee "found that Lock acted knowingly and recklessly." AC ¶ 247. It did no such thing. As the Company's Brief makes clear, the Audit Committee did *not* conclude that Mr. Lock knowingly misled the public or even suggest any misconduct in connection with public statements. To the contrary, the Company's statement expressly was cabined to Mr. Lock's dealings *with the Board* at the end of 2023, not to any public statements. *See In re Hertz Global Holdings Inc.*, 905 F.3d 106, 117 (3d Cir. 2018). "[I]nternal management problems are not actionable under the securities fraud laws unless they involve scienter"—which means scienter requires *more*. *Kates ex rel. MetLife, Inc. v. Kandarian*, 2020 WL 4287374, at *11 (D. Del. July 27, 2020).

*SOX Certifications.* Plaintiffs allege that Mr. Lock's signing of SOX certifications supports scienter because Defendants "exploited weaknesses in Chemours' internal controls" yet certified

8

their effectiveness. AC ¶¶ 218–22, 250. Again, Plaintiffs ignore the timeline: Mr. Lock is not alleged to have participated in any improper timing actions until the fourth quarter of 2023, and there is no allegation that Mr. Lock knew the certifications for earlier quarters to be false when made. *See In re Hertz*, 905 F.3d at 118 (affirming dismissal given "the absence of any allegation that the defendant knew he was signing a false SEC filing or recklessly disregarded inaccuracies contained in an SEC filing"); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 288 (D.N.J. 2007) (false SOX certifications cannot support scienter, without allegations "indicating that certifying defendants had clear reasons to doubt the validity of financials being certified" at the time).

*Resignation and Severance.* Plaintiffs further suggest that Mr. Lock's resignation without severance supports a finding of scienter. AC ¶ 247. But there is no allegation that Mr. Lock resigned because of any *public statements*. *In re Hertz*, 905 F.3d at 119 ("Corporate resignations do not strengthen an inference of scienter, when, as here, the allegations do not cogently suggest that the resignations resulted from the relevant executives' knowing or reckless involvement in a fraud."). In addition, Plaintiffs are wrong. Mr. Lock did not leave the Company empty handed; he received severance as a practical matter, continuing to be paid his salary and even vesting additional Company stock during his two-month leave, as well as receiving extended time to exercise all of his options, among other benefits. *See Messner v. USA Techs., Inc.*, 2016 WL 1466543, at *11 (E.D. Pa. Apr. 13, 2016) (resignation of CFO after four months did not support scienter where he received a month's pay, healthcare, and other benefits), *aff'd sub nom. Fain v. USA Techs., Inc.*, 707 F. App'x 91 (3d Cir. 2017).

*Position as CFO.* Plaintiffs also assert that Mr. Lock, by virtue of his position as CFO, must have known of inaccuracies in the Company's financial statements. *See* AC ¶ 248. But Mr. Lock was only CFO for a few short months and *not* when the initial allegedly improper actions

9

took place—and allegations relying on a defendant's position are insufficient in any event. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("[A]llegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'" (quotation omitted)).

Plaintiffs' allegations on their face fail to support scienter, and the notable *absence* of two particular allegations against Mr. Lock confirms the deficiency of the allegations. Plaintiffs do not allege that Mr. Lock engaged in insider trading or otherwise profited from the sale of shares at an allegedly inflated price. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 550 (D.N.J. 2010) ("[T]he Court finds that because the Individual Defendants did not sell their stock during the Class Period, there is no strong inference of scienter."); *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 234 (D.N.J. 2002) (similar). And Plaintiffs do not allege that any confidential witness implicated Mr. Lock in alleged wrongdoing. *See In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*, 2018 WL 4252537, at *8 (E.D. Pa. Sept. 5, 2018).

### III.    Plaintiffs Fail to Plead a Section 20(a) Claim Against Mr. Lock.

To state a Section 20(a) claim, Plaintiffs must plead a primary violation, that Mr. Lock controlled a person making a misstatement, and that he was a culpable participant. *See Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 61 F. Supp. 3d 391, 397–98 (D. Del. 2014) (Andrews, J.). Plaintiffs fail in each respect: he had no such control, *see id.* (control not alleged based on position); just as he had no scienter, he engaged in no culpable participation, *see supra* at 7–10; and there was no primary violation, *see* Chemours Br. at 30.

### CONCLUSION

For these reasons, Mr. Lock respectfully requests that the Court grant his motion to dismiss.

10

Of Counsel:

David A. Gordon (*pro hac vice*)
Geeta Malhotra (*pro hac vice*)
Jacqueline Pruitt (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
dgordon@sidley.com
gmalhotra@sidley.com
jpruitt@sidley.com

Dated: October 11, 2024

*/s/ Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Counsel for Defendant Jonathan Lock*

11