**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| THE CHEMOURS COMPANY SECURITIES LITIGATION | Case No. 24-cv-361 RGA<br>Hon. Richard G. Andrews |
| This document relates to all actions. | <u>CLASS ACTION</u> |

**OPENING BRIEF IN SUPPORT OF DEFENDANT SAMEER RALHAN'S**
**MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Of Counsel:

Michael S. Schachter (*pro hac vice*)
Todd G. Cosenza (*pro hac vice*)
Samantha G. Prince (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
mschachter@willkie.com
tcosenza@willkie.com
sprince@willkie.com

D. McKinley Measley (#5108)
Alec F. Hoeschel (#7066)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dmeasley@morrisnichols.com
ahoeschel@morrisnichols.com

*Attorneys for Defendant Sameer Ralhan*

October 11, 2024

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.............................2

SUMMARY OF ARGUMENT ....................................................................................................2

STATEMENT OF FACTS ...........................................................................................................2

ARGUMENT................................................................................................................................3

I.      PLAINTIFFS FAIL TO PLEAD THE REQUISITE STRONG INFERENCE OF
        FRAUDULENT INTENT UNDER SECTION 10(b) ........................................................3

        A.      Plaintiffs Fail to Allege That Mr. Ralhan Knew or Recklessly Disregarded
                Facts That Contradicted the Alleged Misstatements ...............................................4

                1.    The Audit Committee Findings Cannot Support Scienter as to Mr. Ralhan ...........4

                2.    There Are No Allegations That Mr. Ralhan Had Access to Information That
                      Contradicted Chemours' Public Statements .........................................................5

                3.    Plaintiffs' Other Allegations Do Not Support Scienter as to Mr. Ralhan................6

        B.      Mr. Ralhan's Exercise of His Chemours Stock Options Does Not
                Demonstrate a Motive to Defraud and Cannot Support Scienter ...........................7

II.     THE COMPLAINT FAILS TO PLEAD SECTION 20(a) CONTROL
        LIABILITY AGAINST MR. RALHAN .........................................................................10

CONCLUSION...........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Adolor Corp. Sec. Litig.*,
   616 F. Supp. 2d 551 (E.D. Pa. 2009) ......................................................................10

*In re Advance Auto Parts, Inc., Sec. Litig.*,
   2020 WL 599543 (D. Del. Feb. 7, 2020) .................................................................10

*In re Advanta Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999).............................................................................4, 9, 10

*Bartesch v. Cook*,
   941 F. Supp. 2d 501 (D. Del. 2013).........................................................................10

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)....................................................................................8

*City of Edinburgh Council v. Pfizer Inc.*,
   754 F.3d 159 (3d Cir. 2014).....................................................................................10

*City of Roseville Emps. Ret. Sys v. Horizon Lines, Inc.*,
   686 F. Supp. 2d 404 (D. Del. 2009).......................................................................5, 6

*Dang v. Amarin Corp.*,
   2024 WL 4285900 (D.N.J. Sept. 25, 2024) ...............................................................9

*In re Hertz Global Holdings Inc.*,
   2017 WL 1536223 (D.N.J. Apr. 27, 2017) .................................................................8

*In re Hertz Global Holdings Inc.*,
   905 F.3d 106 (3d Cir. 2018).............................................................................7, 9, 10

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)....................................................................................3, 9

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007) ............................................................................7

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
   834 F.3d 481 (3d Cir. 2016).......................................................................................6

*Pamcah-UA Loc. 675 Pension Fund v. BT Grp. PLC*,
   2021 WL 3415060 (3d Cir. Aug. 5, 2021)..................................................................3

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)...................................................................................8

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013)....................................................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).................................................................................................9

*Waterford Township Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018) ..................................................................5

**Statutes, Rules, and Regulations**

Securities Exchange Act of 1934

    Section 10(b)...........................................................................................*passim*

    Section 20(a) ....................................................................................................2, 10

Private Securities Litigation Reform Act of 1995..........................................................3

17 C.F.R. § 240.10b-5 (Rule 10b-5)...............................................................................2

Defendant Sameer Ralhan ("Mr. Ralhan") submits this memorandum of law in support of his Motion to Dismiss the Amended Class Action Complaint (D.I. 17), the "Complaint" (referred to herein as "¶ _").  Mr. Ralhan joins in the arguments made by The Chemours Company ("Chemours" or the "Company") in its Motion to Dismiss (D.I. 37)[1] and files this memorandum to dismiss the Complaint on several additional grounds unique to him.

