**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| THE CHEMOURS COMPANY SECURITIES LITIGATION | Case No. 24-cv-361 RGA<br>Hon. Richard G. Andrews |
| This document relates to all actions. | <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF
MARK NEWMAN'S MOTION TO DISMISS
<u>THE AMENDED CLASS ACTION COMPLAINT</u>**

OF COUNSEL:

PETRILLO KLEIN + BOXER LLP
655 Third Avenue
New York, NY  10017
(212) 370-0330

GELLERT SEITZ BUSENKELL
    & BROWN LLC
Michael Busenkell (DE 3393)
1201 N. Orange Street, Suite 300
Wilmington, DE  19801
(302) 425-5812

*Counsel for Mark Newman*

October 11, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...............................................................................................................2

I.    Plaintiffs' securities fraud claims should be dismissed because Mr. Newman's alleged "lack of transparency" with the Company's Board is insufficient to give rise to a strong inference of scienter. ................................................................................2

    A.    The Audit Committee did not find that the Company's disclosures were deficient or that Mr. Newman acted knowingly or recklessly, but identified only a "lack of transparency" with the Company's Board regarding a longstanding, "routine," timing practice that was widely known within the Company. ....................................................................................................2

    B.    Mr. Newman knew that Chemours had long highlighted that its cash flows are impacted by management's timing of collections and payments and reasonably believed these disclosures to be adequate.................................................3

    C.    The Company's conclusion, following the Audit Committee investigation, that the timing actions regarding which there was an alleged lack of transparency did not require a restatement, and the independent auditor's view that the Company's financial statements were fairly presented, negates Plaintiffs' scienter allegation. .................................................................................4

II.   Plaintiffs' claim under Section 20(a) should be dismissed for failure to plead any underlying securities fraud..............................................................................................5

CONCLUSION.............................................................................................................5

**TABLE OF AUTHORITIES**

Cases

*City of Edinburgh Council* v. *Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)...............................................................................5

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................................4

## PRELIMINARY STATEMENT

Defendant Mark Newman hereby joins in, and incorporates, the Memorandum of Law in Support of The Chemours Company's Motion to Dismiss the Amended Class Action Complaint ("Chemours Brief"), and all arguments made therein, briefly supplements the Company's arguments pertaining to scienter, and separately moves to dismiss Count III of the Amended Class Action Complaint ("Complaint"), which alleges a violation of Section 20(a) of the Exchange Act.[1]

The principal basis underpinning Plaintiffs' scienter claim is their false allegation that "the Audit Committee of Chemours' board of directors found that Newman acted knowingly or recklessly." ¶ 242. In fact, the Audit Committee disclosures upon which Plaintiffs rely expressly convey that the Audit Committee never made any determination that the Company or its officers made materially misleading disclosures, much less that these non-existent alleged misrepresentations were made with scienter. The actual determination made by the Audit Committee identified no more than a "lack of transparency" with Chemours' Board regarding details related to working capital timing actions – timing actions that constituted a longstanding, routine, and transparent practice at the Company. Moreover, as a principal officer of the Company for several years prior to 2022 and 2023, who signed public filings of the Company, Mr. Newman knew that Chemours had repeatedly highlighted in its disclosures the impact of working capital timing actions on corporate cash flows, and thus reasonably believed this practice to be adequately disclosed.

Finally, after an extensive investigation by the Audit Committee of the details relating to the timing actions about which Mr. Newman allegedly "lack[ed] transparency," the Company did not restate its financial statements and its independent auditor concluded that the Company's financial statements for fiscal years 2022 and 2023 were fairly presented in all material respects,

---

[1] Mr. Newman further incorporates all relevant portions of the memoranda of law filed by any other individual defendant to the extent applicable.

thus rendering even more implausible Plaintiffs' allegation that Mr. Newman's lack of transparency constituted a knowing or reckless perpetration of a fraud.

Accordingly, the Audit Committee's identification of a "lack of transparency" with the Board fails to give rise to a strong inference of scienter.

## ARGUMENT

Mr. Newman hereby incorporates the arguments set forth in the Chemours Brief and writes separately to underscore two arguments specific to Mr. Newman. First, the Audit Committee's alleged identification of a "lack of transparency" with the Company's Board does not constitute particularized facts giving rise to a strong inference of scienter, as required under the PSLRA. *See* 15 U.S.C. § 78u-4(b)(2). Second, Plaintiffs' failure to plead an underlying Section 10(b) violation necessarily requires dismissal of the Section 20(a) claim against Mr. Newman.

**I.    Plaintiffs' securities fraud claims should be dismissed because Mr. Newman's alleged "lack of transparency" with the Company's Board is insufficient to give rise to a strong inference of scienter.**

**A.    The Audit Committee did <u>not</u> find that the Company's disclosures were deficient or that Mr. Newman acted knowingly or recklessly, but identified only a "lack of transparency" with the Company's Board regarding a longstanding, "routine," timing practice that was widely known within the Company.**

Notwithstanding Plaintiffs' baseless claim to the contrary, the supporting disclosures cited by Plaintiffs reflect that the Audit Committee did *not* make a finding that Mr. Newman made or caused to be made materially misleading disclosures, much less that he did so with knowledge or recklessness. The Audit Committee simply identified a "lack of transparency" with the Board concerning "working capital timing actions," and "their effect on free cash flow targets at the end of the relevant periods." ¶¶ 17, 73-74, 78-83, 89, 242, which, according to Plaintiffs' own Complaint, constituted a widespread, longstanding, and "routine practice" at the Company, ¶¶ 108, 109, 118, which commenced long before Mr. Newman became CEO. ¶¶ 28,

-2-

108. Accordingly, there is a compelling inference that, to the extent it was pertinent to making disclosure determinations, Mr. Newman reasonably believed this "routine" practice to be known to the relevant constituencies responsible for making those determinations.

