# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| The Chemours Company Securities Litigation, | Case No. 24-cv-361-RGA <br><br> <u>CLASS ACTION</u> |

## ANSWERING BRIEF IN OPPOSITION TO MARK NEWMAN'S
## <u>MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>

Dated: December 20, 2024

Of Counsel:

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Brian B. Alexander, Esq.
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs and the Class*

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ...................................................................... 2

SUMMARY OF ARGUMENT .............................................................................................. 2

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

    I.      PLAINTIFFS PLEAD NEWMAN'S SCIENTER ......................................................... 4

        A.    Newman's Scienter is Strongly Supported Both Because the Audit Committee Found that Newman Violated the Code of Ethics by Making and Causing the Company to Make Misleading Disclosures, and Because He Showed a Lack of Transparency With the Board. ................................................................................. 5

        B.    Chemours' Public Filings Did Not Disclose Its Intentional Shifting of Operating Cash Flow Between Years. ........................................................................... 6

        C.    That Chemours Independent Auditor Did Not Require a Restatement Does Not Negate Scienter. .......................................................................................................... 6

    II.     PLAINTIFFS HAVE PLEAD CONTROL PERSON LIABILITY ............................... 8

CONCLUSION....................................................................................................................... 8

## Table of Authorities

**Page(s)**

**Cases**

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002)...................................................................................... 7

*In re Chemours Co. Sec. Litig.*,
   587 F. Supp. 3d 143 (D. Del. 2022)......................................................................... 7

*In re: Enzymotec Sec. Litig.*,
   2015 WL 8784065 (D.N.J. Dec. 15, 2015)............................................................... 7

*SEC v. Desai*,
   145 F. Supp. 3d 329 (D.N.J. 2015) .......................................................................... 5

ii

Plaintiffs submit this answering brief in opposition to Defendant Newman's Motion to Dismiss the Amended Class Action Complaint (the "Newman Motion") (D.I. 50). Plaintiffs incorporate their Answering Brief in Opposition to Chemours' Motion to Dismiss ("Answering Brief to Chemours" or "Ans. Br. to Chem."), in its entirety, including the defined terms therein.

## PRELIMINARY STATEMENT

Defendant Newman's argument that the Complaint did not plead that he acted with scienter repeatedly misconstrues the findings of Chemours' Audit Committee in his favor. This is the opposite of the standard on a motion to dismiss, which requires the Court to draw all reasonable inferences in favor of the plaintiffs.

*First*, the Audit Committee **did** find that Newman and the others made or caused Chemours to make misleading statements. It found he violated the provision of the Code of Ethics that requires the CEO, CFO, and Controller to "promote full, fair, accurate, timely and understandable disclosure ***in reports and documents that the Company files with or submits to the [SEC] and in other public communications made by the Company.***"

*Second*, the Audit Committee's separate finding that Newman showed a "lack of transparency" with the Board "with respect to working capital timing actions" also strongly supports his scienter. If Newman did not understand that his intentional shifting of payables and receivables was improper, as he contends, there would have been no reason for him to cover it up.

*Third*, Newman argues that the shifting of payables and receivables was disclosed, but there is nothing in the statements he points to that would make anyone understand or even suspect that Defendants were intentionally shifting large amounts of Free Cash Flow to meet public financial targets and increase incentive compensation. Newman points out that Chemours' Board was aware of these disclosures — this fatally undermines his argument since, based on its reaction,

1

the Board clearly did not believe that they disclosed the large-scale Free Cash Flow manipulation undertaken by Defendants.

*Finally,* the report of Chemours' independent auditor does not absolve Newman. All the auditor did was find that Chemours did not commit a GAAP violation, which Plaintiffs do not allege in this case and do not need to allege, to plead misstatements. Furthermore, an independent auditor cannot be used to broadly immunize defendants from the securities laws and certainly does not negate the Audit Committee's findings about Newman. Newman's Motion should be denied.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs incorporate by reference the Nature and Stage of the Proceedings as described in the Answering Brief to Chemours. Plaintiffs oppose Defendant Newman's Motion here.

## SUMMARY OF ARGUMENT

1. Plaintiffs plead scienter for Defendant Newman. Point I.
2. Plaintiffs plead control liability under Section 20(a). Point II.

## STATEMENT OF FACTS

Plaintiffs incorporate by reference the complete Statement of Facts as set out in the Answering Brief to Chemours, and here provide additional facts pertinent to Defendant Newman.

Having previously been Chemours' CFO, from 2015 to 2019, and its Chief Operating Officer, from 2019 to 2021, Defendant Newman served as the Company's CEO and President from July 2021 until Chemours' Board placed him on administrative leave on February 28, 2024. ¶28. Accordingly, Newman was the CEO for the entire Class Period.

