**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| The Chemours Company Securities Litigation, | Case No. 24-cv-361-RGA <br><br> <u>CLASS ACTION</u> |

**<u>ANSWERING BRIEF IN OPPOSITION TO DEFENDANT CAMELA WISEL'S
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

Dated: December 20, 2024

Of Counsel:

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Brian B. Alexander, Esq.
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs and the Class*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................. 1

NATURE AND STAGE OF PROCEEDINGS ......................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 1

    A.    Wisel's Role in the Company, and Conduct During the Class Period........................... 2

    B.    The Audit Committee Finds Both Misconduct and Concealment on the Part of Wisel ...................................................................................................................... 2

ARGUMENT ............................................................................................................................. 3

    I.    THE 2022 10-K THAT WISEL SIGNED AS THE COMPANY'S CONTROLLER AND CHIEF ACCOUNTING OFFICER WAS ACTIONABLY FALSE ...................................................................................................................... 3

    II.    PLAINTIFFS PLEAD SCIENTER AND SCHEME LIABILITY FOR WISEL............ 4

        1.    The Audit Committee's Findings are Not "Generalized and Conclusory"................... 4

        2.    The Audit Committee's Finding of Concealment Contributes to Scienter................... 6

        3.    Any Linguistic Differences Between the Audit Committee's Findings Relating to 2022 and 2023 are Irrelevant and, in any event, Plaintiffs Have Pleaded Scheme Liability ..................................................................................... 6

    III.    PLAINTIFFS PLEAD CONTROL PERSON LIABILITY ........................................... 7

CONCLUSION.......................................................................................................................... 8

## Table of Authorities

**Page(s)**

**Cases**

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013)............................................................................ 4

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
713 F. Supp. 2d 378 (D. Del. 2010)............................................................................ 5

*Dudley v. Haub*,
2013 WL 1845519 n.5 (D.N.J. Apr. 30, 2013) ........................................................... 8

*In re Advance Auto Parts, Inc., Sec. Litig.*,
2020 WL 599543 (D. Del. Feb. 7, 2020) .................................................................... 7

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)................................................................................. 4, 6

*In re Nature's Sunshine Prods. Sec. Litig.*,
486 F. Supp. 2d 1301 (D. Utah 2007)......................................................................... 6

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
2021 WL 4191467 (D.N.J. Sept. 15, 2021) ................................................................ 4

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)..................................................................................................... 3

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) ........................................................................ 5

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
2015 WL 4036179 (D. Del. July 1, 2015) .................................................................. 7

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
142 F. Supp. 2d 589 (D.N.J. 2001) ............................................................................. 7

*S.E.C. v. Lucent Techs., Inc.*,
363 F. Supp. 2d 708 (D.N.J. 2005) ............................................................................. 6

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
2024 WL 1898512 (S.D.N.Y. May 1, 2024) .............................................................. 5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007)................................................................................................................. 4

*Universal Am. Corp v. Partners Healthcare Sols. Holdings, L.P.,*
    176 F. Supp. 3d 387 (D. Del. 2016)........................................................................................ 7

Plaintiffs submit this answering brief in opposition to Defendant Wisel's Motion to Dismiss the Amended Class Action Complaint (the "Wisel Motion") (D.I. 46). Plaintiffs incorporate their Answering Brief in Opposition to Chemours' Motion to Dismiss ("Answering Brief to Chemours" or "Ans. Br. to Chem."), in its entirety, including the defined terms therein.

## PRELIMINARY STATEMENT

Defendant Wisel served as Chemours' Controller and Chief Accounting Officer throughout the Class Period, and was the principal accounting officer for purposes of Chemours' SEC filings. More, she signed the Company's 2022 10-K that announced the manipulated Free Cash Flow figure that opens the Class Period; a Class Period that runs until the day she and two other members of the Company's top management were placed on administrative leave for their Free Cash Flow manipulation scheme. Despite all of this, Wisel argues that the case against her should be dismissed. Wisel's motion should be denied.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs incorporate by reference the Nature and Stage of the Proceedings as described in the Answering Brief to Chemours. Plaintiffs oppose Defendant Wisel's Motion here.

