**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| The Chemours Company Securities Litigation | C.A. No. 24-361-RGA <br><br> <u>CLASS ACTION</u> |

**<u>REPLY BRIEF IN SUPPORT OF DEFENDANT JONATHAN LOCK'S
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

Of Counsel:

David A. Gordon
Geeta Malhotra
Jacqueline Pruitt
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
dgordon@sidley.com
gmalhotra@sidley.com
jpruitt@sidley.com

Dated: January 21, 2025

Raymond J. DiCamillo (#3188)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Counsel for Defendant Jonathan Lock*

**TABLE OF CONTENTS**

                                                                                        **Page**

TABLE OF AUTHORITIES ...................................................................................................ii

ARGUMENT .....................................................................................................................1

I.      No False or Misleading Statements Have Been Pleaded as to Mr. Lock. ...........................1

II.     Plaintiffs' Opposition Shows that the Amended Complaint Does Not Come Close to

        Pleading a Strong Inference of Scienter as to Mr. Lock. .....................................................5

III.    Plaintiffs Fail to Identify Allegations Supporting Any Element of Control Person

        Liability...............................................................................................................9

IV.     Plaintiffs Fail to Support Their Scheme Liability Claim as to Mr. Lock Because They Do

        Not Allege He Himself Took Any "Deceptive" Actions with Scienter.............................10

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer*,
    2024 WL 3716137 (E.D. Pa. Aug. 8, 2024) ............................................................... 2, 3, 4

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004)................................................................................................ 8

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017)................................................................................ 5

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2020 WL 3026564 (D.N.J. June 5, 2020) .......................................................................... 4

*In re Cybershop.com Sec. Litig.*,
    189 F. Supp. 2d 214 (D.N.J. 2002) .................................................................................... 9

*In re Great Atlantic & Pacific Tea Co., Inc. Sec. Litig.*,
    103 F. App'x 465 (3d Cir. 2004) ....................................................................................... 8

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
    2011 WL 3444199 (D.N.J. Aug. 8, 2011) ......................................................................... 4

*In re SLM Corp. Sec. Litig.*,
    740 F. Supp. 2d 542 (S.D.N.Y. 2010)................................................................................ 7

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)................................................................................................ 7

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)........................................................................................................ 2, 5

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) .................................................................................... 6

*S.E.C. v. Tambone*,
    597 F.3d 436 (1st Cir. 2010)............................................................................................... 3

*S.E.C. v. Carter*,
    2011 WL 5980966 (N.D. Ill. Nov. 28, 2011) .................................................................... 4

*Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
    61 F. Supp. 3d 391 (D. Del. 2014)............................................................................... 9, 10

ii

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)............................................................................................. 2

*Xu v. Gridsum Holding, Inc.*,
    624 F. Supp. 3d 352 (S.D.N.Y. Aug. 29, 2022)........................................................ 2, 4, 5

Plaintiffs' Opposition chooses not to engage directly with Mr. Lock's most fundamental and dispositive arguments: (1) because he was not yet the CFO, he did not speak at year-end 2022 and (2) he cannot be assumed to have learned in his prior role about alleged working capital management actions that are alleged to have taken place at year-end 2022. Plaintiffs allege that the underlying, year-end timing actions were a "long-running" practice, yet provide no facts, documents, or confidential witnesses that suggest Mr. Lock even *might* have been aware of that year-end practice before the fourth quarter of 2023. Plaintiffs also fail to explain why Mr. Lock should have questioned this "long-running" practice, much less found it to be problematic, particularly given that he has no accounting background. Plaintiffs argue that Mr. Lock *could* be liable because he *should* have been aware of *indirect* impacts of 2022 timing actions in which he is not alleged to have participated at all. Such allegations are nowhere near enough.

To be clear: Mr. Lock is alleged to have participated in alleged working capital management actions in the fourth quarter of 2023. That's it. But this is a federal securities lawsuit, and individual liability requires an individual to have made his own statement and to have made it with scienter. Here, Plaintiffs cannot get around the fact that Mr. Lock was put on leave before he ever was given an opportunity to make a statement about what took place in the fourth quarter of 2023. He never made a false statement and did not have the requisite scienter.[1]

## ARGUMENT

### I.    No False or Misleading Statements Have Been Pleaded as to Mr. Lock.

*Statements Before Mr. Lock Became CFO.* Because they know that the only alleged timing actions took place in the fourth quarter of 2022 (as to which Mr. Lock made no statements because he was not yet CFO) and the fourth quarter of 2023 (as to which Mr. Lock made no statements

