# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE CHEMOURS COMPANY SECURITIES LITIGATION | Case No. 24-cv-361 RGA |
| This document relates to all actions. | <u>CLASS ACTION</u> |

## REPLY BRIEF IN SUPPORT OF
## THE CHEMOURS COMPANY'S MOTION TO DISMISS
## <u>THE AMENDED CLASS ACTION COMPLAINT</u>

OF COUNSEL:

WACHTELL, LIPTON, ROSEN
   & KATZ

Jonathan M. Moses (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Canem Ozyildirim (*pro hac vice*)
51 West 52nd Street
New York, NY  10019
(212) 403-1000


POTTER ANDERSON
   & CORROON LLP

Peter J. Walsh, Jr. (#2437)
Tyler E. Cragg (#6398)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000

*Counsel for The Chemours Company*


January 21, 2025

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..............................................................................................................................1

I.      Plaintiffs fail to plead any false or misleading statements or omissions .............................1

        A.      Plaintiffs do not plead any "Free Cash Flow Misstatements" ..................................1

        B.      Plaintiffs do not plead any actionable misstatement of cash flow guidance............5

        C.      Plaintiffs do not plead any actionable misstatement concerning Chemours' internal controls ......................................................................................................7

        D.      Plaintiffs do not plead any actionable misstatement concerning Chemours' Code of Ethics.............................................................................................................7

        E.      The other statements challenged by Plaintiffs are otherwise inactionable ..............8

II.     Plaintiffs fail to plead scienter ........................................................................................9

        A.      Plaintiffs' attempts to mischaracterize Chemours' disclosures fail.......................11

        B.      The generic motivation of incentive compensation does not support scienter ......12

        C.      Executive departures do not support scienter .........................................................12

        D.      Plaintiffs fail to plead "exploitation" of internal controls.....................................13

III.    Plaintiffs fail to allege that the purported misstatements caused Chemours stockholders any loss ......................................................................................................13

IV.     Plaintiffs fail to plead "Scheme Liability" under Rule 10b-5(a) and (c) ..........................15

CONCLUSION...........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Cnty Emps.' Ret. Sys.* v. *Energy Transfer LP*,
    532 F. Supp. 3d 189 (E.D. Pa. 2021) ......................................................................................8

*Behrmann* v. *Brandt*,
    2020 WL 4432536 (D. Del. July 31, 2020),
    *adopted*, 2020 WL 5752389 (D. Del. Sept. 25, 2020) ...........................................................2, 3

*Bos. Ret. Sys.* v. *Alexion Pharms., Inc.*,
    556 F. Supp. 3d 100 (D. Conn. 2021) ............................................................................13 n.16

*City of Edinburgh Council* v. *Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014) ....................................................................................................5

*City of Roseville Emps.' Ret. Sys.* v. *Horizon Lines, Inc.*,
    686 F. Supp. 2d 404 (D. Del. 2009),
    *aff'd*, 442 F. App'x 672 (3d Cir. 2011) ...................................................................................7

*City of Roseville Emps.' Ret. Sys.* v. *Horizon Lines, Inc.*,
    713 F. Supp. 2d 378 (D. Del. 2010) ......................................................................................12

*Fresno Cnty. Emps.' Ret. Ass'n* v. *ComScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017) .............................................................................11 n.13

*Friedman* v. *Rayovac Corp.*,
    295 F. Supp. 2d 957 (W.D. Wis. 2003) .............................................................................3 n.4

*Galati* v. *Com. Bancorp, Inc.*,
    220 F. App'x 97 (3d Cir. 2007) .........................................................................................2, 3

*Glover* v. *DeLuca*,
    2006 WL 2850448 (W.D. Pa. Sept. 29, 2006) ................................................................ *passim*

*Goldman Sachs Grp., Inc.* v. *Ark. Tchr. Ret. Sys.*,
    594 U.S. 113 (2021) ...............................................................................................................14

*GSC Partners CDO Fund* v. *Washington*,
    368 F.3d 228 (3d Cir. 2004) ..................................................................................................12

*In re Advance Auto Parts, Inc., Sec. Litig.*,
    2020 WL 599543 (D. Del. Feb. 7, 2020) ................................................................................5

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999) ....................................................................................................6

*In re Aurora Cannabis Inc. Sec. Litig.*,
  2023 WL 5508831 (D.N.J. Aug. 24, 2023) ..............................................................14

*In re Bristol-Myers Squibb Sec. Litig.*,
  2005 WL 2007004 (D.N.J. Aug. 17, 2005) ..............................................................14

*In re Campbell Soup Co. Sec. Litig.*,
  145 F. Supp. 2d 574 (D.N.J. June 19, 2001)......................................................9 n.11

*In re Chemours Co. Sec. Litig.*,
  587 F. Supp. 3d 143 (D. Del. 2022)....................................................................3 n.3

*In re Cognizant Techs. Sols. Corp.*,
  2018 WL 3772675 (D.N.J. Aug. 8, 2018) .........................................................2, 3, 7

*In re Enzymotec Sec. Litig.*,
  2015 WL 8784065 (D.N.J. Dec. 15, 2015)...........................................................7 n.8

*In re Great Atl. & Pac. Tea Co. Sec. Litig.*,
  103 F. App'x 465 (3d Cir. 2004) .............................................................................10

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  2017 WL 1536223 (D.N.J. Apr. 27, 2017),
  *aff'd*, 905 F.3d 106 (3d Cir. 2018)........................................................................12

*In re Hertz Glob. Holdings Inc.*,
  905 F.3d 106 (3d Cir. 2018).................................................................9, 10, 12, 13

*In re Ikon Office Sols, Inc. Sec. Litig.*,
  277 F.3d 658 (3d Cir. 2002)...............................................................................4 n.6

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) .........................................................................10

*In re LendingClub Sec. Litig.*,
  254 F. Supp. 3d 1107 (N.D. Cal. 2017) .............................................................7 n.9

*In re Marvell Tech. Grp., Ltd.*,
  2019 WL 4447393 (S.E.C. Sept. 16, 2019) ..............................................................3

