**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE CHEMOURS COMPANY SECURITIES LITIGATION | Case No. 24-cv-361 RGA Hon. Richard G. Andrews |
| This document relates to all actions. | <u>CLASS ACTION</u> |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT SAMEER RALHAN'S
<u>MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

Of Counsel:

Michael S. Schachter (*pro hac vice*)
Todd G. Cosenza (*pro hac vice*)
Samantha G. Prince (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
mschachter@willkie.com
tcosenza@willkie.com
sprince@willkie.com

D. McKinley Measley (#5108)
Alec F. Hoeschel (#7066)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dmeasley@morrisnichols.com
ahoeschel@morrisnichols.com

*Attorneys for Defendant Sameer Ralhan*

January 21, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...............................................................................................................................3

I.      PLAINTIFFS FAIL TO PLEAD ANY MISSTATEMENTS AS TO MR. RALHAN BECAUSE MR. RALHAN MADE NO FALSE AND FRAUDULENT STATEMENTS.........................................................................................................3

II.     PLAINTIFFS FAIL TO PLEAD SCIENTER AS TO MR. RALHAN.............................4

      A.      Plaintiffs Have Failed To Plead Any Facts That Would Demonstrate That Mr. Ralhan Knowingly or Recklessly Made False and Fraudulent Statements. ......................................................................................................4

      B.      Mr. Ralhan's Exercise of His Chemours Stock Options Does Not Raise an Inference That He Knowingly or Recklessly Engaged in Wrongdoing. .................7

III.    THE COMPLAINT FAILS TO PLEAD SECTION 20(a) CONTROL LIABILITY AGAINST MR. RALHAN. ..........................................................................9

CONCLUSION..........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*In re Adolor Corp. Sec. Litig.*,
  616 F. Supp. 2d 551 (E.D. Pa. 2009) ...................................................................................7

*Behrmann* v. *Brandt*,
  2020 WL 4432536 (D. Del. July 31, 2020) .........................................................................1

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013)..................................................................................................9

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)................................................................................................8

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014)..................................................................................................9

*In re Hertz Glob. Holdings, Inc.*,
  905 F.3d 106 (3d Cir. 2018)..................................................................................................7

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 2423 (3d Cir. 2009)................................................................................................4

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ...................................................................................5, 8

*In re Merck & Co., Sec., Derivative & Erisa Litig.*,
  2012 WL 3779309 (D.N.J. Aug. 29, 2012) ..........................................................................9

*In re NAHC, Inc. Sec. Litig.*,
  2001 WL 1241007 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002)...................2

*In re Novo Nordisk Sec. Litig.*,
  2018 WL 3913912 (D.N.J. Aug. 16, 2018) ..........................................................................8

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)...........................................................................................................4

15 U.S.C. § 78u-5(c)(1) ................................................................................................................3

Securities Exchange Act of 1934, Section 20(a) .........................................................................9

## PRELIMINARY STATEMENT

Plaintiffs allege not a single fact that would support a "strong inference" that Sameer Ralhan acted with an "intent to deceive, manipulate, or defraud," either knowingly or recklessly. The Complaint alleges no facts supporting the conclusion that Mr. Ralhan ever made a false statement or that Mr. Ralhan possessed information that contradicted Chemours' public statements. Nor does Plaintiffs' Opposition dispute that Chemours accurately reported its cash flows. Instead, Plaintiffs assert that it was inherently misleading and therefore fraudulent for Mr. Ralhan to accurately report the Company's cash inflows and outflows without explaining all of the reasons why the Company's cash flow moved as it did. Under well-settled law, that would not be an actionable misstatement even if it were adequately pleaded—which it is not. *See Behrmann* v. *Brandt*, 2020 WL 4432536, at *10 (D. Del. July 31, 2020), *report and recommendation adopted*, 2020 WL 5752389 (D. Del. Sept. 25, 2020) ("Absent inaccuracies in a company's reported financial results, statements or omissions regarding those financial statements are generally not actionable"); *see also* Chemours' Br. at Part I.A.

