## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE CHEMOURS COMPANY SECURITIES LITIGATION | Case No. 24-cv-361 RGA<br>Hon. Richard G. Andrews |
| This document relates to all actions. | <u>CLASS ACTION</u> |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MARK NEWMAN'S MOTION TO DISMISS <u>THE AMENDED CLASS ACTION COMPLAINT</u>

OF COUNSEL:

PETRILLO KLEIN + BOXER LLP
655 Third Avenue
New York, NY  10017
(212) 370-0330

GELLERT SEITZ BUSENKELL
   & BROWN LLC
Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE  19801
(302) 425-5812

*Counsel for Mark Newman*

January 21, 2025

1

**TABLE OF CONTENTS**

I.    The Complaint does not plead *scienter* with respect to Mr. Newman. .................................... 4

    A.    The Audit Committee did not find Mr. Newman acted with *scienter* ................................. 4

    B.    Chemours' public disclosures undermine any inference of *scienter*. ................................ 7

    C.    Chemours' unchallenged clean audit further undermines *scienter*. ................................... 7

II.    The Amended Complaint's Section 20(a) claim fails because it fails to plead any underlying securities fraud. ..................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Cases**

*In re Adolor Corp. Sec. Litig.*,
   616 F. Supp. 2d 551 (E.D. Pa. 2009) ................................................................................. 7

*In re Alpharma Inc. Sec. Litig.*,
   372 F.3d 137 (3d Cir. 2004) ........................................................................................... 8, 9

*In re Grand Canyon Education, Inc. Securities Litigation*,
   2021 WL 3491779 (D. Del. Aug. 9, 2021) ....................................................................... 7

*In re Hertz Glob. Holdings Inc*,
   905 F.3d 106 (3d Cir. 2018). ....................................................................................... 6, 10

*In re Iconix Brand Grp., Inc.*,
   2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017)................................................................... 10

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ............................................................................................ 7

*Ortiz v. Canopy Growth Corp.*,
   537 F. Supp. 3d 621 (D.N.J. 2021) ................................................................................... 9

*Roofer's Pension Fund v. Papa*,
   No. CV 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ........................................... 9

Plaintiffs' Opposition confirms the insufficiency of the Complaint's *scienter* allegations as to Mr. Newman. Jettisoning the false claim in the Amended Complaint that the Audit Committee of Chemours' Board of Directors found that Mr. Newman acted knowingly or recklessly, Plaintiffs now rely on the allegations that Mr. Newman was purportedly not fully transparent with the Board and did not "promote" an environment conducive to full disclosure. Neither of these assertions shows or gives rise to an inference of fraudulent intent. To the contrary, where, as here, the Company routinely engaged in and regularly disclosed its practice of delaying cash payments to and advancing cash receipts from vendors, they more plausibly suggest Management-Board disagreement or, at worst, Management shortfalls. Meanwhile, the theory advanced by Plaintiffs— that Mr. Newman participated in an illicit fraud by (i) delaying cash payments and expediting cash collections, a regular Chemours practice that neither the Audit Committee nor the Company's independent auditor found resulted in misleading disclosures; (ii) transparently communicating concerning this routine practice with numerous individuals within the Company; and (iii) repeatedly disclosing that the timing of payments and collections was a key driver of the Company's free cash flow results—defies common sense. The Complaint should be dismissed.[1]

## ARGUMENT

### I.       The Complaint does not plead *scienter* with respect to Mr. Newman.

#### A.  The Audit Committee did not find Mr. Newman acted with *scienter*

As set forth in Mr. Newman's opening brief,[2] the Amended Complaint's[3] allegation that "[t]he Audit Committee of Chemours' board of directors found that Newman acted knowingly or recklessly," (Compl. ¶ 242), is false. (Br. at 1.) The Audit Committee did not make such a finding.

---

[1] Mr. Newman adopts in full and incorporates herein by reference the Reply brief submitted by Defendant Chemours.

[2] ECF No. 50 ("Br.").

[3] ECF No. 17 ("Compl.").

(Br. at 1–3.)  Plaintiffs abandon that false allegation in their Opposition (ECF No. 56 ("Opp.")), conceding, (Opp. at 3–4), that the Audit Committee found only that "there was a lack of transparency" with Chemours' Board by Mr. Newman "with respect to working capital timing actions . . . [and] their effect on publicly communicated free cash flow targets," and that Mr. Newman "violated [Chemours'] Code of Ethics . . . relating to the 'promot[ion of] full, fair, accurate, timely, and understandable disclosure.'"  But neither a "lack of transparency" on the part of Management with the Board nor a Board-determined failure of Mr. Newman to "promote" full disclosures is a finding that Mr. Newman actually *made* a materially misleading statement, let alone with intent to defraud.  In fact, the Company did not restate any of its prior financials as a result of the Audit Committee's investigation.