## PRELIMINARY STATEMENT

As detailed in Chemours' Brief, Plaintiffs fail to plead any actionable misstatement or omission and fail to establish scienter as to any individual defendant.  Additionally, the Complaint must be dismissed as to Mr. Ralhan because it is utterly devoid of any allegation that he made any statement with an intent to deceive.[2]

Plaintiffs' Complaint leans heavily on statements by the Company's Audit Committee that three other individuals—not Mr. Ralhan—violated the Company's Code of Ethics due to a lack of transparency with its Board.  (*See* ¶¶ 79–80).  The Audit Committee findings make no mention of Mr. Ralhan whatsoever.  Against Mr. Ralhan, the Complaint alleges only that as the former Chief Financial Officer ("CFO") of Chemours, he signed four SEC filings and participated in two earnings calls reciting Chemours' financial performance.  The Complaint does not allege that Mr. Ralhan knew or recklessly disregarded facts that contradicted any statement made in those filings or on those calls.  The Complaint, instead, simply posits that "it is inconceivable" that Mr. Ralhan, as Chemours' former CFO, "was not involved in and not aware of the Free Cash Flow manipulation that the Company undertook."  (¶ 254).  The scope of what Plaintiffs can conceive,

---

[1] Chemours' Motion to Dismiss is referred to herein as "Chemours' Brief" or "Chemours Br."
[2] To the extent Plaintiffs also intended to assert a "scheme liability" claim against Mr. Ralhan, something that is not clear from the Complaint, such claim would fail as a matter of law.  Among other reasons, the Complaint does not allege the existence of any scheme based on allegedly deceptive conduct that is distinct from the alleged misstatements.  (*See* Chemours' Br., Part IV).

however, is no substitute for allegations of fact, and the Complaint alleges no facts showing Mr. Ralhan acted with scienter.

The Complaint similarly fails to allege that Mr. Ralhan acted with any motive to commit fraud. The Complaint claims significance from Mr. Ralhan's alleged sale of approximately $8.5 million worth of Chemours stock six to nine months before the Company made its purported corrective disclosure. But Plaintiffs misread Mr. Ralhan's filings. Mr. Ralhan sold no stock. Rather, he exercised options which would have expired worthless had he not done so within three months of his resignation in June 2023, a fact which in no way suggests scienter and leaves Plaintiffs' conclusory allegations against Mr. Ralhan entirely unsupported.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Mr. Ralhan incorporates by reference the Statement of the Nature and Stage of the Proceedings articulated in Chemours' Brief. Chemours Br. at 2. Mr. Ralhan moves to dismiss.

## SUMMARY OF ARGUMENT

1.      Plaintiffs' § 10(b) and Rule 10b-5 claims must be dismissed against Mr. Ralhan because Plaintiffs fail to plead that Mr. Ralhan made any false statement with scienter. *See* Point I.

2.      Plaintiffs' § 20(a) claim must be dismissed against Mr. Ralhan because Plaintiffs fail to allege a primary violation and fail to allege that Mr. Ralhan controlled Chemours or was a culpable participant in the Company's alleged primary violation. *See* Point II.

## STATEMENT OF FACTS

Mr. Ralhan incorporates by reference the Statement of Facts in Chemours' Brief, and sets forth below additional factual allegations pertinent to Mr. Ralhan. Mr. Ralhan was the former CFO of Chemours from June 2019 to June 19, 2023 when he left the Company. (¶ 29). Therefore, Mr. Ralhan worked at Chemours only for the first four months of the purported one-year class

period (i.e.*,* February 10, 2023 through February 28, 2024), and had nothing to do with the operations of the Company when the alleged corrective disclosure was made.