Indeed, Mr. Newman is alleged to have engaged in these timing actions together with the Company's CFO and Controller, and the Complaint further alleges the involvement of several other executives and employees over the course of many years. ¶¶108, 109, 118. The allegation that these timing actions were "routine" within the Company, and involved a number of executives and employees, belies an inference of scienter, which is typically associated with more clandestine endeavors. Further undermining Plaintiffs' scienter allegation is the absence of any allegation that Mr. Newman directed the Company's CFO, Controller, or others, to conceal this practice from the Company's Board, auditor, accountants and lawyers, or other executives or employees.

> **B.      Mr. Newman knew that Chemours had long highlighted that its cash flows are impacted by management's timing of collections and payments and reasonably believed these disclosures to be adequate.**

Furthermore, as explained in the Chemours Brief, the Company has long highlighted the impact that its discretion over the timing of collections and payments has on its cash flows, flagging management's "timing of [its] payment on accounts payable and collection of [its] accounts receivable" as a principal factor influencing its calculation of Operating Cash Flow. *See, e.g.*, Ex. 1 (2022 10-K) at 49. As a principal officer for many years prior to 2022 and 2023, who signed Chemours disclosure filings, Mr. Newman was cognizant of these corporate disclosures,[2] which ostensibly conveyed that the Company's cash flows were influenced by such timing actions. Plaintiffs do not allege otherwise. Accordingly, the Complaint's allegations support a plausible inference that Mr. Newman reasonably believed these working capital timing

---

[2] Mr. Newman was likewise aware that the Chemours Board members, who also signed corporate disclosure documents, were similarly cognizant of these disclosures. *See, e.g.,* Ex. 1 (2022 10-K) at 75.

actions to be adequately disclosed – a conclusion ultimately echoed by both the Audit Committee and Chemours' independent auditor and fatal to Plaintiffs' scienter claim.

    **C.**    **The Company's conclusion, following the Audit Committee investigation, that the timing actions regarding which there was an alleged lack of transparency did not require a restatement, and the independent auditor's view that the Company's financial statements were fairly presented, negates Plaintiffs' scienter allegation.**

Finally, the fact that, after an intensive review by the Audit Committee, of the very timing actions about which Mr. Newman allegedly "lack[ed] transparency," the Company determined that no restatement was required, and its independent auditor concluded that the Company's financial statements presented "fairly, in all material respects, the financial position of the Company as of December 31, 2023 and 2022," Ex. 2 (2023 10-K) at F-2, categorically negates Plaintiffs' scienter claim. It is simply not conceivable that Mr. Newman could plausibly "know" or be "reckless" in not knowing that his alleged "lack of transparency" constituted or contributed to an alleged fraud in the face of the contrary judgment rendered by the Company and its independent auditor in the wake of the Audit Committee's review..

* * * * *

In short, Plaintiffs' allegation that Mr. Newman lacked transparency with Chemours' Board regarding details related to the working capital timing transactions in no way supports a "strong inference" of scienter, which is shown only where "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Here, the allegations reflect that, in the context of the company's cyclical business, there was every intent to carry out the Company's typical, disclosed practices in the management of working capital. Consequently, the far more plausible inference from the allegations is the "opposing inference of nonfraudulent intent," *id.* at 314, consistent with the respective conclusions drawn by the Company and its Audit Committee, and Chemours' independent auditor, that no restatement was necessary and that the Company's financial statements for 2022

-4-

and 2023 were fairly presented in all material respects.

**II.    Plaintiffs' claim under Section 20(a) should be dismissed for failure to plead any underlying securities fraud.**

Plaintiffs' Section 20(a) claim against Mr. Newman also fails.  "Section 20(a) of the Exchange Act creates a cause of action against individuals who exercise control over a 'controlled person,' including a corporation, who has committed a [S]ection 10(b) violation." *City of Edinburgh Council* v. *Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014).  Because Plaintiffs have failed to plead an underlying securities fraud claim, its Section 20(a) claim "must be dismissed." *Id.*

**CONCLUSION**

For these reasons, in addition to those set forth in the Chemours Brief, the Court should dismiss the Complaint.

DATED:  October 11, 2024                             Respectfully submitted,


                                                     GELLERT SEITZ BUSENKELL &
                                                        BROWN, LLC

OF COUNSEL:                                          */s/ Michael Busenkell*
                                                     Michael Busenkell (DE 3393)
PETRILLO KLEIN + BOXER                               1201 N. Orange Street, Suite 300
Guy Petrillo (*pro hac vice)*                        Wilmington, DE 19801
Joshua Klein (*pro hac vice)*                        Tel: (302) 425-5800
Caelyn Stephens (*pro hac vice)*                     Fax: (302) 425-5814
655 Third Avenue                                     mbusenkell@gsbblaw.com
22nd Floor
New York, NY  10017                                  *Counsel for Mark Newman*
(212) 370-0330