Newman announced the Company's full-year 2022 Free Cash Flow results in the Q4 and Full Year 2022 Earnings Prepared Comments, stating: "For the year, we generated Free Cash Flow of $447 million dollars. Our ability to turn earnings into cash consistently has generated more than

$1.5 billion dollars of Free Cash Flows." ¶135. He also signed the Company's 2023 Proxy Statement, which reiterated these results. ¶¶155-56. Newman spoke to investors about the Company's Free Cash Flows and 2023 guidance on each of the Company's quarterly earnings calls throughout the Class Period. *See* ¶¶146, 168, 188-189, 204-205, 244-245. Newman signed and signed a SOX certification for the 2022 10-K, and signed SOX certifications for each of the Class Period 10-Qs, certifying in all cases that the financial statements presented the Company's cash flows fairly, that Chemours had effective internal controls, and that he had disclosed "[a]ny fraud, whether or not material, that involves management." ¶¶129, 162, 182, 198, 210-222.

On February 29, 2024, Chemours announced that its Board had placed Defendants Newman, Lock and Wisel on leave pending the outcome of its Audit Committee's investigation. ¶73. It found that Newman and others had manipulated payables and receivables to increase end-of-the-year Free Cash Flow and had "engaged in these efforts in part to meet free cash flow targets that the Company had communicated publicly, and which also would be a key metric for determining incentive compensation applicable to executive officers." ¶80.[1] The Committee determined that Chemours management did this at the end 2023 ($360 million), 2022 ($215 million), and 2021 ($90 million), all times that Newman was CEO. ¶¶80-81, 87-88, 90.

The Audit Committee determined that Defendants' Free Cash Flow manipulation had "violated the Company's Code of Ethics applicable to the [CEO]… relating to the 'promot[ion of] full, fair, accurate, timely and understandable disclosure," which concerns disclosure "in reports and documents that the Company files with or submits to the [SEC] and in other public communications" ¶¶43, 79; ¶43; Pls. Ex. 1. The Audit Committee's review further "determined

---

[1] Two former Chemours employees corroborate the Audit Committee's findings that Newman directed delaying of payables and accelerating receivables, ¶¶107-116, with one stating that she helped Newman manipulate payables and receivables during his time as CFO in 2018. ¶108.

3

that there was a lack of transparency" with the Board by the members of senior management who were placed on administrative leave, including Newman, "with respect to working capital timing actions described above [and] their effect on publicly communicated free cash flow targets." ¶89. When Newman resigned from the Company effective March 22, 2024, the Company announced that, other than any previously-vested benefits, he was "not entitled to any severance, equity award vesting or other compensation in connection with his resignation." ¶85.

Newman's incentive compensation as CEO was heavily determined by Chemours' Free Cash Flow. ¶¶226-38. Only 14% of his target pay was in the form of base salary, with the rest being 68% long-term incentive pay ("LTIP") and 18% annual incentive pay ("AIP"), both of which were heavily determined by Free Cash Flow. ¶¶227-234. Newman received an additional $320,637 in AIP compensation in 2022 because of the manipulation, which was almost a third of his $1,000,000 base salary. ¶232. Furthermore, because Free Cash Flow Conversion exceeded expectations during the manipulation, Newman earned 200% of his target of Performance Stock Unit ("PSU") equity awards for LTIP in 2020-2022. ¶235. In 2022, his total compensation was $7,670,351. D.I. 45-1 at 195 (Lock Ex. 9).

## ARGUMENT

Plaintiffs incorporate by reference their Answering Brief to Chemours in its entirety, including their arguments as to the falsity of the challenged statements. *See* Ans. Br. to Chem. at Point I. Plaintiffs address only the arguments that Defendant Newman puts forth in his Motion, which concern Plaintiffs' pleading as to Newman's (1) scienter, and (2) control person liability. Because Plaintiffs have pled both, Newman's Motion should be denied.

## I.  PLAINTIFFS PLEAD NEWMAN'S SCIENTER

The scienter argument in the Answering Brief to Chemours, at Point II, applies fully to Newman. Additionally, the incentive compensation allegations (*id.* at Point II.A.2) are particularly

4

strong against Newman since a full 86% of his pay was based on incentive compensation that was heavily tied to Free Cash Flow. ¶¶227-236. Newman's individual arguments also fail.

**A. Newman's Scienter is Strongly Supported Both Because the Audit Committee Found that Newman Violated the Code of Ethics by Making and Causing the Company to Make Misleading Disclosures, and Because He Showed a Lack of Transparency With the Board.**

Newman insists that the Audit Committee did not make a finding that he made materially misleading disclosures, but that is wrong. The Audit Committee found that Newman along with Lock and Wisel "violated the Company's Code of Ethics applicable to the [CEO] the [CFO], and the Controller relating to the 'promot[ion of] full, fair, accurate, timely and understandable disclosure.'" ¶79. That portion of the Code of Ethics says, in full: that the CEO, CFO, and Controller shall "promote full, fair, accurate, timely and understandable disclosure *in reports and documents that the Company files with or submits to the [SEC] and in other public communications made by the Company.*" ¶43; Pls. Ex. 1. Given that Newman was CEO for the entire period the Audit Committee was investigating, he cannot avoid responsibility for "the [SEC] and other public communications" that were "not full, fair, *accurate*, timely and understandable."