## SUMMARY OF ARGUMENT

1. Plaintiffs plead that the 2022 10-K that Defendant Wisel signed as the Company's Controller and Chief Accounting Officer was actionably false and misleading. Point I.

2. Plaintiffs plead scienter and scheme liability for Defendant Wisel. Point II.

3. Plaintiffs plead control liability under Section 20(a). Point III.

## STATEMENT OF FACTS

Plaintiffs incorporate by reference the complete Statement of Facts as set out in their Answering Brief to Chemours, and here provide additional facts pertinent to Defendant Wisel.

1

**A. Wisel's Role in the Company, and Conduct During the Class Period**

Defendant Wisel started working at the Company in April of 2015. ¶31. She served as Vice President and Treasurer from September 2020 to September 2021, when she ascended to the role of the Company's Chief Accounting Officer. ¶31. Wisel served as Chemours' VP, Chief Accounting Officer and Controller beginning on September 29, 2021 and, in that capacity, she served as the principal accounting officer for purposes of Chemours' SEC filings. ¶31. As the Company's Chief Accounting Officer and Controller, it was Wisel's job to review and assess the accuracy of the Company's financial statements during the Class Period. ¶252.

The Class Period begins on February 10, 2023, coinciding with the filing of the 2022 10-K. ¶¶3-4, 129.  In it, Chemours announced its fourth quarter and full year results, including its Free Cash Flow. ¶3. Wisel signed this 10-K as Chemours' Chief Accounting Officer and Controller. ¶129. Wisel continued to serve as Chief Accounting Officer and Controller until she was placed on administrative leave on February 28, 2024, the final day of the Class Period. ¶31.

Wisel's compensation was heavily determined by incentive pay linked to Chemours' Free Cash Flow. ¶228. When Wisel was appointed Chief Accounting Officer and Controller, Chemours filed an 8-K stating that she would be eligible for annual incentive pay ("AIP") of 50% of her base salary of $312,500 and target long-term incentive pay ("LTIP") of $300,000. *Id*. Accordingly, cash flow-linked LTIP constituted nearly 40% of Wisel's target compensation. ¶236.

**B. The Audit Committee Finds Both Misconduct and Concealment on the Part of Wisel**

On February 29, 2024, Chemours announced that its Board had placed three members of management, including Wisel, on administrative leave pending the outcome of an Audit Committee investigation into the Company's financial reporting and internal controls. ¶13. The Committee determined that Wisel and others had engaged in efforts to delay payables and accelerate receivables at the end of 2023. *See* Answering Brief to Chemours at 7-10. Further, the

Committee found that Wisel and others had "engaged in these efforts in part to meet free cash flow targets that the Company had communicated publicly, and which also would be part of a key metric for determining incentive compensation applicable to executive officers." ¶80. The Committee uncovered similar actions the year before as well, also during the time that Wisel was Chief Accounting Officer and responsible for the accuracy of the Company's SEC filings. ¶¶81, 31, 252.

The Audit Committee found that Defendants' Free Cash Flow manipulation had "violated the Company's Code of Ethics applicable to the … Controller relating to the 'promot[ion of] full, fair, accurate, timely and understandable disclosure", which concerns disclosure "in reports and documents that the Company files with or submits to the [SEC] and in other public communications" ¶¶ 43, 79; Pls. Ex. 1. Finally, the Committee's review "determined that there was a lack of transparency with the Company's Board of Directors by the members of senior management who were placed on administrative leave," including Wisel. ¶79.

## ARGUMENT

Plaintiffs incorporate their Answering Brief to Chemours in its entirety, including their arguments as to falsity. *See* Answering Brief to Chemours at Point I. Plaintiffs address only the specific arguments that Defendant Wisel makes in her Motion, which challenge (1) the attribution of any false and misleading statements to Wisel; (2) scienter; and (3) control person liability. *See* Wisel Mot. at 1. Wisel's Motion should be denied.