---

[1] Mr. Lock additionally joins and incorporates the arguments made in the Reply Brief in Support of The Chemours Company's Motion to Dismiss the Amended Class Action Complaint.

because he was put on leave), Plaintiffs must strain to argue that Mr. Lock is liable for boilerplate introductory statements on a few earnings calls before he became CFO in June 2023. Here, the law mirrors common sense. A person who is not in a position of authority over a statement, but simply directs investors to documents on the Company's website, does not magically become the speaker for every statement in those underlying documents. To argue Mr. Lock's liability, Plaintiffs found a single out-of-jurisdiction and inapposite case: *Allegheny County Employees' Retirement System v. Energy Transfer*, 2024 WL 3716137 (E.D. Pa. Aug. 8, 2024) (cited D.I. 55 at 4). The relevant speaker in *Energy Transfer* was nothing like Mr. Lock. That speaker not only signed the 8-Ks that referenced the allegedly false conference slides at issue, but also "received the conference slides in advance *for his review and approval* and attended (or prepared to attend) some of the conferences." *Id.* at \*26 (emphasis added). Mr. Lock is not alleged—*before* he became CFO—to have reviewed and *approved* the complex financial information included in materials that he referenced in his boilerplate statements. And Plaintiffs' group-pleaded allegations, that Defendants collectively "approved," "ratified," "authorized" or "control[led]" every challenged statement, D.I. 17 ("AC") ¶¶ 33, 264, 308, are insufficient as a matter of law, *Winer Family Trust v. Queen*, 503 F.3d 319, 335–37, 337 & nn.6–7 (3d Cir. 2007). As are allegations that Mr. Lock "participated in every earnings call," AC ¶ 248, which does not establish ultimate authority. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

Apart from Plaintiffs' inapposite case, the weight of the authority makes quite clear that the person making such boilerplate statements is *not* the speaker of the documents he references. *See*, *e.g.*, *id.* at 143 (emphasizing that a key component of ultimate authority is "ultimate control over the content of a statement"); *Xu v. Gridsum Holding, Inc.*, 624 F. Supp. 3d 352, 363 (S.D.N.Y. Aug. 29, 2022) (that a co-CFO signed a cover page for a SEC filing did not mean the underlying

content could be attributed to him); *S.E.C. v. Tambone*, 597 F.3d 436, 443 (1st Cir. 2010) ("In light of this deliberate word choice ('make'), the SEC's asseveration that one can 'make' a statement when he merely uses a statement created entirely by others cannot follow."). Plaintiffs' *only* response to this argument is to cite the *scienter* section of *Energy Transfer*, which has no bearing on the falsity argument. D.I. 55 at 4. Plaintiffs do not allege or point out in their answering brief why Mr. Lock's pre-CFO role in investor relations would (or should) make him responsible for a single cash flow number embedded in the Company's financial statements. Nothing about his role, especially given his lack of accounting background, suggests he would be responsible for that.

Plaintiffs also appear to be arguing that the alleged timing actions in the fourth quarter of 2022 impacted operating cash flow in the first quarter of 2023. But again, Mr. Lock was not the CFO at this time; he was in corporate development, and would not be responsible for those statements. *See infra* at 5–6.

*Statements After Mr. Lock Became CFO.* As to statements made *after* Mr. Lock became CFO in June 2023, Plaintiffs have not shown that their allegations state with particularity that Mr. Lock made any false statements.[2]

*2Q23 and 3Q23 10-Qs Cash Flow Statements.* Plaintiffs' Opposition is entirely off the mark as to these statements—there is nothing false about the cash flow numbers in the 2Q23 and 3Q23 10-Qs (or, for that matter, any other period). Indeed, in other briefing, Plaintiffs essentially admit that there was nothing wrong with the statements themselves. *See* D.I. 54 at 19–20. Instead, Plaintiffs allege that unnamed defendants had the "intention" to alter cash flow *later* in the fourth quarter *if* eventually needed to meet projections. *Id.* But a current statement cannot be made false

---

[2] Plaintiffs do not respond to Mr. Lock's argument that he is not alleged to have made any false statement in the 2Q23 or 3Q23 earnings releases. *See* D.I. 45 at 6 n.5.

because of some future action that a business may or may not take based on operational successes or failures that have not yet come to pass. In this respect, yet again, Plaintiffs cannot get around the fact that the alleged "timing actions" occurred only in the fourth quarter of each year. *See* D.I. 45 at 1–7, 9–10.