*In re Nature's Sunshine Prods. Sec. Litig.*,
  486 F. Supp. 2d 1301 (D. Utah 2007)................................................................11 n.14

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2004 WL 1563024 (E.D. Pa. July 13, 2004)............................................................10

*In re Royal Dutch/Shell Transport Sec. Litig.*,
  2006 WL 2355402 (D.N.J. Aug. 14, 2006) .............................................................15

*In re Under Armour, Inc.*,
   2021 WL 1737508 (S.E.C. May 3, 2021) ................................................................3

*In re Under Armour Sec. Litig.*,
   409 F. Supp. 3d 446 (D. Md. 2019) ..................................................................4 n.5

*In re Under Armour Sec. Litig.*,
   540 F. Supp. 3d 513 (D. Md. 2021) ..................................................................4 n.5

*In re WageWorks, Inc., Sec. Litig.*,
   2020 WL 2896547 (N.D. Cal. June 1, 2020) ..................................................13 n.16

*Ironworkers Loc. 580-Joint Funds* v. *Linn Energy, LLC*,
   29 F. Supp. 3d 400 (S.D.N.Y. 2014) ...............................................................8 n.10

*Janbay* v. *Canadian Solar, Inc.*,
   2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013),
   *aff'd* (2d Cir. Dec. 20, 2013) ...........................................................................14

*Kanefsky* v. *Honeywell Int'l Inc.*,
   2020 WL 2520669 (D.N.J. May 18, 2020) .............................................................14

*Kumar* v. *Kulicke and Soffa Indus., Inc.*,
   2019 WL 5081896 (E.D. Pa. Oct. 9, 2019) ...................................................... 12-13

*Laasko* v. *Endo Int'l*,
   2022 WL 3444038 (D.N.J. Aug. 17, 2022) .............................................................13

*Lewakowski* v. *Aquestive Therapeutics, Inc.*,
   2023 WL 2496504 (D.N.J. Mar. 14, 2023) ..............................................................6

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund* v. *Diodes, Inc.*,
   810 F.3d 951 (5th Cir. 2016) ................................................................................5

*Lowry* v. *RTI Surgical Holdings, Inc.*,
   532 F. Supp. 3d 652 (N.D. Ill. 2021) ..............................................................13 n.16

*McCabe* v. *Ernst & Young, LLP*,
   494 F.3d 418 (3d Cir. 2007) ................................................................................14

*Mulderrig* v. *Amyris, Inc.*,
   492 F. Supp. 3d 999 (N.D. Cal. 2020) .............................................................12 n.15

*Nat'l Junior Baseball League* v. *Pharmanet Dev. Grp. Inc.*,
   720 F. Supp. 2d 517 (D.N.J. Mar. 30, 2010) .................................................10, 14 n.17

*Nykredit Portefolje Admin. A/S* v. *Propetro Holding Corp.*,
   2021 WL 9037758 (W.D. Tex. Sept. 13, 2021) ...................................................7 n.9

*Orbis Glob. Equity Fund Ltd.* v. *NortonLifelock Inc.*,
  2023 WL 1800963 (D. Ariz. Feb. 7, 2023) ...........................................................................7 n.9

*Rex & Roberta Ling Living Tr.* v. *B Commc'ns Ltd.*,
  346 F. Supp. 3d 389 (S.D.N.Y. 2018) ..................................................................................3 n.4

*Roth* v. *AON Corp.*,
  2008 WL 656069 (N.D. Ill. Mar. 7, 2008) .........................................................................11 n.13

*San Antonio Fire & Police Pension Fund* v. *Dentsply Sirona Inc.*,
  732 F. Supp. 3d 300 (S.D.N.Y. 2024) ................................................................................12 n.15

*Se. Pa. Transp. Auth.* v. *Orrstown Fin. Servs., Inc.*,
  2022 WL 3572474 (M.D. Pa. Aug. 18, 2022) ...........................................................................7

*SEC* v. *Desai*,
  145 F. Supp. 3d 329 (D.N.J. 2015),
  *aff'd*, 672 F. App'x 201 (3d Cir. 2016) .............................................................................11 n.14

*SEC* v. *Lucent Techs., Inc.*,
  610 F. Supp. 2d 342 (D.N.J. April 17, 2009) ...........................................................................15

*SEC* v. *Mintz*,
  723 F. Supp. 3d 386 (D.N.J. 2024) ...........................................................................................15

*Stichting Pensioenfonds ABP* v. *Merck & Co.*,
  2012 WL 3235783 (D.N.J. Aug. 1, 2012) .................................................................................15

*Strougo* v. *Mallinckrodt Pub. Ltd. Co.*,
  2022 WL 17740482 (D.N.J. Dec. 16, 2022) .......................................................................9 n.11

*Synchronoss Techs., Inc. Sec. Litig.*,
  2020 WL 2786936 (D.N.J. May 29, 2020) ..................................................................................6

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ....................................................................................................................9

*Vanderhoef* v. *China Auto Logistics Inc.*,
  2020 WL 5105243 (D.N.J. Aug. 31, 2020) .........................................................................11 n.14

*Williams* v. *Globus Med., Inc.*,
  869 F.3d 235 (3d Cir. 2017) ....................................................................................................5, 6

**Statutes and Rules**

15 U.S.C. § 78u-5(c)(1) ...............................................................................................................6

## PRELIMINARY STATEMENT

Opposing dismissal, Plaintiffs admit that Chemours accurately reported its cash flows. Plaintiffs also concede that Chemours' outside auditors confirmed — after probing the alleged conduct — that it "present[ed] fairly, in all material respects . . . the results of its operations and cash flows." And they acknowledge Chemours' warnings that "timing of payment on accounts payable and collection of [its] accounts receivable" was a "primary" factor impacting its results.