Moreover, absent any allegation that Mr. Ralhan was aware that a failure to provide further detail on Chemours' cash-management activities was fraudulent, or that those activities would result in fraudulent financial reporting, the Complaint has failed to allege that Mr. Ralhan acted with scienter, and therefore must be dismissed. Left with no facts supporting an inference of scienter, Plaintiffs turn to inventing Audit Committee findings that do not exist. The Opposition claims that the "Audit Committee found a years-long scheme to manipulate," Opp. at 6, when it found no such thing. In a dozen different places, the Complaint claims that the Audit Committee found "manipulation" but the actual Audit Committee report does not use that term even a single time and describes nothing like that. The Opposition boldly claims that the "Audit Committee admitted that Chemours' management was issuing misleading SEC filings," *id*., as if the Court

were unable to read the Audit Committee's report for itself which of course states nothing of the sort. Plaintiffs then ask the Court to leap to the conclusion that Mr. Ralhan acted with a lack of transparency with the Chemours Board, because of (mischaracterized) findings concerning *other* executives. Tacitly acknowledging it has nothing to show that Mr. Ralhan acted with scienter, Plaintiffs are reduced to pure speculation and urge the Court to find that Mr. Ralhan acted with scienter for no reason other than "it is unavailing to suggest that scienter somehow jumped over Ralhan." *Id.* That is plainly insufficient to plead a securities fraud claim.

Plaintiffs also offer nothing to permit the inference that Mr. Ralhan acted with any motive to commit fraud. Mr. Ralhan's exercise of his Chemours stock options pursuant to a pre-determined options plan does not demonstrate a motive to defraud and cannot support scienter. Quite the opposite, Mr. Ralhan's decision to *hold* millions of dollars of Chemours stock for years during and after his tenure gives rise to the compelling inference that he believed the Company's financial reports were accurately stated, or he would have sold before the "truth" was revealed. This fact solidly defeats any inference of scienter, if any had been supported in the first place. Nor does Plaintiffs' Opposition offer anything new or plausible with regard to their Section 20(a) control person claim, which fails for the same reasons.

Because Plaintiffs fail to plead any of their claims and repleading would be futile, the Complaint against Mr. Ralhan should be dismissed in its entirety with prejudice. *See In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *25–26 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002) (denying leave to amend because where a complaint's defects are incurable, the complaint should be dismissed with prejudice).

## ARGUMENT

**I.     PLAINTIFFS FAIL TO PLEAD ANY MISSTATEMENTS AS TO MR. RALHAN BECAUSE MR. RALHAN MADE NO FALSE AND FRAUDULENT STATEMENTS.**

The bulk of Plaintiffs' Opposition is devoted to a recitation of every instance in which Mr. Ralhan mentioned Chemours' "cash flow," including his participation in two earnings calls in the first half of 2023 and his involvement in certain Company filings, including a couple of press releases containing forward-looking "guidance" for fiscal year 2023.  Opp. at 1–3, 6.

As an initial matter, none of the 2023 "statements" that Plaintiffs impute to Mr. Ralhan in their Opposition are false and fraudulent.  The reported cash flows accurately stated the Company's cash position during the reporting periods.  During the earnings call on February 10, 2023, Plaintiffs rely on the fact that Mr. Ralhan stated that "Free Cash Flow continues to be a strength for the company" and attributed the "headwinds to cash flow" as relating to the seasonality of Chemours' business—statements that are undeniably true. *See* Opp. at 2; *see also* ¶ 138.  In fact, as described in exacting detail in Chemours' Opening Brief (and thus not replicated here), Plaintiffs have failed to allege a single false and fraudulent statement anywhere in their Complaint—much less a false and fraudulent statement attributable to Mr. Ralhan. *See* Chemours' Br. at 10–15.

Plaintiffs fare no better with respect to the "guidance" contained in Chemours' 2023 Q1 and Q2 press releases, which were signed by Mr. Ralhan.  There can be no dispute that the PSLRA, *see* 15 U.S.C. § 78u-5(c)(1), exempts forward looking statements so long as they are identified as such and employ cautionary language, warning investors that "actual results" may differ—exactly as the guidance issued by Chemours did. *See* Chemours' Br. at 15.  In other words, it makes no difference *how many times* Mr. Ralhan may have mentioned Chemours' "cash flow" in public

remarks *unless* those remarks were false and fraudulent—and Plaintiffs have failed to appropriately plead any such fact.