As a result, Plaintiffs' lengthy citation to an expanded excerpt from the Company's Code of Ethics—"the Chief Executive Officer . . . shall . . . promote full, fair, accurate, timely, and understandable disclosure in reports and documents that the Company files with or submits to the Securities and Exchange Commission and in other public communications made by the Company" (Opp. at 5; Compl. ¶ 43)—adds nothing to its *scienter* argument.  *See In re Hertz Glob. Holdings Inc*, 905 F.3d 106, 117–18 (3d Cir. 2018) (admission of "inappropriate tone at the top" did not support securities fraud claim absent allegations that "defendants were aware, or recklessly disregarded, that their mismanagement created an environment in which fraud was occurring").

Here, as discussed in Mr. Newman's opening brief (Br. at 2–3), the working capital timing actions at issue were "routine practice" at the Company (Compl. ¶ 118).  Thus, contrary to Plaintiffs' argument (Opp. at 5) that a "lack of transparency" "completely refutes [Mr. Newman's] scienter argument," any "lack of transparency" is more plausibly explained by a genuinely held belief on Mr. Newman's part that such actions were well understood by the Board and required no

additional emphasis.  This alternative inference is certainly more in line with the conclusion of the Company's own independent auditor, which found that the practice was *not* inconsistent with GAAP and did *not* render the financial statements misleading. *See In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 570–71 (E.D. Pa. 2009) (no basis for strong inference of *scienter* where plaintiffs' theory "d[id] not make sense on the facts alleged"); *see also In re Grand Canyon Education, Inc. Securities Litigation*, 2021 WL 3491779, at *17 (D. Del. Aug. 9, 2021), *report and recommendation adopted sub nom. In re Grand Canyon Educ., Inc. Sec. Litig.*, 2021 WL 3726014 (D. Del. Aug. 23, 2021) (theory of scienter that "does not 'make a whole lot of sense' . . . will not be found 'cogent' or 'at least as compelling as any opposing inference one could draw from the facts alleged'" (quoting *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414–15 (9th Cir. 2020)).  Notably, Plaintiffs acknowledge that the working capital practices of the Company were "routine" and shared with numerous personnel and executives over a multi-year period (*see* Br. at 2–3), corroborating the absence of *scienter*.

In response, Plaintiffs intone that "the fact that Newman conspired with other top management does not absolve him from responsibility." (Opp. at 6.)  They miss the point.  Given the regularity of the Company's working capital practices, the Company's disclosures of timing actions with respect to vendor payments, and that these practices were widely discussed within the Company, it is markedly more plausible that Mr. Newman was of the belief that the Company's cash management actions were no less proper than any other routine year-end business practice, such as offering end-of-year discounts to prior customers,  and that any actions undertaken were sufficiently disclosed.  If he thought otherwise, it is not plausible that he and others would have transparently discussed the actions with various employees over multiple years. (*See, e.g.,* Compl. ¶ 243.)

6

**B.  Chemours' public disclosures undermine any inference of *scienter*.**

As set forth in Mr. Newman's opening brief (Br. at 3–4), *scienter* is further undermined by the fact that the Company disclosed the "timing of [the Company's] payment on accounts payable and collection of [the Company's] accounts receivable" as a principal factor influencing its calculation of Operating Cash Flow.  (Br. at 3.)  Plaintiffs argue that this disclosure was inadequate because it did not disclose that the disclosed practice was intentional.  (Opp. at 6.)  With all respect, how could such actions be otherwise?  In any event, these specific disclosures would have reasonably provided anyone in Mr. Newman's position with assurance that the allegedly omitted practice had been disclosed.  The disclosures certainly undermine the inference that the failure to disclose *even more—i.e.*, that the timing decisions were intentional—constituted "an extreme departure from the standards of ordinary care, ... which present[ed] a danger of misleading buyers or sellers that [wa]s either known to the defendant or [wa]s so obvious that the actor must have been aware of it."  *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 148 (3d Cir. 2004).[4]

**C.  Chemours' unchallenged clean audit further undermines *scienter*.**

As explained in Mr. Newman's opening brief (Br. at 4), following intensive review, the Audit Committee determined that no restatement was required, and the Company's independent auditor concluded that the financial statements presented "fairly, in all material respects, the financial position of the Company[.]"  In the face of these facts—which are fatal to Plaintiffs' *scienter* allegations—Plaintiffs throw meritless arguments at the wall hoping something will stick.