**ARGUMENT**

**I.   PLAINTIFFS FAIL TO PLEAD THE REQUISITE STRONG INFERENCE OF FRAUDULENT INTENT UNDER SECTION 10(b)**

For the reasons articulated in Chemours' Brief, Plaintiffs fail to plead any actionable misstatements by Mr. Ralhan.  There is not a single allegation suggesting that any purported statement by Mr. Ralhan regarding Chemours' Free Cash Flows was false; accordingly, the Complaint must be dismissed.  *See* Chemours' Br. at Part I.A, B.  The Complaint against Mr. Ralhan must also be dismissed because it lacks any allegation of fact giving rise to a strong inference that he acted with scienter.

"[U]nder the PSLRA's '[e]xacting' pleading standard for scienter, 'any private securities complaint alleging that the defendant made a false or misleading statement must . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007)).  Scienter requires affirmative proof of a mental state embracing "intent to deceive, manipulate, or defraud," either knowingly or recklessly.  *Pamcah-UA Loc. 675 Pension Fund v. BT Grp. PLC*, 2021 WL 3415060, at *1 (3d Cir. Aug. 5, 2021) (internal citation omitted).  The "allegations must support an inference of scienter that is 'more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Id.* (quoting *Tellabs*, 551 U.S. at 314).  The Complaint alleges no facts showing that Mr. Ralhan intentionally or recklessly defrauded investors.

- 3 -

A. **Plaintiffs Fail to Allege That Mr. Ralhan Knew or Recklessly Disregarded Facts That Contradicted the Alleged Misstatements**

Plaintiffs assert, without support, that Mr. Ralhan was involved in accelerating receivables and delaying payables. (e.g., ¶ 255). The Audit Committee made no such finding. It concluded that other executives "engaged in efforts . . . to delay payments . . . and to accelerate the collection of receivables" months after Mr. Ralhan had left the Company. (¶ 80). With respect to the period during Mr. Ralhan's tenure, the Audit Committee only passively stated that it "also determined that similar actions, though to a lesser extent, were taken in the fourth quarter of 2022." (¶ 81). The Audit Committee did not find that Mr. Ralhan did anything improper.

But, even crediting the Complaint's unsupported allegations, Plaintiffs do not allege facts supporting a conclusion that, by accelerating collections or delaying payments, Mr. Ralhan intended to commit fraud (or even that doing so rendered the reported Free Cash Flows inaccurate). The Complaint simply asserts that Mr. Ralhan must have had knowledge of the fraudulent nature of the challenged statements because he was responsible for "reviewing Chemours' financial statements." (¶ 254). Generalized allegations of access to documents are insufficient to raise an inference of scienter. *See In re Advanta Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("[A] pleading of scienter may not rest on a bare inference that a defendant must have had knowledge of the facts.") (quotation omitted). The Complaint's other generalized categories of scienter allegations similarly suffer from glaring deficiencies when analyzed as to Mr. Ralhan.

1. ***The Audit Committee Findings Cannot Support Scienter as to Mr. Ralhan***

The Complaint leans heavily on the allegation that, in March 2024, Chemours "disclosed that the Audit Committee's review 'determined that there was a lack of transparency with the Company's Board of Directors by the members of senior management who were placed on administrative leave.'" (¶ 79). While the Complaint dedicates dozens of paragraphs to reciting the

- 4 -

Audit Committee's findings (*see, e.g.*, ¶¶ 15–17, 78–103), these findings are irrelevant to Mr. Ralhan, who left Chemours almost a year earlier—on June 19, 2023 (*see* ¶¶ 29, 254).  The Audit Committee made <u>no</u> findings about Mr. Ralhan. (*See* ¶ 254, hypothesizing that it is "inconceivable" Mr. Ralhan did not know given that the Audit Committee determined that three other managers were "aware").   The Company's decision to place other individuals on administrative leave does not—and cannot—support a finding of scienter as to Mr. Ralhan. *See, e.g.*, *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 425 (D. Del. 2009) (declining to attribute the knowledge of some directors to all directors).