Furthermore, Newman fails to address the fact that his "lack of transparency" with the Board completely refutes his scienter argument. According to Newman, he "reasonably believed this 'routine' practice [of intentionally shifting payables and receivables between years] to be known to the relevant constituencies responsible for making those determinations." Newman Mot. at 3. But if Newman actually believed that, why did he show a "lack of transparency" with the Board "with respect to working capital timing actions…[and] their effect on publicly communicated free cash flow targets"? ¶89. There is no explanation other than Newman knew his actions were wrong and he was trying the cover them up. *See, e.g. SEC v. Desai*, 145 F. Supp. 3d 329, 337 (D.N.J. 2015), *aff'd*, 672 F. App'x 201 (3d Cir. 2016) (effort to mask conduct strongly

5

supports scienter). Attempts to cover up the fraud is always strong evidence of scienter, *see* Ans. Br. to Chem. at Point II.A.3, but here it is especially powerful since Newman's only argument is that he did not know he was doing something wrong.

Finally, the fact that Newman conspired with other top management does not absolve him from responsibility, especially given that he was CEO during the entire period when the Audit Committee found wrongdoing. During Newman's tenure as CEO, Chemours' manipulation rapidly escalated from $90 million at the end of 2021, to $215 million at the end of 2022, to $360 million at the 2023, when he was caught by the Chemours Board. ¶90.

**B. Chemours' Public Filings Did Not Disclose Its Intentional Shifting of Operating Cash Flow Between Years.**

Newman argues that the Court should not find he acted with scienter because "he reasonably believed these working capital timing actions to be adequately disclosed." Newman Mot. at 3. As explained in the Answering Brief to Chemours, at Point I.A.1, p.16, those disclosures in no way disclosed that Chemours' management was ***intentionally*** shifting Operating Cash Flow for the purpose of meeting public Free Cash Flow targets and increasing their incentive compensation. Furthermore, Newman refutes his own argument by pointing out that Chemours' Board members signed these documents and "were similarly cognizant of these disclosures." Newman Mot. at 3 n.2. The Chemours' Board obviously did not believe these statements disclosed the Free Cash Flow manipulation at issue in this case — if they had understood the disclosures that way, they certainly would not have fired the Company's entire top management. It is absurd for Newman to ask the Court to absolve him from responsibility based on disclosures his own Board did not understand.

**C. That Chemours Independent Auditor Did Not Require a Restatement Does Not Negate Scienter.**

The findings of Chemours' independent auditor do not negate scienter. Newman Mot. at 4.

6

*First*, all the auditor found is that Chemours' financial statements comply with GAAP. *See* Chem. Ex. 2, at F-2, D.I. 51-2 at 90 ("the results of its operations and its cash flows [are] in conformity with accounting principles generally accepted in the United States of America"). As discussed in the Answering Brief to Chemours, at Point I.A.1, p.12-13, Plaintiffs do not need to allege a GAAP violation to allege a misleading statement. Chemours made the same argument in another securities case and the court rejected it, explaining that the argument "misses the point" because "once Chemours chose to make that disclosure—even if not required by GAAP or otherwise—it had to speak truthfully." *In re Chemours Co. Sec. Litig.*, 587 F. Supp. 3d 143, 155 (D. Del. 2022). Accordingly, the auditor's finding of GAAP compliance has no applicability to the issues in this case.

*Second*, even if Plaintiffs were trying to plead a GAAP violation, an independent auditor cannot be used to broadly immunize Defendants from the securities laws. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002) (audit by independent accounting firm did not refute scenter because "[t]o hold otherwise would shift to accountants the responsibility that belongs to the courts. It would also allow officers and directors of corporations to exercise an unwarranted degree of control over whether they are sued, because they must agree to a restatement of the financial statements"); *In re: Enzymotec Sec. Litig.*, 2015 WL 8784065, at *16 (D.N.J. Dec. 15, 2015) (holding that SOX certifications were misleading even though independent auditors had never questioned company's internal controls). This is especially true here, where the vast majority of the misstatements at issue do not appear in Chemours' consolidated financial statements.

*Third*, the auditor, along with the Company, in no way "rendered [a judgment]" that Newman did not committee fraud (Newman Mot. at 4). The Company's judgment of Newman was that the Board relieved him of his position as CEO for misconduct and that he resigned without

7

severance shortly thereafter. ¶¶73-85. Newman cannot use the auditor's report to negate the inference of scienter from the Audit Committee's findings on a motion to dismiss. Furthermore, the auditor, itself, found that Chemours had ineffective internal controls. *See* Chem. Ex. 2, at F-2, D.I. 51-2 at 90.

## II. PLAINTIFFS HAVE PLEAD CONTROL PERSON LIABILITY

Newman challenges Section 20(a) control person liability by arguing that Plaintiffs have not pled a 10(b) violation. Since the Complaint pleads a Section 10(b) violation, his argument fails.

## CONCLUSION

Defendant Newman's Motion should be denied in its entirety. If the Court dismisses any part of the Complaint, Plaintiffs respectfully request leave to file an amended complaint.

Dated: December 20, 2024

Of Counsel:

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Brian B. Alexander, Esq.
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

Respectfully submitted,

FARNAN LLP

/s/ *Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs and the Class*