## I.  THE 2022 10-K THAT WISEL SIGNED AS THE COMPANY'S CONTROLLER AND CHIEF ACCOUNTING OFFICER WAS ACTIONABLY FALSE

Wisel first claims that the 2022 10-K is the only filing she signed during the relevant period, and points out that the Complaint contains numerous other statements that she did not sign or make. Wisel Mot. at 1-2. Wisel argues that she is not the "maker" of these latter statements under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). While Wisel is correct

about that, she does not try to argue why she should escape liability for the false and misleading 2022 10-K she signed as the Company's Controller and Chief Accounting Officer. ¶129. It was false and misleading, for the reasons laid out in the Answering Brief to Chemours at Point I.A.1. Accordingly, Plaintiffs have pleaded an actionably false and misleading statement against Wisel.

## II.  PLAINTIFFS PLEAD SCIENTER AND SCHEME LIABILITY FOR WISEL.

The inference of scienter need not be "of the smoking-gun genre." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 324 (2007). It can be drawn from "circumstantial evidence." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

With respect to scienter, Wisel's brief makes three arguments purportedly showing why Plaintiffs' allegations – drawn from the Audit Committee's findings that Wisel and two other Defendants violated the Company's Code of Ethics by engaging in a Free Cash Flow manipulation scheme and then obstructing the investigation into that scheme – do not support a strong inference of scienter against her. These arguments have no merit.

1.  The Audit Committee's Findings are Not "Generalized and Conclusory"

Wisel relies on a host of inapposite caselaw to mischaracterize the allegations as too "generalized and conclusory" to support an inference of scienter, for various reasons. Wisel Mot. 2-3. First, Wisel calls it a "group pleading," likening this to cases where plaintiffs brought undifferentiated allegations against individuals based on nothing more than their roles in the company. *See Bartesch v. Cook*, 941 F. Supp. 2d 501, 510 (D. Del. 2013) (allegations referred generally to "defendants" or "company executives"); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2021 WL 4191467, at *19 (D.N.J. Sept. 15, 2021) (title alone usually insufficient for scienter). But here, Plaintiffs' allegations are not based merely on Defendant Wisel's title, but on the Audit Committee's findings that name her specifically. More, simply because the Committee's findings named three individuals does not make this a group pleading. Rather, the

4

Committee investigated the matter, and its findings led it to place three individuals on administrative leave, including Wisel, for their misconduct. This is the opposite of generalized.

Next, Wisel portrays Plaintiffs' allegation of motive – that her compensation was linked to Chemours' Free Cash Flow – as overfly speculative, claiming that the interest in maximizing compensation is "common to every company." *See City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 396 (D. Del. 2010). Wisel is wrong for two reasons. First, as discussed in the Answering Brief to Chemours at Point II.A.2, the direct link between free cash flow and her incentive compensation is the type of strong correlation that courts regularly find supports scienter. *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.,* 2024 WL 1898512, at *7 (S.D.N.Y. May 1, 2024) (motive allegations weighed in favor of scienter where channel stuffing allowed defendants to make bonus thresholds); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1029 (N.D. Cal. 2020) (bonus structure that incentivized defendants to report inflated revenue was "strong correlation" that supported scienter). Second, Wisel is ignoring the Audit Committee's findings. The Audit Committee was not proffering the link between Wisel's compensation and Free Cash Flow, *see* ¶228, 236, as one potential motive. Rather, the Audit Committee investigated the matter and found that that ***was***, in part, the motive: "The Audit Committee further found that Defendants Newman, Lock, and Wisel ***'engaged in these efforts in part to meet free cash flow targets that the Company had communicated publicly, and which also would be part of a key metric for determining incentive compensation applicable to executive officers.'"*** ¶80. The Audit Committee's findings are detailed and particularized. They are more than sufficient to support an inference of scienter against Wisel.[1]

---

[1] Defendant Wisel also points out that "Plaintiffs' confidential witnesses say nothing about Ms. Wisel." Wisel Mot. at 3. That is irrelevant. The Audit Committee said plenty.