*2Q23 and 3Q23 10-Qs SOX Certifications.* Plaintiffs ignore entirely that the SOX certifications are non-actionable statements of opinion, *id.* at 6, and that there is no reason to believe that quarterly filings were the result of a failure of controls when the only alleged timing actions took place at year-end. Instead, Plaintiffs make arguments only related to scienter, not falsity. As discussed *infra*, those do not hold up, either. But Plaintiffs have no argument that the SOX Certifications were *false* statements at all.

*8-Ks.* Plaintiffs concede that the 8-Ks themselves do not include false statements. *See* D.I. 55 at 5–6. Instead, they try to hold Mr. Lock responsible for allegedly false statements in the attached press releases merely because he signed the 8-Ks as CFO. This is not enough. *Xu*, 624 F. Supp. 3d at 362–63 (co-CFO who performed ministerial act of signing Form 6-K not the "maker" of the attached press release); *see also In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *15–16 (D.N.J. June 5, 2020). Nor do Plaintiffs allege that Mr. Lock reviewed, approved, provided quotations or copy for, or exerted any control over the content of those press releases, as was necessary to find "maker" liability in the cases on which Plaintiffs rely. *See Energy Transfer*, 2024 WL 3716137, at *26 (cited D.I. 55 at 5–6) (defendant reviewed and approved conference slides in advance); *S.E.C. v. Carter*, 2011 WL 5980966, at *1 (N.D. Ill. Nov. 28, 2011) (cited D.I. 55 at 5) (defendant "reviewed and approved of the press releases prior to their issuance," "was listed on both press releases as . . . contact person," and "the first press release contained a quote attributed to defendant"); *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011

WL 3444199, at *25 (D.N.J. Aug. 8, 2011) (cited D.I. 55 at 5) (defendant "was quoted in articles and reports"). Any incorporation by reference in the July 2023 8-K does not change the analysis.[3] As a mere publisher, Mr. Lock did not have ultimate authority over the press release or certify to its truth. *Janus*, 564 U.S. at 142 ("One who … publishes a statement on behalf of another is not its maker."); *cf. In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 663 (S.D.N.Y. 2017) (cited D.I. 55 at 6) (defendant was "maker" of statements in press releases attached to a filing because he signed both the Form 6-K *and* the attached press releases); *see also Xu*, 624 F. Supp. 3d at 363 (distinguishing *In re Banco Bradesco* on this basis).[4]

## II.    Plaintiffs' Opposition Shows that the Amended Complaint Does Not Come Close to Pleading a Strong Inference of Scienter as to Mr. Lock.

Plaintiffs' theory that Mr. Lock knew of the timing actions when he made any of the challenged statements rests on two illogical and speculative inferences. Both are unreasonable on their face and should be rejected.

*First*, Plaintiffs suggest that Mr. Lock *must* have known about the fourth quarter 2022 timing actions at the time of his alleged statements because he was working in *some* role at the Company in 2022 (when Mr. Lock himself is *not* alleged to have participated in those actions). *See* D.I. 55 at 6–7, 9. But Plaintiffs simply ignore two critical elements highlighted in Mr. Lock's motion that show that suggestion to be speculation, and implausible speculation at that: (1) the Complaint lacks any allegations that Mr. Lock's role would have brought him into contact with or made him aware of the fourth quarter 2022 timing actions before he became CFO, and (2) no facts suggest that Mr. Lock in any event should have viewed the practice as improper, particularly given

---

[3] The reference to the press release in Item 2.02 of the filing incorporated only the information pertaining to the Kuan Yin manufacturing site, as this is the only "specific reference" to the filing per the terms of the disclosure. D.I. 45-1 at 307.

[4] For the reasons stated in the Company's brief, none of these statements was false in any event.

his role and lack of accounting background. *See* D.I. 45 at 1. The only allegations about Mr. Lock during that time period are that he worked in corporate development (without any allegation as to his duties or job functions in that role) and that he gave a boilerplate statement at the opening of earnings calls (consistent with his investor relations role). AC ¶¶ 134, 167. None of those allegations supports an inference that Mr. Lock knew about the alleged timing actions before the fourth quarter of 2023 or had sufficient facts or expertise to question them. Plaintiffs' argument that the "Board put Lock on leave … because he had a role in both the 2022 and 2023 manipulations," D.I. 55 at 6–7, is also wrong for the reasons stated above. *See supra* at 1–5.