Despite all that, Plaintiffs claim that Chemours' financial statements were fraudulent. Unable to square this claim with conceded fact, Plaintiffs resort to fiction — telling the Court that Chemours' Audit Committee "found Defendants intentionally manipulated Free Cash Flow both to mislead investors about the Company's yearly results and to fraudulently increase their incentive compensation." PB 2.[1] Plaintiffs say this has support in Chemours' filings. Not so. As those records show, the Audit Committee never found that cash flow was intentionally manipulated to mislead investors, nor that pay was fraudulently increased. And it did not find any financial statement misleading, either. Just the opposite: Chemours stands by its statements.

Plaintiffs' fiction does not end there. Chemours' motion set out the Third Circuit authority compelling dismissal for failure to plead falsity, scienter, or loss causation. Tellingly, Plaintiffs' opposition brief does not even mention much of this precedent, let alone try to explain why the Court should disregard the law of this Circuit. Plaintiffs cannot plead securities fraud by misstating fact and law. The Complaint should be dismissed, with prejudice.

## ARGUMENT

**I.**     **Plaintiffs fail to plead any false or misleading statements or omissions.**

      **A.**     **Plaintiffs do not plead any "Free Cash Flow Misstatements."**

Having conceded that Chemours accurately reported its cash flows, in financial reports confirmed by its auditors, supplemented by warnings about the impact of "timing of payment . . .

---

[1] "PB __" refers to Plaintiffs' answering brief opposing Chemours' motion to dismiss, D.I. 54; "CB __" to Chemours' opening brief in support of that motion, D.I. 37; "¶ __" to the Complaint.

and collection," Plaintiffs cannot claim Chemours misled the market about those cash flows. This is because "[a]bsent inaccuracies in a company's reported financial results, statements or omissions regarding those financial statements are generally not actionable." *Behrmann* v. *Brandt*, 2020 WL 4432536, at *10 (D. Del. July 31, 2020), *adopted*, 2020 WL 5752389 (D. Del. Sept. 25, 2020). Applying this rule, Third Circuit courts consistently reject efforts to convert the financial statement into a confessional. *See, e.g.*, *Glover* v. *DeLuca*, 2006 WL 2850448, *21-22 (W.D. Pa. Sept. 29, 2006) (Hardiman, J.) (financial statement not rendered misleading by failure to disclose "postponing payments . . . to vendors and subcontractors[] until the next quarter").[2]

Plaintiffs ask the Court to discard this authority, arguing that Defendants assumed a duty of heightened disclosure by "tout[ing]" Chemours' 2022 Free Cash Flow and so putting it "at issue." PB 11-12. But Plaintiffs cite no support for that proposition; indeed, their cases refute it. For example, in *In re Cognizant Technologies Solutions Corp.*, 2018 WL 3772675 (D.N.J. Aug. 8, 2018) (cited at PB 21, 27, 28), investors likewise claimed a company had to disclose "improper" conduct "that contribute[d] to [its] success 'when [it] put[] at issue the cause of its success'" and "strong performance." *Id*. at *21. The court rebuffed this as "inconsistent with Third Circuit precedent," *id.* at *22, citing *Galati* v. *Commerce Bancorp, Inc.*, 220 F. App'x 97 (3d Cir. 2007). In *Galati*, a bank had talked up "strong top-line revenue growth driven by strong deposit growth which significantly increase[d] [its] net interest income and net income," without revealing that deposit growth was fueled by illegal bid-rigging. *Id.* at 101. As here, stockholders argued that by "touting" its results, the bank "put [them] in play," triggering a duty to disclose their provenance. *Id.* The Third Circuit rejected Plaintiffs' theory, holding the statements inactionable as "[f]actual recitations of past earnings." *Id.* at 101-02; *see also Behrmann*, 2020 WL 4432536, at *9 (financial statements not misleading for failure to disclose anticompetitive

---

[2] Plaintiffs attempt to distinguish the relevant precedent by mischaracterizing facts. *Compare* PB 15 n.4 (claiming there was no indication how *Glover* defendants "put [their] practice of paying down revolving credit line at the end of the quarter at issue"), *with Glover*, 2006 WL 2850448, at *26 (discussing statement that credit line "provid[ed] the [allegedly insolvent c]ompany with the liquidity needed to finance [its] growth and diversification plans in the near term").

scheme, even though "[d]efendants put the topic of . . . financial success at issue").

The result in *Galati*, *Cognizant*, *Glover*, and *Behrmann* follows here.  Tellingly, Plaintiffs do not cite a <u>single</u> precedent from this Circuit as holding accurate financial disclosures misleading due to undisclosed "misconduct."[3]  Instead, Plaintiffs lean on a pair of un-adjudicated consent orders, saying they set an "SEC policy" that Defendants violated.  *See* PB 13-14 (citing *In re Marvell Tech. Grp., Ltd.*, 2019 WL 4447393 (S.E.C. Sept. 16, 2019) and *In re Under Armour, Inc.*, 2021 WL 1737508 (S.E.C. May 3, 2021)).[4]  But those settlements announced no policy — to the contrary, each cautioned it was "not binding on any other person or entity in . . . any other proceeding."  *Marvell*, 2019 WL 4447393, at *1 n.1; *Under Armour*, 2021 WL 1737508, at *1 n.1.  And even if they somehow bound this Court, they would still be irrelevant.

Both *Marvell* and *Under Armour* involved channel-stuffing, where management dumped unwanted product on customers to mask "substantial decline[s] in customer demand in [their] core product markets," without disclosing the impact on future sales.  *Marvell*, 2019 WL 4447393, at *1.  Plaintiffs do not claim Chemours hid declining demand or faked sales, but insist the consent orders should control because Defendants "compromise[d] future quarters."  PB 14.

Plaintiffs miss the point.  The SEC criticized Marvell and Under Armour for inflating revenue by means invisible to investors, who had no way of knowing that unwanted sales had been "pulled in."  Here, the market was told how much Chemours expected to receive and pay

---

[3] Plaintiffs claim that *In re Chemours Co. Sec. Litig.*, 587 F. Supp. 3d 143 (D. Del. 2022) — a since-dismissed lawsuit — "rejected" the proposition that accounting statements "cannot be misleading because [an] auditor did not find a GAAP violation, and [p]laintiffs d[id] not allege one."  PB 12.  In the passage cited by Plaintiffs, the court simply observed that non-GAAP disclosures can be misleading.  Moreover, *Chemours* involved disclosures that were "not a GAAP concept" at all.  587 F. Supp. 3d at 155.  This case turns on disclosure of Operating Cash Flow (a GAAP figure) and Free Cash Flow (the arithmetic difference between two GAAP figures).  Those numbers <u>cannot</u> be inaccurate without a GAAP violation, which is not alleged.