## II.    PLAINTIFFS FAIL TO PLEAD SCIENTER AS TO MR. RALHAN.

### A.    **Plaintiffs Have Failed To Plead Any Facts That Would Demonstrate That Mr. Ralhan Knowingly or Recklessly Made False and Fraudulent Statements.**

After devoting multiple pages to the replication of statements contained in the Complaint, Plaintiffs assert, in an entirely conclusory fashion, that this Court can "readily draw an inference of scienter" with respect to Mr. Ralhan.  Opp. at 1.  Plaintiffs are wrong for several reasons. Plaintiffs fail to point to a single fact that would demonstrate that, if Mr. Ralhan made a false statement, he did so *knowing* it was false and fraudulent, or demonstrating that his behavior was so reckless that such knowledge can be imputed to him.  *See Institutional Invs. Grp. v. Avaya, Inc.,* 564 F.3d 242, 252–53 (3d Cir. 2009) (a securities fraud claim requires plaintiffs to plead "with particularity facts giving rise to a strong inference" of scienter "with respect to each act or omission alleged," 15 U.S.C. § 78u-4(b)(2)(A), by showing defendants acted either knowingly or recklessly).  Instead, Plaintiffs point to the entirely unremarkable allegation that Mr. Ralhan "knew" that the Company was asking customers to pay their invoices sooner while also deferring payments to certain vendors.  *See* Opp. at 7 (arguing that the Court should "infer scienter" because Mr. Ralhan was "clearly knowledgeable about Chemours' cash flows and the treatment of payables and receivables"); *id.* at 6 (arguing that because the CFO "before" and "after" Mr. Ralhan were each aware of timing activity, so must have been Mr. Ralhan); *id.* at 4, 8 (describing FE-1's statement that in 2018, Mr. Ralhan attended "daily meetings about delaying payables and accelerating receivables").[1]  Even accepting this allegation as fact, it is of no consequence.

---

[1] FE-1's vague allegations from five years before the alleged class period cannot suffice to support a finding of scienter as to Mr. Ralhan.  *See* Br. at 5–6 (collecting cases).

Chemours' cash flow practices did not violate GAAP or any other accounting rule and Plaintiffs have not, and cannot, contend otherwise. *See* Chemours' Br. at 9, 11. The fact that Mr. Ralhan "knew" that Chemours engaged in an *entirely lawful* practice does not lend itself to a reasonable inference of scienter on the part of Mr. Ralhan; to the contrary, it corresponds with a *lack* of any fraudulent intent.[2]

There is not a single allegation anywhere in the Complaint that would reasonably lead to the conclusion that Mr. Ralhan believed he was acting wrongly with respect to statements made about Chemours' cash flow.[3] As a substitute for these (required) allegations, Plaintiffs therefore invoke, yet again, the Audit Committee's findings. These, however, are of no assistance to Plaintiffs. The Audit Committee did *not* find that there was anything unlawful about Chemours' cash flow practices, nor did it conclude that anyone at Chemours had misled the investing public. To the contrary, the Audit Committee concluded that there had been a "lack of transparency" *to the Board of Directors* "by the members of senior management who were placed on administrative leave [in the week prior to March 6, 2024]." Ex. 18 (March 6, 2024 Press Release)[4]; Ex. 20 (March 27, 2024 Press Release) ("The Audit Committee's internal review determined that there was a lack of transparency with the Company's Board of Directors by *three former members of senior*

---

[2] Without any facts suggesting that Mr. Ralhan believed the Company's cash flow practices were wrongful, no inference can be drawn that Mr. Ralhan acted with fraudulent intent when he signed SOX certifications attesting to the accuracy of Chemours' financials and/or confirming that Chemours' internal controls were effective. *See* Br. at 6–7; *see also In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 289–90 (D.N.J. 2007) ("SOX certification cannot establish the requisite strong inference of scienter" unless "defendants *knew or consciously avoided* any meaningful exposure to the information that was rendering their SOX certification erroneous").