First, Plaintiffs argue that all the Company's independent auditor found was that Chemours' financial statements complied with GAAP.  (Opp. at 7.)  Not true.  The independent auditor found

---

[4] Plaintiffs' argument that the Board supposedly disagreed with Mr. Newman regarding the adequacy of the existing disclosure, (Opp. at 6), does not alter the outcome.  Reasonable minds can differ on the adequacy of disclosures; that does not mean that either side is engaging in intentional fraud.

that the financial statements fairly presented the financial position of the Company in "all material respects." (Br. at 4; Br. Ex. 2 at F-2.) More to the point, even if the independent auditor's findings *were* limited to GAAP compliance, it defies logic that Mr. Newman would intentionally seek to deceive investors regarding cash flows by presenting them in compliance with GAAP.

Plaintiffs further argue, (Opp. at 7), that a GAAP violation is not required to allege a misleading statement. But even assuming that any materially misleading statement was made— as discussed at length in Chemours' brief, it was not—Plaintiffs still must plead a strong inference of *scienter*. That the Company's financial statements were found to pass muster both contemporaneously *and* after a thorough review of the timing actions at issue forcefully undermines any inference that Mr. Newman engaged in intentional wrongdoing or behavior that was "an extreme departure from the standards of ordinary care[.]" *Alpharma Inc. Sec. Litig.*, 372 F.3d at 148.

Second, Plaintiffs argue, (Opp. at 7), that an independent auditor cannot be used to immunize Mr. Newman from liability. But Plaintiff do not dispute—nor could they—that Courts routinely hold that a finding of *scienter* is undermined by auditor sign-off concerning a particular accounting practice. *See, e.g.*, *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 678 (D.N.J. 2021) (independent auditor's approval of financial statements "weigh[ed] heavily against scienter"); *Roofer's Pension Fund v. Papa*, No. CV 16-2805, 2018 WL 3601229, at *20 (D.N.J. July 27, 2018) (independent auditor's approval of accounting practice "over multiple years and fiscal periods . . .[wa]s strongly probative of a lack of scienter"); *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *19 (S.D.N.Y. Oct. 25, 2017) (auditor's failure to "detect, observe, or otherwise note any improprieties in [company's] financial accounting" undermined inference of

8

*scienter*). That Chemours' independent auditor signed off on the Company's financial reporting even after the targeted review deeply weakens the Plaintiffs' theory of *scienter*.[5]

Finally, Plaintiffs argue that the independent auditor, "along with the Company, in no way" found that Mr. Newman did not commit fraud. (Opp. at 7.)  Again, Plaintiffs are wide of the mark. The point is that the independent auditor found that Mr. Newman's alleged conduct did not even render the financial statements misleading.  It is facially implausible to suggest that Mr. Newman somehow intended to deceive investors by engaging in a practice that was not misleading.[6]

II.    **The Amended Complaint's Section 20(a) claim fails because it fails to plead any underlying securities fraud.**

As set forth in Mr. Newman's opening brief (Br. at 5), Plaintiffs' Section 20(a) claim against him must fail because they have failed to plead an underlying securities violation.

---

[5] Both of the cases cited by Plaintiffs in purported support of their argument to the contrary, (Opp. at 7), stand only for the proposition that the approval of an auditor *alone* is insufficient to overcome an otherwise adequately pleaded complaint.  Here, where Plaintiffs' Amended Complaint suffers from numerous additional defects, these cases are inapposite.

[6] As discussed in the Chemours brief, Plaintiffs' reference to Mr. Newman's resignation without severance, (Opp. at 7–8), does not rescue their defective theory of *scienter*.  *See In re Hertz*, 905 F.3d at 119 ("Corporate resignations do not strengthen an inference of scienter, when, as here, the allegations do not cogently suggest that the resignations resulted from the relevant executives' knowing or reckless involvement in a fraud.")

## CONCLUSION

For these reasons, as well as those set forth in the Chemours Brief, the Court should dismiss the Amended Complaint.

DATED: January 21, 2025                          Respectfully submitted,


                                                 GELLERT SEITZ BUSENKELL &
                                                     BROWN, LLC

OF COUNSEL:                                       */s/ Michael Busenkell*
                                                 Michael Busenkell (DE 3933)
PETRILLO KLEIN + BOXER                           1201 N. Orange Street, Suite 300
Guy Petrillo (*pro hac vice*)                    Wilmington, DE 19801
Joshua Klein (*pro hac vice*)                    Tel: (302) 425-5800
Caelyn Stephens (*pro hac vice*)                 Fax: (302) 425-5814
655 Third Avenue                                 mbusenkell@gsbblaw.com
22nd Floor
New York, NY 10017                               *Counsel for Mark Newman*
(212) 370-0330

10