2.        ***There Are No Allegations That Mr. Ralhan Had Access to Information That Contradicted Chemours' Public Statements***

Plaintiffs' scienter allegations based on former employee ("FE") testimony add nothing to the scienter analysis. There are no factual allegations that Mr. Ralhan was made aware of the alleged misconduct during the class period, much less how, when, or under what circumstances.[3] FE-1 is the only FE alleged to have worked directly with Mr. Ralhan.  But FE-1's allegations concerning Mr. Ralhan are from 2018—five years before the alleged class period  (¶¶ 108, 255). Indeed, FE-1 admits that she can offer no insight about the relevant time period beyond her personal "belie[fs]."  (¶ 109).  *See Waterford Township Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1154 (C.D. Cal. 2018) ("Plaintiff's allegations indicate FE1 left Mattel in October 2016—[weeks] before the Class Period.  Accordingly, FE1 could not have personal knowledge of the retail inventory levels at the time Defendants' allegedly false statements were made"). Allegations that "FE-1 stated that Ralhan had long running direct involvement in Free Cash Flow manipulation . . . in 2018" and "Ralhan decided which accounts would not be paid even though they were due"

---

[3] *See generally Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 244 (3d Cir. 2013) (courts must "discount" anonymous source allegations that fail to provide sufficient detail).

(¶ 255) are untethered to any alleged misrepresentation or omission during the class period. *See OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 495–96 (3d Cir. 2016) (discrediting confidential witness who failed to "'plead the who, what, when, where and how' of a supposed misrepresentation" and was "not sufficiently on point.") (quoting *Avaya*, 564 F.3d at 253).

3.      ***Plaintiffs' Other Allegations Do Not Support Scienter as to Mr. Ralhan***

Plaintiffs' allegations that Mr. Ralhan "spoke about Free Cash Flow on the earnings calls" and "made statements during the earnings calls . . . that gave investors misleading explanations for Chemours' weak Free Cash Flow" (¶ 256) are equally insufficient to show scienter.  To plead scienter, Plaintiffs must show that Mr. Ralhan *knew or recklessly disregarded* that the alleged cash management actions were an accounting violation.  Mere comments involving business judgments, without more, do not establish scienter. *See* Chemours' Br. at Part II.A.  Plaintiffs have not pleaded sufficient facts to support a strong inference that Mr. Ralhan was involved in any improper cash management actions during the class period.  Nor do Plaintiffs allege facts showing that Mr. Ralhan believed that any alleged cash management action constituted an accounting violation or was improper in any way. *See supra* at 4.  For this conclusion, Plaintiffs offer nothing other than the fact that Mr. Ralhan was the "CFO until June 19, 2023." (¶ 254)  But Mr. Ralhan's role at the Company is not sufficient to show knowledge that any statement made by the Company was false or misleading. *See City of Roseville*, 686 F. Supp. 2d at 422 (refusing to "infer that [some defendants] were aware of the conspiracy merely because they held high-level positions within the company").

Further, that Mr. Ralhan signed boilerplate Sarbanes–Oxley Act of 2002 ("SOX") certifications for the 2022 Form 10-K and first quarter 2023 Form 10-Q (¶¶ 257–58) attesting to the accuracy of Chemours' financials and/or confirming that Chemours' internal controls were effective adds nothing to Plaintiffs' desired inference of fraud.  First, as detailed in Chemours'

Brief, Chemours' financial statements are in fact accurate. *See* Chemours' Br. at Part I.A. And, certifications as to the Company's internal controls are inactionable statements of opinion and belief. *Id.* at Part I.C. Second, even assuming, arguendo, that the SOX certifications were false—and they were not—in the absence of any allegation that Mr. Ralhan *knew* he was certifying a false statement, the mere fact that Mr. Ralhan signed SOX certifications "that turned out to be materially false does not add to the scienter puzzle." *See In re Hertz Global Holdings Inc.*, 905 F.3d 106, 118 (3d Cir. 2018); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 289–90 (D.N.J. 2007) ("erroneous SOX certification cannot establish the requisite strong inference of scienter" unless "defendants knew or consciously avoided any meaningful exposure to the information that was rendering their SOX certification erroneous").