2.  The Audit Committee's Finding of Concealment Contributes to Scienter

Wisel argues that the Audit Committee's finding in March of 2024 that she violated the Code of Ethics by engaging in a lack of transparency with the Board cannot support a strong inference that she acted with scienter in connection with the 2022 10-K. Wisel is wrong. *See* Answering Brief to Chemours at Point II.A.3. "Evidence that a defendant has taken steps to cover-up a misdeed is strong proof of scienter." *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1310 (D. Utah 2007); *S.E.C. v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005) ("While the Court agrees with [defendant's] assertion that misconduct that occurs after a supposedly fraudulent transaction cannot be the basis of a fraud claim arising from that transaction, ***common sense dictates that actions taken after the fraud occurred can be circumstantial evidence that the defendant had acted with the requisite state of mind***"). Wisel's lack of transparency with the Board is evidence of her scienter.

3.  Any Linguistic Differences Between the Audit Committee's Findings Relating to 2022 and 2023 are Irrelevant and, in any event, Plaintiffs Have Pleaded Scheme Liability

Next, Wisel harps on the linguistic differences between the way in which the Audit Committee described the misconduct that occurred in 2023 and the misconduct that occurred in 2022. Wisel Mot. at 4. While the Audit Committee specifically found that Wisel engaged – active voice – in wrongful conduct in 2023, the language as to 2022 uses the passive voice and thus contains no explicit subject: "The Audit Committee also determined that similar actions, though to a lesser extent, were taken in the fourth quarter of 2022[.]" ¶81.

There are several problems with this argument. First, it is highly reasonable to infer that the same people – ***the ones being placed on leave*** – who engaged in the misconduct in 2023 also engaged in the "similar" actions that took place the year before. This reading of the Audit Committee's findings requires only the smallest of inferences, which the court must draw in

6

Plaintiffs' favor on a motion to dismiss. *See Burlington Coat Factory*, 114 F.3d at 1418. Next, Wisel's contention that the Audit Committee only explicitly found that she engaged in misconduct in late 2023, which postdates the 2022 10-K she signed in February, is irrelevant.[2] Not only is it reasonable to read the Audit Committee as finding that Wisel engaged in misconduct in both 2022 and 2023, but it hardly matters because Plaintiffs have also pleaded scheme liability under Rule 10b-5(a) and (c). *See* Answering Brief to Chemours at Point IV. That is, Plaintiffs have alleged that Wisel engaged in efforts to delay payables and accelerate receivables throughout the relevant period. *See, e.g.*, ¶¶80-81. Wisel is liable for the entire scheme.

### III. PLAINTIFFS PLEAD CONTROL PERSON LIABILITY

Because Plaintiffs have pleaded a primary Section 10(b) violation, they have also pleaded a control person claim against Wisel under Section 20(a), which imposes "liability upon anyone who 'controls a person liable under any provision of' the Exchange Act.'" *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 623 (D.N.J. 2001).

The cases that Wisel cites do not help her. First, she relies on *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 399 (D. Del. 2016), which dismissed control person allegations where the court found them to be based on nothing other than the defendant's position as an officer or director of the violator. But again, Plaintiffs' allegations are not just based on her title at the Company, but rather on the fact that the Company's Audit Committee found that she engaged in the misconduct at issue, violating the Company's Code of Ethics. Next, Wisel relies on *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *10

---

[2] Defendant Wisel's reliance on *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 2015 WL 4036179, at *3 (D. Del. July 1, 2015) is misplaced. The discussion cited simply stands for the proposition that, in a false statement case, scienter must be based on what the defendant knows at the time of the statement, rather than something the defendant learns after the fact.

(D. Del. Feb. 7, 2020), which found a lack of culpable participation where it was not alleged that defendants signed the press releases at issue. Here, Wisel signed the 2022 10-K, and her substantial participation is apparent from the Audit Committee's findings.[3]

### CONCLUSION

Wisel's Motion should be denied in its entirety. If the Court dismisses any part of the Complaint, Plaintiffs respectfully request leave to file an amended complaint.

---

[3] In any event, while Defendant Wisel's culpable participation is clear, "the overwhelming trend in this circuit" is that "culpable participation does not have to be pled in order to survive a motion to dismiss." *Dudley v. Haub*, 2013 WL 1845519, at *20 n.5 (D.N.J. Apr. 30, 2013) (collecting cases).

Dated: December 20, 2024

Of Counsel:

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Brian B. Alexander, Esq.
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

Respectfully submitted,

FARNAN LLP

/s/ *Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs and the Class*

9