*Second*, Plaintiffs rely heavily on FE-2's speculation that *another* defendant directed timing activities to begin at some point in October 2023 to draw the inference that *Mr. Lock* must have been versed in those activities before he signed the 3Q23 10-Q at some point in the same month. D.I. 55 at 7, 9. As an initial matter, FE-2's "interpret[ation]" or "confident" beliefs about matters of which she had no actual knowledge is insufficient as to *any* of the Defendants. AC ¶ 116; *see Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 554–55 (D.N.J. 2010) (rejecting confidential witness allegations based on belief and speculation). But, critically for Mr. Lock, FE-2 says *nothing* about Mr. Lock's involvement in or knowledge of the timing actions in 2023, much less his involvement as of the signing dates. In fact, Plaintiffs concede that no confidential witness makes allegations against Mr. Lock specifically, *see* D.I. 55 at 10, suggesting that the witnesses with whom they have spoken *have* no such facts to allege.

Plaintiffs' remaining arguments likewise fail to establish a strong inference that Mr. Lock made any statement with scienter.

*Incentive Compensation.* Plaintiffs boldly assert that Mr. Lock is "wrong" as to his incentive compensation, *id.* at 7, but it is they who are wrong. Plaintiffs state that "as CFO, only

29% of [Mr.] Lock's salary was base salary," *id.*, but ignore several critical facts. For one, Mr. Lock was not even the CFO for almost half the year, and they admit in a different part of their Opposition that the incentive plans applied "as CFO." *Id.* at 2. They then acknowledge that, during that time, only 42.5% of the 22% of his compensation relating to AIP and 40% of the 49% of his compensation relating to LTIP were even *potentially* affected in any way by Free Cash Flow. *Id.* at 7. Even taking Plaintiffs' Opposition at its word, this is a small fraction. Do the math: 0.5726 (the portion of the year he was CFO) x [(.425 x .22) + (.40 x .49)] = 16.5%. There is no reason to *infer* (without any facts) that Mr. Lock would intend to risk his reputation and his entire career for less than a fifth of one year's compensation.[5]

Moreover, and regardless of whatever amount might be attributed to free cash flow, the receipt of *any* amount of incentive compensation is insufficient to plead scienter as a matter of law. *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009) (explaining that "'motive and opportunity' may no longer serve as an independent route to scienter"). Plaintiffs' lone out-of-circuit case is easily distinguishable, as it concluded—contrary to *Avaya*—that motive and opportunity alone may establish a strong inference of scienter and that the defendant's significantly greater monetary incentive to commit fraud, along with his stock sales, sufficed. *See In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 556–59 (S.D.N.Y. 2010).[6] Plaintiffs' attempts

---

[5] Plaintiffs are also incorrect that "Free Cash Flow comprised … 40% of the LTIP." D.I. 55 at 7. Free cash flow *conversion*, as opposed to free cash flow, was historically considered in LTIP awards, *see* D.I. 45-1 at 176, 260, but was eliminated as a factor in the 2023 LTIP award, *see id.* at 80, 82, 177. Free cash flow conversion is "defined as Cash Flows from Operations less purchases of property, plant and equipment as disclosed on the Company's Cash Flow statement divided by Adjusted EBITDA." *Id.* at 189, 274. Free cash flow itself therefore had even less of a direct impact on Mr. Lock's incentive compensation than Plaintiffs suggest.

[6] Plaintiffs also ignore that their cited decision explained that "the absence of sales by [one defendant] undermines the claim of scienter against him," *In re SLM*, 740 F. Supp. 2d at 558, in arguing the opposite with respect to Mr. Lock. D.I. 55 at 10.

to distinguish the cases Mr. Lock cited are meritless, as the Third Circuit in *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004), endorsed the Fifth Circuit's holding that "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated," and, in *In re Great Atlantic & Pacific Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004), explained that the company's "desire to manage its earnings in order to meet analyst and market expectations" amounted to "a general corporate motive."

*Audit Committee Findings.* As explained in the Company's reply brief, the Court should reject the two inferences Plaintiffs ask it to draw about the Audit Committee findings. First, that the Audit Committee found Mr. Lock to have violated the Code of Ethics does not mean it found him to have made false statements, because the *promotion* of full and fair disclosure differs from a failure to *make* full and fair disclosure. The former does not result in the making of false statements. Second, Plaintiffs attempt to conflate the Audit Committee's finding that Mr. Lock lacked transparency with the Board with a conclusion that he affirmatively hid information from it. Those are not the same thing. As the Company's brief states, the alleged failure to volunteer additional information to the Board (*e.g.*, the lack of transparency), does not mean that Mr. Lock or anybody else engaged in a cover-up, and there are certainly no allegations to support the notion that anybody was trying to conceal or hide anything. To the contrary, the allegations establish that the timing actions were a long-standing and open practice involving whole departments at year-end, not a tightly guarded secret that could be concealed. AC ¶¶ 107–18. There is no assertion by the Audit Committee of a failure to cooperate in its inquiry.