[4] Plaintiffs also cite an SEC report on how "intent of management" can be "evidence of materiality."  PB 14 (quoting Staff Acct. Bull. No. 99 (Aug. 12, 1999)).  That guidance addressed materiality, not when or whether accurate financial statements are misleading by omission.  Several of Plaintiffs' other citations likewise concerned materiality, not falsity.  *See* PB 14 (citing *Rex & Roberta Ling Living Tr.* v. *B Commc'ns Ltd.*, 346 F. Supp. 3d 389 (S.D.N.Y. 2018); *Friedman* v. *Rayovac Corp.*, 295 F. Supp. 2d 957, 988 (W.D. Wis. 2003)).

out in future quarters.  When management accelerated collection on receivables, that decreased the (disclosed) year-end receivables.  When management delayed payments to vendors, that increased the (disclosed) year-end payables.  Indeed, this exact distinction drove the outcome in *Glover*, where Judge Hardiman held undisclosed timing of vendor payments inactionable because its effect was reflected in the "accounts payable total."  2006 WL 2850448, at *22.[5]

To mask their failure to allege falsity, Plaintiffs claim "Chemours' own board thought Defendants' statements were misleading."  PB 15.  This is not well pleaded, because it is contrary to the disclosures on which Plaintiffs rely.  The Audit Committee found only that "there was a lack of transparency with the Company's board of directors by former senior management regarding efforts to delay payments to certain vendors and to accelerate the collection of receivables," efforts undertaken "in part to meet free cash flow targets . . . which also would be a part of a key metric for determining incentive compensation applicable to both executive officers and to employees."  Ex. 20 at 77.  The Audit Committee thus "concluded that former senior management violated" ethical guidance mandating the "promot[ion of] full, fair, accurate, timely and understandable disclosure" to investors.  Ex. 18 at 20; PB Ex. 1.  Plaintiffs cite nothing to suggest anyone thought this failure to "promote" fair disclosure rendered any financial reports misleading (let alone fraudulently so).  Nor could they, because Chemours has not restated those reports — and its outside auditor continues to endorse its cash flow presentation.[6]

Finally, Plaintiffs attack Chemours' disclosure of "timing of payment on accounts payable and collection of [its] accounts receivable" as a major factor in its reported cash flows,

---

[5] The parallel Under Armour litigation does not help Plaintiffs.  Even under the extreme facts of that case, the district court initially granted dismissal, *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446 (D. Md. 2019), only allowing claims to proceed after the SEC found intentional wrongdoing.  *In re Under Armour Sec. Litig.*, 540 F. Supp. 3d 513, 516 (D. Md. 2021).

[6] While an accountant's blessing is not conclusive, it is "highly probative" that Chemours' financial statements were not restated and that its independent auditor gave a clean opinion on its disclosures.  *In re Ikon Office Sols, Inc. Sec. Litig.*, 277 F.3d 658, 669 (3d Cir. 2002).  That rule applies with particular force here, where the pleadings rest on the disclosed findings of an internal investigation in which the same auditor participated.

Ex. 10 at 48, arguing this "in no way indicate[d] that the changes to the timing of payments were made intentionally." PB 16. Plaintiffs do not, however, propose any other interpretation. Nor do they explain why a reasonable investor would believe that the timing of collection and payment is unintended happenstance — particularly when similar cash management is a common, accepted practice. *See Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund* v. *Diodes, Inc.*, 810 F.3d 951, 959-60 (5th Cir. 2016).

Alternatively, Plaintiffs suggest it would be "inappropriate" for the Court to consider Chemours' "timing" disclosures, on the logic that this is a "truth-on-the-market defense." PB 16. In other words, Plaintiffs argue that they can plead fraud based on omissions in SEC filings, but the Court cannot consider whether the "omitted" facts appeared elsewhere in those same filings. That would be a neat trick. Unfortunately for Plaintiffs, Third Circuit law requires that statements be examined "in the full context of the documents of which they are part." *City of Edinburgh Council* v. *Pfizer, Inc.*, 754 F.3d 159, 169 (3d Cir. 2014).

### B.    Plaintiffs do not plead any actionable misstatement of cash flow guidance.

Plaintiffs claim Chemours' 2023 cash flow guidance was "issued without reasonable basis" because it was "based on Defendants' undisclosed intention to artificially shift Operating Cash Flow from first quarter 2024." PB 19. They cite no law supporting this theory of "undisclosed intention." There is none. To plead guidance misleading, the Third Circuit requires "true facts," not "conjecture," sufficient to reasonably infer that guidance was either contrary to available data or used unsound forecasting methodology; it does not require disclosure of intentions or assumptions. *Williams* v. *Globus Med., Inc.*, 869 F.3d 235, 244-45 (3d Cir. 2017); *In re Advance Auto Parts, Inc.*, 2020 WL 599543, at *2 (D. Del. Feb. 7, 2020).

Regardless, the Complaint would still fail under Plaintiffs' invented rule, because they do not adequately plead that the guidance reflected an undisclosed intention to "artificially shift" cash flow at year-end. Plaintiffs instead rely on speculation, pointing to a two-year "pattern" of conduct and the similarity between Chemours' 2022 and 2023 projections. PB 19. Plaintiffs'

own authority shows why this is insufficient.  In *Synchronoss Technologies, Inc. Securities Litigation*, 2020 WL 2786936 (D.N.J. May 29, 2020), for example, even longstanding revenue-recognition fraud was not enough, because the fact that "revenue was historically recognized without proper documentation fail[ed] to demonstrate that" the challenged guidance was false. *Id.* at *21; *see also Globus*, 869 F.3d at 245-46.[7]

Furthermore, even if speculation about the unknown impact of undisclosed intentions could suffice, Chemours' cash flow guidance would still be inactionable, because it is shielded by the PSLRA's safe harbor for forward-looking statements.  Chemours' concededly forward-looking guidance cannot support a claim for two independent reasons.  *First*, Chemours supplied "meaningful cautionary statements identifying important factors that could cause actual results to differ materially."  15 U.S.C. § 78u-5(c)(1).  Plaintiffs acknowledge that Chemours disclosed the potential impact of timing activity on its cash flows, but argue that this specific disclosure was not "meaningful" because it did not "give any indication that Defendants were intentionally shifting Operating Cash Flow."  PB 20.  This misreads the disclosure.  *See supra* at 4-5.