[3] While Plaintiffs argue that Mr. Ralhan "covered up" the truth about cash flow by "blaming poor results" on "seasonality" (Opp. at 6), there was nothing false about these statements. Chemours consistently disclosed that its business was seasonal, and Plaintiffs do not and cannot plead facts to contradict this disclosure. *See* Chemours' Br. at 18–19.

[4] Citations to "Ex." refer to the exhibits attached to the Transmittal Affidavit of Tyler E. Cragg filed with Chemours' Opening Brief. (D.I. No. 38).

*management*," none of whom were Mr. Ralhan) (emphasis added). In other words, the Audit Committee issued no findings at all about Mr. Ralhan. At no point did the Audit Committee conclude that *any* employee of Chemours, least of all Mr. Ralhan, engaged in fraud.

Plaintiffs try to muddy the waters on this point by "characterizing" rather than quoting from the Audit Committee's findings. While Plaintiffs assert that the Audit Committee "found a years-long scheme to manipulate the [Company's] payables and receivables," *see* Opp. at 6, the Audit Committee found no such thing. Nor did the Audit Committee critique Chemours' cash flow management practices or the accuracy of the Company's cash flow reporting. Instead, the statement issued by the Audit Committee described the Company's cash flow management in order to provide details as to the nature of the information that was not "transparent[ly]" disclosed to the Board. *See* Ex. 18. Even putting aside that such a finding is not one regarding fraudulent financial statements, because the Audit Committee issued no findings concerning *Mr. Ralhan*'s communications with the Board, the Audit Committee report is entirely neutral as to him.

In an effort to find *something* to defeat Mr. Ralhan's motion, Plaintiffs attempt to argue that Mr. Ralhan is indirectly addressed in the Audit Committee report because the Audit Committee noted that the Company's practices with respect to the timing of payables and receivables had also been utilized in 2021 and 2022, when Mr. Ralhan was CFO. Opp. at 4. However, as described above, because the Audit Committee did not conclude that there was anything *wrong* with these practices, there is no basis to argue that the Audit Committee ever found fault with Mr. Ralhan, implicitly or explicitly. Plaintiffs' "alternative" reading of the Audit Committee report, in which Plaintiffs claim that the Audit Committee determined there to have been "manipulation" and disclosure failures to the "SEC" and in the Company's "public communications," should be rejected as the fanciful fiction that it is. *See* Chemours' Reply Br. at

11 (D.I. No. forthcoming). The Audit Committee's report speaks for itself, perfectly clearly—and what it *does not* say is that Mr. Ralhan did anything wrong. Any fair reading of the Audit Committee report leads to the conclusion that it is of no help in bolstering an inference that Mr. Ralhan acted with scienter. Plaintiffs' efforts to twist and distort the Committee's findings do not change this conclusion.

B.    **Mr. Ralhan's Exercise of His Chemours Stock Options Does Not Raise an Inference That He Knowingly or Recklessly Engaged in Wrongdoing.**

The final argument offered by Plaintiffs in their effort to demonstrate scienter on the part of Mr. Ralhan relates to Mr. Ralhan's exercise of stock options "before the stock dropped at the end of the Class Period." Opp. at 9. But, as Mr. Ralhan explained in his Opening Brief, Mr. Ralhan had no choice but to exercise his options when he did, given that they were set to expire, and furthermore, he held on to significant amounts of Company stock throughout the stock drop, including through today. *See In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 572–73 (E.D. Pa. 2009) (holding that an executive's retention of shares "raises a compelling inference against scienter.") Left with no good response to these incontrovertible facts, Plaintiffs retreat to a vague argument that, regardless of the actual circumstances, "the fact remains that [Mr.] Ralhan . . . profited during the course of the scheme." Opp. at 9.

In fact, contrary to Plaintiffs' assertion, the actual circumstances of a particular stock sale matter very much. *See In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 121 (3d Cir. 2018) ("even large percentages of holdings sold at first blush appearing suspicious are not sufficient to infer scienter when other factors, such as the timing of the relevant sales, weigh against that inference"). Because Mr. Ralhan had no choice but to sell his stock options when he did, there is no argument to be made that the sale evidences his state of mind. Indeed, courts regularly recognize that options are part of many executives' standard compensation package and that there is nothing suspicious

in exercising an option before it expires—precisely as Mr. Ralhan did when he left Chemours in June 2023. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997); *see also* Br. at 7–8.[5] Moreover, Mr. Ralhan's June–September 2023 options exercises were all made according to Chemours' pre-determined stock option plan, a fact which courts routinely hold undermines any inference of scienter. *See* Br. at 9 (collecting cases).