    **B.**    **Mr. Ralhan's Exercise of His Chemours Stock Options Does Not Demonstrate a Motive to Defraud and Cannot Support Scienter**

As to Plaintiffs' claim that Mr. Ralhan's Form 144s disclosing his intent to sell 259,408 shares of Chemours stock worth approximately $8.5 million during the class period suggests a "motiv[e]" to defraud investors, ¶¶ 239–241, these allegations are demonstrably false. Plaintiffs claim that Mr. Ralhan's stock sales between June and September 2023 show that he was "motivated to make misleading statements concerning Chemours' cash flow metrics and internal controls so that he could sell shares of the Company's stock at inflated prices." (¶ 241). But Plaintiffs misread the public filings. Mr. Ralhan was clearly not opportunistically selling 259,408 shares because the price was inflated.

Mr. Ralhan left Chemours on June 19, 2023. (¶ 29). Under the Company's option plan, he had to exercise his stock options, for some options prior to his departure and for others within three months of his departure, or they would expire worthless. As a result, a few days before his departure in June 2023, Mr. Ralhan disclosed that he would be exercising his options over the

following three months. In other words, Mr. Ralhan's Form 144s show nothing more than that he was leaving Chemours and was "motivated" not to forfeit his stock options. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (because "corporate executives are compensated in terms of stock and stock options," it is not unusual that "these individuals will trade those securities in the normal course of events"). This in no way reflects a motivation to deceive.

The public records show the following:[4]

- 80,000 of the 259,408 shares were options awarded to Mr. Ralhan on April 26, 2016 pursuant to an award agreement that required Mr. Ralhan to exercise those options prior to leaving Chemours, and he exercised these 80,000 options on June 8 and June 13, 2023,[5] before departing Chemours on June 19, 2023.[6]

- The remaining 179,408 shares were options awarded to Mr. Ralhan on various dates between March 1, 2017 and March 1, 2022 pursuant to options award agreements that required Mr. Ralhan to exercise within 90 days of ending his employment with Chemours,[7] so he disclosed his intent to exercise those options within 90 days of his June 19, 2023 departure.[8][9]

---

[4] In ruling on a motion to dismiss, the Court may take judicial notice of public filings. *See In re Hertz Global Holdings Inc.*, 2017 WL 1536223, at *22 n.10 (D.N.J. Apr. 27, 2017) (taking judicial notice of SEC filings showing that the challenged sales were made pursuant to 10b5-1 plans); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

[5] *See* Ex. 1 (Forms 144 dated June 8 and June 13, 2023) (showing 50,000 and 30,000 options exercised, respectively, for a total of 80,000 shares).

[6] *See* Ex. 2 (Chemours' 2023 Proxy) at 55 (showing 80,000 shares issued to Mr. Ralhan on April 26, 2016 at an exercise price of $9.43); *see also* Ex. 3 (Award Terms of Options Granted Under Chemours Equity Incentive Plan attached as Exhibit 10.21 to Form 10-Q filed August 6, 2015) at 2 ("Options must be exercised by the date on which you terminate employment").

[7] *See* Ex. 4 (Award Terms of Options Granted Under The Chemours Company 2017 Equity and Incentive Plan, as amended and restated as of April 28, 2021, attached as Exhibit 10.32 to Chemours' Form 10-K filed February 17, 2017) at 2 ("Vested Options will be exercisable through the date that is 90 days after the date of your termination of employment or, if earlier, the Expiration Date set forth above. After that date, any unexercised Options will expire. Any unvested Options as of the date of your termination of employment will be forfeited.").

[8] *See* Ex. 5 (Forms 144 filed by Mr. Ralhan between June 14, 2023 and September 14, 2023).