*Resignation and Severance.* Plaintiffs misunderstand Mr. Lock's argument concerning resignation and severance. Mr. Lock is not arguing that he "left on good terms" (although he continues to disagree strongly with any negative characterization of his conduct by the Board or

otherwise), D.I. 55 at 9—but there are no facts, or inferences to be drawn from those facts, that he left because he made any fraudulent public statements. And Plaintiffs again are wrong that Mr. Lock received nothing more than what he was entitled to upon his departure. In addition to the salary and options vesting during the period Mr. Lock was on leave (which would not have happened had the Company terminated him immediately), the Company also provided additional compensation and benefits beyond what they were required by law to provide, including paying Mr. Lock the cash equivalent of three months of premiums under COBRA and extending his time to exercise his options from 90 days to 3 years.

### III.    Plaintiffs Fail to Identify Allegations Supporting Any Element of Control Person Liability.

In an effort to impose control person liability on Mr. Lock, Plaintiffs mangle and conflate the distinct elements of their claim. Plaintiffs' failure to allege with particularity any of the elements of the Section 20(a) claim provides three independent grounds for dismissal.

*First*, as to the "control" element, despite acknowledging that Section 20(a) requires control over *another person* liable under the Act, Plaintiffs argue only that Mr. Lock "controlled the violation" by having made false statements himself. *Id.* at 10. This is insufficient as a matter of law. *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 233 (D.N.J. 2002) (finding allegations that defendants controlled the transactions allegedly giving rise to securities violations "entirely ineffective" and explaining that "a section 20(a) claim requires a party to plead more than just a primary violation"). Plaintiffs have not pleaded any facts showing that Mr. Lock controlled another person who made any misstatements. *See supra* at 1–5.

*Second*, as to the "culpable participation" element, Plaintiffs try to sidestep their obligation to plead that element at all by citing to another district's ruling that falls on the opposite side of "a split among this [Third] Circuit's district courts on the issue." *Univ. Am. Corp. v. Partners*

9

*Healthcare Sols. Holdings, L.P.*, 61 F. Supp. 3d 391, 398 (D. Del. 2014) (Andrews, J.); *see* D.I. 55 at 10 n.5 (citing case from the District of New Jersey). But their assertion that they need not plead culpable participation flouts *this Court's* precedent that "requir[es] plaintiffs to plead culpable participation with particularity." *Univ. Am. Corp.*, 61 F. Supp. 3d at 398. Plaintiffs do not even pretend that they have done so. D.I. 55 at 10 n.5 (relying on the unsupported platitude that Mr. "Lock's culpable participation is clear").

*Third*, as discussed at length in the Company's opening brief, there is no primary violation upon which control person liability could be predicated. D.I. 37 at 10–30.

## IV.    Plaintiffs Fail to Support Their Scheme Liability Claim as to Mr. Lock Because They Do Not Allege He Himself Took Any "Deceptive" Actions with Scienter.

In their single-paragraph defense of their scheme liability claim as to all Defendants, Plaintiffs argue, in a conclusory fashion, that Defendants' efforts to delay payments and accelerate receivables amount to "deceptive actions" beyond making the alleged misstatements themselves. D.I. 54 at 30. As to this contention, Mr. Lock incorporates the arguments made in the Company's Reply Brief addressing scheme liability. The scheme liability claim also should be dismissed because, as described *supra* at 5–9, Plaintiffs failed to plead any facts showing that Mr. Lock acted with scienter as to any of the allegedly false statements, all of which were made before he is alleged to have been involved in or known about the timing actions.

## CONCLUSION

Accordingly, Mr. Lock respectfully requests that the Court grant his motion to dismiss.

10

Of Counsel:

David A. Gordon
Geeta Malhotra
Jacqueline Pruitt
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
dgordon@sidley.com
gmalhotra@sidley.com
jpruitt@sidley.com

Dated: January 21, 2025

*/s/ Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Counsel for Defendant Jonathan Lock*

11