*Second*, Plaintiffs have failed to show the guidance was made with "actual knowledge" of its falsity.  Plaintiffs all but concede as much in their brief, declaring — without citation or discussion — that Defendants had "actual knowledge the guidance statements were misleading since it was their intention to meet them by intentionally shifting Operating Cash Flow."  PB 20.  This circular assertion does not come close to the particularized "proof of knowing falsity" that Plaintiffs must allege.  *Lewakowski* v. *Aquestive Therapeutics, Inc.*, 2023 WL 2496504, at *9 (D.N.J. Mar. 14, 2023).  Instead, it is the sort of "catch-all allegation that all speakers knew their statements were false when made" that the Third Circuit has held to be "too broad" to overcome the statutory safe harbor.  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535-36 (3d Cir. 1999).

---

[7] Plaintiffs also cite a former employee's alleged belief that Chemours' guidance "only made sense if Chemours intended to manipulate payables and receivables," ¶ 110, without offering any reason to credit this speculation.  The former employee is alleged to be a software specialist who reported to Chemours' chief information officer and had no involvement in forecasting.  ¶ 107. Plaintiffs nowhere explain why she is equipped to opine on the achievability of projections.

**C.    Plaintiffs do not plead any actionable misstatement concerning Chemours' internal controls.**

SOX certifications are "statements of opinion," reflecting only "defendants' perception of . . . internal controls." *Se. Pa. Transp. Auth.* v. *Orrstown Fin. Servs., Inc.*, 2022 WL 3572474, at *48 (M.D. Pa. Aug. 18, 2022) (collecting cases). Plaintiffs ignore this law, ceding falsity.[8]

Unable to confront the governing authority, Plaintiffs instead mischaracterize several out-of-circuit trial court decisions as holding that SOX certifications are per se misleading when "defendants are taking advantage of the company's ineffective internal controls for their personal benefit." PB 21. Each of those cases turned on allegations that defendants knew their conduct was illegal or improper when they certified controls.[9] This does nothing for Plaintiffs, who plead no such facts. *See Cognizant*, 2018 WL 3772675, at *25 (dismissing claims for failure to plead that defendants had "reason to believe that [their certifications were] misleading when made").

**D.    Plaintiffs do not plead any actionable misstatement concerning Chemours' Code of Ethics.**

Guidelines like the Code of Ethics are "aspirational," *Cognizant*, 2018 WL 3772675, at *17, and their adoption "simply does not imply that all . . . directors and officers are following [them]," *City of Roseville Emps.' Ret. Sys.* v. *Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 415 (D. Del. 2009) (collecting cases), *aff'd*, 442 F. App'x 672 (3d Cir. 2011). That is dispositive here.

Yet again, Plaintiffs ignore the relevant authority. Seeking to shift focus, Plaintiffs argue ethical guidelines can be misleading if they contain "affirmative statements" that omit material facts, citing *Allegheny County Employees' Retirement System* v. *Energy Transfer LP*, 532 F.

---

[8] Without acknowledging Defendants' cases, Plaintiffs cite an outlier decision that did not address the relevant law, apparently because the defendants failed to argue that challenged certifications were opinions. *In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at *16 (D.N.J. Dec. 15, 2015). That has no relevance here.

[9] PB 21 (citing *Nykredit Portefolje Admin. A/S* v. *Propetro Holding Corp.*, 2021 WL 9037758, at *16 (W.D. Tex. Sept. 13, 2021) ("executives engaged in improper related-party transactions" and used corporate funds for personal expenses); *Orbis Glob. Equity Fund Ltd.* v. *NortonLifelock Inc.*, 2023 WL 1800963, *10, 15-17 (D. Ariz. Feb. 7, 2023) (clear GAAP violations, including improper revenue recognition and misclassified costs); *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1116 (N.D. Cal. 2017) (personal loans to inflate loan-origination numbers)).

Supp. 3d 189 (E.D. Pa. 2021). PB 21-22. This misstates *Energy Transfer*, which held that ethics codes are actionable when they go "beyond generalized expressions of commitment to high corporate standards" and "address[] concrete steps" being taken. *Id.* at 221-23, 234 (denying dismissal where undisclosed practice "directly contradict[ed]" the published terms of "detailed policy" on payments to government workers). That rule compels dismissal here: Chemours' generic mandate to "promote full, fair, accurate, timely, and understandable disclosure" identified no "concrete steps" for compliance. PB Ex. 1. "Promot[ion]" of fair disclosure is instead the kind of "generalized expression" that cannot support a claim. *See* CB 17-18.

> **E.    The other statements challenged by Plaintiffs are otherwise inactionable.**

<u>"Strong" Operating Cash Flow</u>. The Complaint claims Defendants deceived the market by describing corporate cash flow as "strong." But cash flow was strong, and the statements were inactionable "puffery" besides. CB 17-18. Plaintiffs now say the descriptor was "misleading . . . when used in conjunction with discussing the 2022 results because they show the importance of the yearly reporting of Free Cash Flow." PB 12 n.3. This makes no sense; a statement does not become misleading by "show[ing] the importance" of another statement.