In implicit recognition of the fact that Plaintiffs got the circumstances of Mr. Ralhan's stock sale completely wrong and that their "motive" theory is untenable, Plaintiffs now pivot to an argument that, because Mr. Ralhan's incentive compensation was purportedly tied to Chemours' Free Cash Flow during the Class Period, the Court can, and should, infer scienter on the part of Mr. Ralhan. In fact, there is *no* legal support for any such imputation; to the contrary, courts— including in the *one case* cited by Plaintiffs—have routinely held that incentive compensation, standing alone, is *not* sufficient to raise an inference of scienter. *See In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912, at *8 (D.N.J. Aug. 16, 2018) (while share-based compensation structure may be an "additional factor" in assessing scienter, an allegation of incentive-based compensation "may not give rise to an inference of scienter on [its] own."); *see also Intelligroup*, 527 F. Supp. 2d at 341 ("[A]n allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate officers."); Chemours' Br. at 23.

Plaintiffs' arguments with respect to Mr. Ralhan's compensation and stock transactions are as unavailing as their arguments concerning the purported "conclusions" of the Audit Committee. Indeed, not only did Mr. Ralhan continue to hold Chemours' stock after he left the Company in June 2023, but there were multiple points in time before and after the alleged corrective disclosure

---

[5] Citations to "Br." refer to Mr. Ralhan's Opening Brief (D.I. No. 48).

in February 2024 that he could have sold his stock but did not.  In other words, had Mr. Ralhan truly had a "motive" to defraud, he could have sold his shares in Chemours before any stock drop occurred.[6]  He did not do so because he has acted entirely in good faith.

### III. THE COMPLAINT FAILS TO PLEAD SECTION 20(a) CONTROL LIABILITY AGAINST MR. RALHAN.

To state a claim for control person liability against Mr. Ralhan, Plaintiffs must allege Chemours' violation of the Exchange Act and that Mr. Ralhan controlled Chemours with respect to the violation *and* was a culpable participant in the commission of that violation.  *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484–85 (3d Cir. 2013).  Because Plaintiffs have failed to plead any primary violation of the Exchange Act, they cannot sustain a Section 20(a) claim against Mr. Ralhan.  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014); Br. at 10.  Plaintiffs' control person liability claim also independently fails because Mr. Ralhan did not "control" the Company in the four short months out of the Class Period that he was even at the Company, nor was he a "culpable participant" within the meaning of Section 20(a).  Neither the case law nor Plaintiffs' scant facts come close to supporting their control person theory.  Despite Plaintiffs' contention, merely alleging that Mr. Ralhan made "several of the misstatements at issue during his time as CFO" (Opp. at 10) is insufficient as a matter of law to confer control person status.  *See In re Merck & Co., Sec., Derivative & Erisa Litig.*, 2012 WL 3779309, at *10 (D.N.J. Aug. 29, 2012) (culpable participation for a Section 20(a) claim requires a showing that defendant "acted with the required [culpable] state of mind," a standard "akin to pleading . . . scienter.")  For the same reasons set forth in Section II, Plaintiffs have failed to adequately allege culpable participation as to Mr. Ralhan.

---

[6] *See* Chemours' Br. at 9 (chart showing timeline of Chemours' stock price against alleged corrective disclosures).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice as to Mr. Ralhan.

DATED: January 21, 2025

Of Counsel:

Michael S. Schachter (*pro hac vice*)
Todd G. Cosenza (*pro hac vice*)
Samantha G. Prince (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
mschachter@willkie.com
tcosenza@willkie.com
sprince@willkie.com

/s/ D. McKinley Measley
D. McKinley Measley (#5108)
Alec F. Hoeschel (#7066)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dmeasley@morrisnichols.com
ahoeschel@morrisnichols.com

*Attorneys for Defendant Sameer Ralhan*

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ D. McKinley Measley*
D. McKinley Measley