[9] Plaintiffs even get wrong the amount Mr. Ralhan received when he exercised his options. While Plaintiffs assert that Mr. Ralhan sold 259,408 "shares of Chemours common stock for

Thus, the timing of Mr. Ralhan's options exercise, which was dictated by the Company's options plan, supports no inference of scienter whatsoever. *See Advanta*, 180 F.3d at 541 (no inference of scienter can be drawn from the exercise of stock options, without more); *see also Avaya*, 564 F.3d at 279 (no inference of scienter where shares "were sold pursuant to the terms of a Rule 10b5–1 plan"); *Dang v. Amarin Corp.*, 2024 WL 4285900, at *29 (D.N.J. Sept. 25, 2024) (that trades were made pursuant to pre-determined plan "further undercuts the inference Plaintiffs draw from Defendants' stock sales").[10]

Moreover, Mr. Ralhan's June–September 2023 options exercises occurred months before the alleged corrective disclosure on February 13, 2024. *See Advanta*, 180 F.3d at 540 (declining to infer scienter when trading took place three months before negative news publicly announced); *see also Hertz*, 905 F.3d at 120 ("The lack of any temporally suspicious trades weighs against inferring scienter from the trading activity"). Further, that only Mr. Ralhan and no other named Defendant is alleged to have traded shares would further undermine any inference of scienter, if any was justified at all. *See* Chemours Br. at 28.

Beyond all this, Plaintiffs' baseless accusation that Mr. Ralhan was motivated to profit from selling Chemours stock at artificially "inflated prices" (¶ 241) is undermined completely by the fact that Mr. Ralhan *still owns the same number of Chemours shares* as he did well prior to leaving Chemours. As of April 3, 2024, approximately 10 months after Mr. Ralhan left the Company and after the end of the class period, Mr. Ralhan continued to own approximately

---

$8,544,292.83," (¶ 239),  Chemours' 2024 Proxy Statement shows that this option exercise resulted in a "value realized" of $4,521,566 ("The value realized upon exercise is the difference between the market value of the stock on the exercise date and the option price, multiplied by the number of shares acquired on exercise").  *See* Ex. 6 (Chemours 2024 Proxy) at 64.

[10] At a minimum, under *Tellabs*, the non-fraudulent inference is far more compelling than what is offered by Plaintiffs, which in and of itself warrants dismissal.  *See Tellabs*, 551 U.S. at 314.

320,749 shares of Chemours common stock.  *Compare* Ex. 6 (Chemours 2024 Proxy) at 29 *with* Ex. 2 (Chemours 2023 Proxy) at 25 (showing same number of shares); *see also Hertz*, 905 F.3d at 119 (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 277 (3d Cir. 2006)) (stating that whether a sale is "unusual in scope" depends on factors such as . . . "the portion of stockholdings sold"); *In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 572–73 (E.D. Pa. 2009) (allegations that defendants "held onto their shares . . . raises a compelling inference against scienter"); *Advanta*, 180 F.3d at 540–41 (no scienter where defendant "continued to hold a sizable percentage" of company stock).

## II.    THE COMPLAINT FAILS TO PLEAD SECTION 20(a) CONTROL LIABILITY AGAINST MR. RALHAN

The Complaint fails to plead any Section 20(a) control liability claim against Mr. Ralhan, ¶¶ 312–17, 329–36, because it "fails to allege a primary Section 10(b) violation." *See Bartesch v. Cook*, 941 F. Supp. 2d 501, 513 (D. Del. 2013); *see also City of Edinburgh Council v. Pfizer Inc.*, 754 F.3d 159, 177 (3d Cir. 2014) (dismissing § 20(a) claim for failure to "adequately plead a predicate section 10(b) violation."). This claim also fails because Plaintiffs fail to allege that Mr. Ralhan actually "controlled" the Company in the four short months out of the class period that he was even at the Company, or that he was a "culpable participant" in the Company's alleged primary violation. *See In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *10 (D. Del. Feb. 7, 2020).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice as to Mr. Ralhan.

DATED: October 11, 2024

Of Counsel:

Michael S. Schachter (*pro hac vice*)
Todd G. Cosenza (*pro hac vice*)
Samantha G. Prince (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
mschachter@willkie.com
tcosenza@willkie.com
sprince@willkie.com

/s/ D. McKinley Measley
D. McKinley Measley (#5108)
Alec F. Hoeschel (#7066)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dmeasley@morrisnichols.com
ahoeschel@morrisnichols.com

*Attorneys for Defendant Sameer Ralhan*

- 11 -