<u>Seasonality</u>. Plaintiffs do not dispute that Chemours' business is seasonal, as disclosed since 2015. PB 17-18. Instead, Plaintiffs attempt to transform Chemours' consistent disclosures into fraud by reading words into them, asserting that Defendants "gave the impression that seasonality was <u>entirely</u> based on a natural pattern." PB 17 (emphasis added). The Court should not permit Plaintiffs to plead fraud by blue-penciling Chemours' disclosures.[10]

<u>Factors "driv[ing]" Chemours' "cash flow generation."</u> The Complaint attacks Chemours' disclosure that its "operating cash flow generation" was "driven by, among other things . . . general global economic conditions at any point in time" and "industry-specific

---

[10] Plaintiffs note that Chemours offered additional information on its capital management in its 2023 annual report, but a company's decision to provide certain details in its disclosures following an internal investigation is not a concession that prior disclosures were deficient. *Ironworkers Loc. 580-Joint Funds* v. *Linn Energy, LLC*, 29 F. Supp. 3d 400, 426 (S.D.N.Y. 2014). Plaintiffs cite no contrary precedent, because such "fraud by hindsight" is not actionable.

issues." ¶¶ 132, 165, 185, 201.  Plaintiffs cannot explain why this list should have included the timing of payables and receivables, a factor that (unlike sales and market conditions) does not "drive[]" the "generation" of cash flow.  CB 19.  Instead, Plaintiffs assert that by referencing economic conditions "at any point in time," Defendants "put the time when Chemours generated Operating Cash flow at issue."  PB 17.  In other words, because the disclosure referenced the concept of "time," Defendants assumed an obligation to disclose all factors relevant to "time." Unsurprisingly, none of Plaintiffs' cases supports such an attenuated theory of omission.[11]

Disclosures of annual trends in operating cash inflows.  Plaintiffs also attempt to salvage their claim that Defendants misrepresented the factors influencing year-over-year changes in its 2023 Operating Cash Flows.  PB 18-19.  It is beyond dispute that Chemours disclosed that these changes stemmed in part from shifts in net working capital — including those caused by "timing" of payables and receivables.  CB 12 & n.10, 13.  Plaintiffs say this was not enough, because the disclosures were too "vague," but cite no authority for this purported requirement of specificity.  PB 18.  And while Plaintiffs emphasize the cashflow impact on the first quarter of 2023, they allege equivalent activity impacted the first quarter of 2022.  As such, the year-over-year impact of management's "timing" activities was far less than they assert.  PB 18.

## II.    Plaintiffs fail to plead scienter.

The Complaint also fails to plead the requisite "cogent" inference of scienter.  *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  In evaluating scienter for financial misstatements, the Third Circuit requires detailed "allegations to compellingly imply that [defendants] knew or recklessly disregarded that their actions were resulting in improper accounting practices."  *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 118 (3d Cir. 2018). Complicity in "improper accounting" is not enough, *Glover*, 2006 WL 2850448, at *10, nor even

---

[11] *See* PB 17 (citing *Strougo* v. *Mallinckrodt Pub. Ltd. Co.*, 2022 WL 17740482, at *10 (D.N.J. Dec. 16, 2022) (company failed to disclose known liabilities that rendered it insolvent); *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574 (D.N.J. June 19, 2001) (company knowingly overstated sales by dumping unwanted products on its customers, then expressly disclaimed aspects of this practice and violated GAAP to obscure prematurely realized revenue)).

admitted GAAP violations, *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 352 (D.N.J. 2007). Disclosures must instead reflect a "self-evident business nonsensicality which cannot be made by a defendant with a non-culpable state of mind." *Id.*; *In re Ravisent Techs., Inc. Sec. Litig.*, 2004 WL 1563024, at *9 (E.D. Pa. July 13, 2004) (no inference of scienter unless accounting breached a "crystalline [] policy"). Applying this law, the Third Circuit has affirmed dismissal even where defendants manipulated "timing for the recognition of vendor allowances and the accounting for inventory" in violation of GAAP, then restated years of income. *In re Great Atl. & Pac. Tea Co. Sec. Litig.*, 103 F. App'x 465, 467-70 (3d Cir. 2004).

Plaintiffs <u>ignore this authority</u>, neglecting to even mention, let alone address, the relevant holdings of *Great Atlantic*, *Glover*, or *Intelligroup*. Instead, Plaintiffs claim it is "misdirection" to cite cases that weighed scienter in the context of alleged accounting misstatements. PB 22. But try as they might, Plaintiffs cannot pretend this case is about anything else, not when their own Complaint attacks financial statements, timing practices, and guidance for cash flow — which is just the arithmetic difference of two GAAP figures. This case law is thus dispositive.

In any event, regardless of the label they apply, Plaintiffs have failed to plead facts permitting the requisite inference of "conscious misbehavior," *Nat'l Junior Baseball League* v. *Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 553 (D.N.J. Mar. 30, 2010), particularly when Chemours' disclosures and its clean audits cut against any suggestion of fraud. The more compelling inference is that the Individual Defendants, as to whom Plaintiffs must individually plead scienter, thought cash flow "timing" was a normal and accepted business practice.[12] While the Audit Committee found that Newman, Lock, and Wisel showed "a lack of transparency" with the board — meriting suspension — neither poor judgment nor bad leadership supports a "strong" inference of scienter. *Hertz*, 905 F.3d at 118.

---

[12] *See* Newman Reply Br. 5-6. Chemours incorporates the arguments presented by the Individual Defendants in further support of their motions to dismiss, as relevant to the claims against Chemours.

### A.    Plaintiffs' attempts to mischaracterize Chemours' disclosures fail.

According to Plaintiffs, Chemours' Audit Committee found that "the manipulation of Free Cash Flow violated Chemours' Code of Ethics because it rendered Chemours' SEC filings and other public statements misleading." PB 24. This is Plaintiffs' core allegation on scienter, repeated again and again. PB 23, 25-26. Repetition does not make it true. The Audit Committee concluded only that certain of the Individual Defendants failed to "promote" full and fair disclosure. The Complaint cites no Audit Committee finding of "misleading" disclosure. To the contrary, Plaintiffs concede that both the Audit Committee and Chemours' outside auditors still stand behind Chemours' disclosures. *See supra* at 4.

The precedents cited by Plaintiffs on this point are thus irrelevant, because each turned on an express admission of malfeasance.[13] Lacking any such confession, Plaintiffs attempt to recast the Audit Committee finding of "lack of transparency" as an admission of a "cover up." PB 26. The Complaint pleads nothing, however, to suggest that the Individual Defendants took any steps to stymie the investigation or to "try to hide" their working-capital management, as in the cases upon which Plaintiffs rely.[14] The reverse is true: The Complaint portrays the activity as a "broad-based," "routine practice" widely known within Chemours. ¶¶ 107-08, 118.

---

[13] PB 23-24 (citing *Roth* v. *AON Corp.*, 2008 WL 656069, *2, 7, 9 (N.D. Ill. Mar. 7, 2008) (defendants inflated earnings in breach of GAAP, paid a $190 million regulatory settlement, then admitted their "conduct was improper"); *Fresno Cnty. Emps.' Ret. Ass'n* v. *ComScore, Inc.*, 268 F. Supp. 3d 526, 544-45, 552-55 (S.D.N.Y. 2017) (defendant admitted it needed to "restate its financial statements" due to "misconduct")).

[14] PB 26 (citing *Vanderhoef* v. *China Auto Logistics Inc.*, 2020 WL 5105243, at *1, 3 (D.N.J. Aug. 31, 2020) (defendant was "actively impeding" NASDAQ investigation); *SEC* v. *Desai*, 145 F. Supp. 3d 329, 337 (D.N.J. 2015), *aff'd*, 672 F. App'x 201 (3d Cir. 2016) (defendant "attempted to conceal" misappropriation, then pleaded guilty to wire fraud); *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1311 (D. Utah 2007) (defendants "took steps to cover-up a misdeed" by concealing an internal review and refusing to implement remedial steps demanded by auditor)). Here, the Audit Committee "did not place any limitations on the nature or extent of the independent review," told counsel to "cooperate in all respects and communicated openly with the Company's independent [auditor]," and there is no allegation that former executives did anything but fully cooperate with that independent review. Ex. 20 at 44.

-11-

**B.      The generic motivation of incentive compensation does not support scienter.**

It is black-letter law that a motivation to increase compensation cannot establish scienter. *GSC Partners CDO Fund* v. *Washington*, 368 F.3d 228, 238 (3d Cir. 2004) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated." (cleaned up)).  Plaintiffs claim this rule falls away where there is "a direct link between the misrepresentation of a financial metric and increased compensation."  PB 26 n.13.  Not so.  *City of Roseville Emps.' Ret. Sys.* v. *Horizon Lines, Inc.*, 713 F. Supp. 2d 378 (D. Del. 2010), for instance, held scienter was not pleaded even where defendants engaged in price-fixing to reap "hundreds of thousands of dollars pursuant to [the company's] 'Cash Incentive Plan,' which was based in part on [the company's] financial performance."  *Id.* at 395-96 ("[A]n interest in maximizing their own compensation, which is common to every company . . . add[s] little to an inference of fraud.").  Plaintiffs cannot explain why a different rule should apply here.[15]

**C.      Executive departures do not support scienter.**

To infer scienter from an executive's departure, a complaint must "refut[e] the reasonable assumption that [the executive] was fired simply because [] errors . . . occurred on his watch or because he adequately failed to supervise his department."  *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *20 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018).  Plaintiffs thus needed allegations showing that "resignations were a result of . . . involvement in a systemic fraud."  905 F.3d at 118.  They identify nothing like that — no systemic fraud and no basis to believe that resignations flowed from any such fraud.  Plaintiffs thus fail to "refut[e] the reasonable assumption":  "Changes in leadership" occurred because "leadership fail[ed]."  *Id.* at

---

[15] Plaintiffs' cases do not displace the Third Circuit standard, both because they arose in other jurisdictions where, unlike in the Third Circuit, allegations of "motive and opportunity" are sufficient to plead scienter, and because all involved manifest illegality.  *See* PB 22, 25-26 (citing *San Antonio Fire & Police Pension Fund* v. *Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, at 317-18, 10 (S.D.N.Y. 2024) (defendants who received a cease-and-desist letter from the SEC for a "channel stuffing scheme" had "actual knowledge" of misconduct as revealed by their contradictory "detailed statements"); *Mulderrig* v. *Amyris, Inc.*, 492 F. Supp. 3d 999, 1026 (N.D. Cal. 2020) (defendants overstated "royalty revenues based solely on projected sales," despite knowing that this violated GAAP)).

118-19; *Kumar* v. *Kulicke and Soffa Indus., Inc.*, 2019 WL 5081896, at *9 (E.D. Pa. Oct. 9, 2019) ("leadership changes" following discovery of control deficiencies supported "non-culpable inference" of efforts to "improve [] business practices").

### D.      Plaintiffs fail to plead "exploitation" of internal controls.

Plaintiffs also make much of their conclusory allegation that the Individual Defendants "took advantage of [Chemours'] ineffective internal controls to execute their scheme to manipulate Free Cash Flow." PB 27-28. Yet Plaintiffs fail to plead that the Individual Defendants had any awareness of the control weakness at the time of the alleged misstatements, let alone that they "exploited" it. *See Laasko* v. *Endo Int'l*, 2022 WL 3444038, at *7 (D.N.J. Aug. 17, 2022) (dismissing absent allegations that "defendant knew [or recklessly disregarded that] he was signing a false [SOX certification]" (citing *Hertz*, 905 F.3d at 118)). On similar facts, the Third Circuit held in *Hertz* that internal control weaknesses, including those concerning "an inappropriate tone at the top," do not support an inference of scienter unless "defendants were aware, or recklessly disregarded, that that the[y] … created an environment in which fraud was occurring." 905 F.3d at 117.

Lacking any support in the law, Plaintiffs fall back on cases where defendants engaged in conduct that they knew to be illegal, improper, or in violation of specific internal policies.[16] Because Plaintiffs offer no such allegations here, their charge of "exploitat[ion]" adds nothing.

### III.    Plaintiffs fail to allege that the purported misstatements caused Chemours stockholders any loss.

The Complaint must also be dismissed for failure to plead loss causation, which requires facts showing Defendants "misrepresented or omitted the very facts that," when revealed, "were

---

[16] PB 27-28 (citing *Bos. Ret. Sys.* v. *Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 120, 134-35 (D. Conn. 2021) (defendants boosted sales through illegal practices, including kickbacks and theft of private data); *In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *2, 7 (N.D. Cal. June 1, 2020) (relying on auditor's "repeated, strident, and unusual calling out of [defendant], including calling for his resignation"); *Lowry* v. *RTI Surgical Holdings, Inc.*, 532 F. Supp. 3d 652, 661 (N.D. Ill. 2021) (defendant "openly admitted . . . it violated its own revenue recognition practice by shipping goods to customers early without their authorization")).

a substantial factor in causing . . . economic loss." *McCabe* v. *Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007). While a disclosure need not be a "linguistic mirror image of the alleged fraud," it must "reveal[] [the] concealed truth." *In re Bristol-Myers Squibb Sec. Litig.*, 2005 WL 2007004, at *18, 20-21 (D.N.J. Aug. 17, 2005) (cited at PB 29); *see Goldman Sachs Grp., Inc.* v. *Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 123 (2021) ("negative disclosure" insufficient if "there is a mismatch [with] the contents of the misrepresentation").

Plaintiffs claim that disclosures on February 13 and February 29, 2024 establish loss causation. Yet neither revealed the "concealed" timing activity. CB 29. The first announced Chemours was delaying its annual report while it reviewed "internal control over financial reporting." ¶ 271. Plaintiffs do not even pretend this was a corrective disclosure, arguing instead that it reflected "foreseeable consequence[s]" of the alleged fraud. PB 29-30. If the Court credits this theory,[17] Plaintiffs still must show that Chemours disclosed a concealed fact or "reveal[ed] that an earlier statement was false." *In re Aurora Cannabis Inc. Sec. Litig.*, 2023 WL 5508831, at *4 (D.N.J. Aug. 24, 2023); *see also Kanefsky* v. *Honeywell Int'l Inc.*, 2020 WL 2520669, at *7 (D.N.J. May 18, 2020) (announcement of SEC investigation revealed "the very facts" of the fraud). The Complaint flunks this test, because Plaintiffs' theory is that Defendants hid cash flow "manipulation" — not a risk of late financials or an internal review.

The February 29 disclosure announced that Chemours' internal investigation concerned "practices for managing working capital" and "certain non-GAAP metrics." CB 29. Plaintiffs say this "disclosed Free Cash Flow manipulation," PB 29, but do not explain how. Courts routinely reject such vague assertions of loss causation. *See, e.g.*, *Janbay* v. *Canadian Solar, Inc.*, 2013 WL 1287326, at *14 (S.D.N.Y. Mar. 28, 2013), *aff'd* (2d Cir. Dec. 20, 2013) (announcement of "delay in the release of [] financials, [an] SEC subpoena, [] internal investigation, and the possibility that [company] may revise its [] net revenue" failed to plead loss causation where the fraud consisted of "sham sales [and] secret consignments"). And while

---

[17] *Pharmanet*, 720 F. Supp. 2d at 563 & n.35 (rejecting "materialization of the risk" pleading as "not endorsed" by the Third Circuit).

Plaintiffs emphasize the ensuing decline in share price, they fail to address an obvious alternate explanation:  Chemours' simultaneous disclosure of an $800 million decline in sales.  CB 7.

## IV.    Plaintiffs fail to plead "Scheme Liability" under Rule 10b-5(a) and (c).

Plaintiffs' scheme liability claim must be dismissed for failure to plead scienter.  CB 30. Beyond that, though, Plaintiffs concede that Rule 10b-5(a) and (c) require "deceptive actions taken by Defendants beyond the [alleged] misstatements themselves."  PB 30.  They say they supplied this by generally alleging "efforts to delay payments to certain vendors and to accelerate the collection of receivables."  *Id.*  But to plead scheme liability Plaintiffs needed particularized allegations of "'sham' or 'inherently deceptive' transactions," detailing "what manipulative acts were performed [and] which defendants performed them."  *Stichting Pensioenfonds ABP* v. *Merck & Co.*, 2012 WL 3235783, at *7-8 (D.N.J. Aug. 1, 2012); *In re Royal Dutch/Shell Transport Sec. Litig.*, 2006 WL 2355402, at *10 (D.N.J. Aug. 14, 2006) (conduct must be "in and of itself, manipulative or deceptive, or having the tendency to defraud").

Vague allegations of "efforts" directed at unnamed third parties do not satisfy the PSLRA's standard of particularity.  And even if they did, the Complaint would still fall well short, because there is no claim that any discussions with Chemours' vendors or customers were a "sham."  Simply put, Plaintiffs have identified nothing inherently deceptive or improper about asking customers to pay their bills sooner or asking vendors to take payment later.  *Compare SEC* v. *Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 360–61 (D.N.J. April 17, 2009) ("giving oral assurances of rights of return or pricing concessions in connection with the sales, in and of itself, was not inherently deceptive" where "[t]he sales [] were legitimate business transactions" and the alleged deception was "failure to disclose the 'real terms' of the deal"), *with SEC* v. *Mintz*, 723 F. Supp. 3d 386, 406-07 (D.N.J. 2024) (transmission of facially illegal, "mismarked orders to executing-broker dealers" was "deceptive conduct independent of [10b-5] allegations").

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint with prejudice.

-15-

DATED:  January 21, 2025

OF COUNSEL:

WACHTELL, LIPTON, ROSEN
    & KATZ

Jonathan M. Moses (*pro hac vice*)
Noah B. Yavitz (*pro hac vice*)
Canem Ozyildirim (*pro hac vice*)
51 West 52nd Street
New York, NY  10019
(212) 403-1000

Respectfully submitted,

POTTER ANDERSON
    & CORROON LLP

/s/ Tyler E. Cragg

Peter J. Walsh, Jr. (#2437)
Tyler E. Cragg (#6398)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
(302) 984-6000

*Counsel for The Chemours Company*

-16-